

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

January 19, 2022

**BY ECF**

The Honorable Ann M. Donnelly
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Henkin v. Qatar Charity*, 21-cv-5716 (AMD), Request for Pre-Motion Conference

Dear Judge Donnelly:

On behalf of Defendant Qatar National Bank Q.P.S.C. ("QNB") and in accordance with Rule 4(A) of the Court's Individual Practices and Rules, we respectfully request a pre-motion conference in connection with QNB's anticipated motion to dismiss. QNB's deadline to file its motion to dismiss is currently January 31, 2022. Given the large number of legal issues and sub-issues involved in the motion to dismiss, we also respectfully request, pursuant to Rule 4(C) of Your Honor's Individual Practices and Rules, 35 pages for the memorandum of law in support of the motion to dismiss. Plaintiffs oppose the request for extended page limits and propose to file opposition briefs 30 days after jurisdictional discovery ends. QNB objects to jurisdictional discovery before dispositive motions are addressed, for the reasons discussed below. Plaintiffs have brought this action to recover damages for alleged violations of the Anti-Terrorism Act (the "ATA"), asserting claims for wrongful death, personal injury, and related torts against QNB, Qatar Charity ("QC"), and Masraf Al Rayan ("MAR"). *See* Compl. ¶¶ 353-409. Specifically, Plaintiffs allege that (1) QNB maintained bank accounts for QC and other individuals, and (2) funds transferred from these accounts were ultimately used to finance activities of Hamas that caused injury to Plaintiffs. *See* Compl. ¶¶ 14-17. QNB disputes these allegations and will move to dismiss Plaintiffs' claims on the following grounds:

**1. This Court does not have personal jurisdiction over QNB.** Plaintiffs do not sufficiently allege personal jurisdiction pursuant to New York's long-arm statute.[1] Plaintiffs' vague and conclusory allegations that unspecified "Defendants . . . transacted business and committed tortious acts within the United States (and New York) by transferring funds through the United States (and New York) for Hamas's benefit" are insufficient. Compl. ¶ 22; *see Licci ex rel. Licci v. Lebanese Canadian Bank, SAL (Licci II)*, 732 F.3d 161, 168 (2d Cir. 2013) (regarding allegations involving

---

[1] Plaintiffs allege two additional statutory bases for personal jurisdiction: (i) minimum contacts with the United States as a whole pursuant to Fed. R. Civ. P. 4(k)(2) and (ii) service of process as provided under the ATA. These are also insufficient bases to establish personal jurisdiction over QNB. Plaintiffs have alleged no facts that QNB has significant contacts with the United States as a whole. The ATA provides that "any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent." 18 U.S.C. § 2334(a). QNB does not reside or have an agent in the Eastern District of New York, and Plaintiffs have not served QNB in this district.

ROPES & GRAY LLP

- 2 -

foreign banks engaging with correspondent banks in New York, both the "frequency" and "deliberate nature" of the bank's contacts are "determinative"). Plaintiffs allege no facts regarding the volume, frequency, or deliberate nature of any fund transfers by QNB through New York, much less that such fund transfers were "substantial" and the "proximate cause" of the Plaintiffs' injuries. *SPV Osus, Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018). Notably, the only allegations in the Complaint that mention QNB and New York are allegations against the Defendants collectively, not against QNB specifically; moreover, QNB is alleged only to have had "knowledge" of certain transfers that allegedly passed through New York. Compl. ¶¶ 22-24; *see Walden v. Fiore*, 571 U.S. 277, 284 (2014) (explaining that a defendant's contacts with the forum state to establishing personal jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum") (citation omitted). As Plaintiffs' later, more detailed narrative makes clear, the alleged transfers through the New York involved only MAR, and not QNB. Compl. ¶ 132. Based on these flimsy allegations against QNB, Plaintiffs cannot establish a *prima facie* case for personal jurisdiction, nor can they identify any genuine issue of jurisdictional fact; indeed, jurisdictional discovery would be inappropriate on such deficient allegations. *See Mednik v. Specialized Loan Servicing, LLC*, No. 20-cv-427 (MKB), 2021 WL 707285, at *8 (E.D.N.Y. Feb. 23, 2021) (noting that "discovery need not be granted to permit a fishing expedition for jurisdictional facts" (quotation omitted)); *see also Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) ("[A] court is not obligated to subject a foreign corporation to discovery where the allegations of jurisdictional facts, construed most favorably in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction.").

