

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

John M. Hillebrecht
John.Hillebrecht@dlapiper.com
T   212.335.4590
F   917.778.8590

January 20, 2022

*VIA ECF*

The Honorable Ann M. Donnelly
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:**   *Henkin, et al. v. Qatar Charity, et al.*, 1:21-cv-05716-AMD-VMS

Dear Judge Donnelly:

We are counsel for defendant Qatar Charity.  Pursuant to the Court's January 4, 2022, Order, the Defendants have until January 31 to respond to the Complaint, at which point Qatar Charity intends to file a Motion to Dismiss.  Pursuant to Rule 4.A of Your Honor's Individual Practices, we therefore write to request a pre-motion conference.  Qatar Charity further requests, pursuant to Rule 4.C of Your Honor's Individual Practices, 35 pages for its Motion to Dismiss.  Although Plaintiffs have expressed opposition to the extended pages, Qatar Charity submits that the additional pages are necessary due to the number of legal issues presented by the 77-page, 409-paragraph Complaint.

## Background

Plaintiffs assert four causes of action under the Anti-Terrorism Act (18 U.S.C. § 2331, *et seq.*) ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), against Qatar Charity as well as Masraf Al Rayan and Qatar National Bank, Q.P.S.C. (together with Qatar Charity, "Defendants"), alleging a conspiracy to provide material support to terrorist organizations that are purportedly responsible for injuries incurred by Plaintiffs.  While Qatar Charity finds the violent actions described in the Complaint abhorrent, the Complaint is legally deficient and should be dismissed as to Qatar Charity pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6) for reasons that include, but are not limited to, the below.

## The Complaint Is Legally Deficient and Should be Dismissed

(1)   ***Lack of Personal Jurisdiction.***   Plaintiffs' sole basis for personal jurisdiction is U.S. correspondent banking activity undertaken by a Qatari bank, Masraf Al Rayan, at which Qatar Charity allegedly maintained an account in Doha.  While some courts have made findings that the use of a correspondent bank is sufficient for jurisdiction, they have done so only in the case of bank defendants.  In contrast to many ATA cases, however, Qatar Charity is not a bank; it is a bank *customer*—in this case, a customer seeking to send funds from one foreign location to

another, without particular concern for the mechanism by which these transfers were accomplished. In September 2021, Judge Caproni observed that she was "[un]aware of any" authority—and we believe there is none—standing for the principle that a non-domiciliary bank *customer* may be subject to personal jurisdiction in New York "because the non-domiciliary moved money between foreign bank accounts, with the transfer passing through New York via a correspondent account." *Berdeaux v. One Coin Ltd.*, 2021 WL 4267693, at *12 (S.D.N.Y. Sept. 20, 2021) (collecting cases). Indeed, she found that applying such a theory of jurisdiction to a banking *customer* would be "nonsensical." *Id*. at *12 n.25. "Plaintiffs have not alleged that [the defendant] *directed* the use of a New York correspondent account, nor that the transfer of funds was otherwise *purposeful*. Instead, Plaintiffs allege only that [the defendant] was *aware* that a New York account would be used. That is patently insufficient under New York law to constitute the transaction of business." *Id*. at *12 (emphasis added) (citations omitted). So too here. For this reason, among others, Plaintiffs have not properly pled personal jurisdiction.

(2)     **Failure to State a Claim.** Plaintiffs cannot maintain causes of action against Qatar Charity for violations of the ATA under either a primary or secondary liability theory. Primary liability should be rejected because Plaintiffs have not plausibly alleged that Qatar Charity itself committed an act of "international terrorism" which requires the Plaintiffs to plausibly plead that Qatar Charity was directly involved, by its own actions, in "violent acts or acts dangerous to human life" that "appear to be intended to intimidate or coerce a civilian population" or "influence the policy of a government by intimidation." 18 U.S.C. § 2331(1); *see also Linde v. Arab Bank*, PLC, 882 F.3d 314, 326 (2d. Cir. 2018). Qatar Charity's conduct as alleged in the Complaint, which primarily amounts to the provision of funding for charitable and humanitarian works, does not constitute acts of international terrorism by this standard. *See, e.g.*, *Kaplan v. Lebanese Canadian Bank*, 405 F. Supp. 3d 525, 532, *vacated on other grounds*, 999 F.3d 842 (2d Cir. 2021) (S.D.N.Y. 2019) ("There is no dispute that Defendant did not itself perpetrate the [attacks in question]… [E]ven assuming, *arguendo*, that Defendant was aware that it was providing such services to Hizbollah affiliates . . . [that] does not, in itself, equate to international terrorism.") (quoting *Linde*, 882 F.3d at 326) (emphasis in original).