   **2. Plaintiffs fail to state a claim for primary liability under § 2333(a).** First, Plaintiffs' conclusory assertion that QNB provided material support to a Foreign Terrorist Organization ("FTO") through "financial assistance" that was "integral to the ability of [the FTO] to carry out its terrorist attacks," Compl. ¶¶ 384, 404, is premised solely on Plaintiffs' allegation that QNB transferred funds from a client's account at QNB to the same client's account at another bank with no allegation that QNB's client engaged in any terrorist act. *See* Compl. ¶¶ 14, 168-71. This amounts to nothing more than an allegation that QNB performed routine banking services, which alone cannot establish liability under the ATA for an act of international terrorism. *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 327 (2d Cir. 2018); *Siegel v. HSBC Bank USA, N.A.*, No. 17-cv-6593 (DLC), 2018 WL 3611967, at *3 (S.D.N.Y. July 27, 2018), *aff'd sub nom. Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019). Second, the Complaint fails to plausibly allege proximate cause because the services QNB allegedly provided were routine banking services and far too attenuated from Plaintiffs' alleged injuries. *See Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013); *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 533 (S.D.N.Y. 2019), *rev'd on other grounds*, 999 F.3d 842 (2d Cir. 2021).

   **3. Plaintiffs fail to state a claim of aiding and abetting secondary liability pursuant to 18 U.S.C. § 2333(d).** Plaintiffs do not plausibly allege that QNB was generally aware of its role in illegal activity that foreseeably led to the alleged terrorist acts. *See Honickman v. BLOM Bank SAL*, 6 F.4th 487, 496 (2d Cir. 2021); *Averbach v. Cairo Amman Bank*, No. 19-cv-0004, 2020 WL

ROPES & GRAY LLP

- 3 -

486860, at *13 (S.D.N.Y. Jan. 21, 2020), *R. & R. adopted sub nom. Averbach for Estate of Averbach v. Cairo Amman Bank*, 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020) ("Merely provided banking services to a Hamas-affiliated charity, does not satisfy JASTA's *mens rea* requirement."). Also, while some courts have suggested that the existence of certain "red flags" with respect to an individual or entity that may be affiliated with a FTO may be enough to establish general awareness, Plaintiffs do not allege the types of severe red flags that existed in those cases. *Cf. Estate of Henkin v. Kuveyt Turk Katilim Bankasi*, A.S., 495 F. Supp. 3d 144 (E.D.N.Y. 2020).

Further, Plaintiffs fail to satisfy the Second Circuit's test to determine whether QNB provided knowing and substantial assistance to the principal in the acts that resulted in Plaintiffs' injuries.[2] *See Linde*, 882 F.3d at 329 (citation omitted). While Plaintiffs fail to allege facts to satisfy many of the six factors the Second Circuit has applied in ATA cases, most notably Plaintiffs plead a relationship that is far too attenuated between QNB and the FTO at issue to satisfy the fourth factor of that analysis (aside from simply an allegation that QNB maintained bank accounts for entities or persons allegedly connected to Hamas, which the Complaint fails to connect to any terrorist activities). *See Honickman*, 6 F.4th at 500-01 (discussing *Siegel*).

**4. Plaintiffs fail to state a claim of conspiracy secondary liability pursuant to 18 U.S.C. § 2333(d).** The Complaint contains no allegation that QNB conspired directly with the person or entity that committed the acts of international terrorism that injured Plaintiffs, which is required to establish conspiracy secondary liability. *See, e.g., Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 98 n.1 (E.D.N.Y. 2019). Plaintiffs' allegations that QNB provided routine banking services to QC and certain persons affiliated with a FTO cannot "lead one to infer that [QNB] shared any common goal of committing an act of international terrorism." *See, e.g., Kaplan*, 405 F. Supp. at 534.

**5. Plaintiffs' attempted service on QNB is insufficient.** After initially seeking to effect service through Letters Rogatory (ECF No. 17), which they have not accomplished, Plaintiffs attempted to serve QNB pursuant to Federal Rule of Civil Procedure ("FRCP") 4(f)(2)(C)(ii). "Rule 4(f)(2)(C)(ii) allows service via mail, subject to certain restrictions," the most relevant of which is that such service is "*not prohibited by the foreign country's law*." *In re Coudert Bros. LLP*, No. 16-CV-8237 (KMK), 2017 WL 1944162, at *10 (S.D.N.Y. May 10, 2017) (emphasis added). None of Plaintiffs' filings address Qatari law on service by mail. "Plaintiffs' silence on the issue does not allow the court to assume that service by mail is not prohibited" by that law. *Nabulsi v. Zayed Al Nahyan*, No. H-06-2683, 2008 WL 1924235, at *4 (S.D. Tex. Apr. 29, 2008). Service is also improper because Plaintiffs have not provided any information about the individual named "H. Hussain" who purportedly received the FedEx package delivered to QNB containing the summons and complaint. *See* ECF No. 19; *Rosenberg v. Lashkar-E-Taiba*, No. 10-CV-5381 (DLI) (CLP), 2017 WL 11647006, at *2, 4 (E.D.N.Y. Mar. 31, 2017).

---

[2] The factors the Second Circuit has referenced are (1) the nature of the act encouraged; (2) the amount of assistance given by the defendant; (3) defendant's presence at the time of the tort; (4) the defendant's relation to the principal; (5) the defendant's state of mind; and (6) the duration of the defendant's assistance.

ROPES & GRAY LLP

- 4 -

Respectfully submitted,

*/s/ Michael G. McGovern*

Michael G. McGovern

cc: All parties of record (by ECF)