Moreover, Qatar Charity's alleged conduct cannot be said to have any plausible connection to the Plaintiffs' injuries. The Complaint fails to establish "a sufficiently direct relationship between the conduct in question and the injuries for which recovery is sought," and hence fails to plead proximate causation. *See Zapata v. HSBC Holdings PLC*, 414 F.Supp.3d 342, 356 (E.D.N.Y. 2019).

Plaintiffs also cannot plausibly allege secondary liability claims under either a conspiracy or an aiding-and-abetting theory, because they fail to allege, in a non-conclusory way, that Qatar Charity aided or abetted, "by knowingly providing substantial assistance," the alleged acts of international terrorism or "conspire[d] with the person who committed" the alleged act that caused Plaintiffs' injuries. 18 U.S.C. § 2333(d)(2); *see also Honickman v. BLOM Bank SAL*, 6 F.4th 487, 501 (2d Cir. 2021) (dismissing claim "because the allegations do not support an inference that BLOM Bank was aware of the Three Customers' ties with Hamas prior to the relevant attacks"). For liability to attach, the defendant must assist the principal violation—that is, an "act of international terrorism"—and must be "integral" to, or play a "major part in prompting," the act of international terrorism that caused Plaintiffs' injuries. *Linde*, 882 F.3d at 331; *Halberstam v. Welch*, 705 F.2d

January 20, 2022
Page 3 of 4

472, 484 (D.C. Cir. 1983). For many reasons, Plaintiffs cannot possibly carry this burden. This is particularly so given the concession here that the "various Hamas fronts" with which Qatar Charity allegedly collaborated on charitable projects in fact performed charitable work, notwithstanding the allegation that they had allegedly been coopted by the terrorist organizations. (*See* ECF No. 1 ¶¶ 11, 93, 131–32). As the Second Circuit clarified in affirming *Honickman*, "the relevant inquiry for the general awareness element" is whether the intermediate or affiliated entities who received funds from the defendant (here, presumably, the front organizations) "were *so closely intertwined* with the [FTO's] violent terrorist activities that one can reasonably infer that [the defendant] was generally aware . . . that it was playing a role in unlawful activities from which [the FTO's] attacks were foreseeable?" *Honickman*, 6 F.4th at 499 (emphasis added). The conclusory allegations here do not support such an inference.

(3)     ***Insufficiency of Service of Process***. On November 10, 2021, the Court granted Plaintiffs' *Ex Parte* Motion for Issuance of Letters Rogatory to serve Qatar Charity (ECF No. 16). Such service did not occur, however. Instead, an amended Summons and Complaint were purportedly delivered via Federal Express to Qatar Charity on December 20, 2021. (ECF No. 40). Service via Federal Express, even where successful, is not proper for entities based in Qatar (as Qatar Charity is) because, as Plaintiffs themselves stated: Qatar "is not a signatory to the Hague Convention . . . or any other service treaty." (ECF No. 14 at 3). Furthermore, Plaintiffs have made no showing that service mailed by the Clerk of the Court comports with Qatari law or that a person authorized to accept service signed for the delivery. *See, e.g., Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 2005 WL 1123755, at *2 (S.D.N.Y. 2005) ("service cannot be effected under [Rule 4(f)(2)(c)(ii)] in a manner 'prohibited by the law of the foreign country'"); *see also Valle v. GDT Enterprises, Inc.*, 2020 WL 435295, at *1 (E.D.N.Y. Jan. 28, 2020) (quoting *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)) ("When a defendant moves to dismiss a complaint for insufficient service of process, 'the plaintiff bears the burden of proving adequate service.'"). "Plaintiffs' silence on the issue does not allow the court to assume that service by mail is not prohibited" under Qatari law. *Nabulsi v. Zayed Al Nahyan*, 2008 WL 1924235, at *4 (S.D. Tex. Apr. 29, 2008).

*\* \* \**

In addition to the foregoing, we hereby reserve the right to adopt and incorporate additional arguments, including those made by Masraf Al Rayan and Qatar National Bank in their respective pre-motion letters. (*See* ECF Nos. 48, 49.)

January 20, 2022
Page 4 of 4

Respectfully submitted,

*/s/* John M. Hillebrecht
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
212.335.4500

John M. Hillebrecht
Kevin Walsh
Jessica Masella

*Counsel for Qatar Charity*

cc: All counsel of record (by ECF)