

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

March 23, 2023

**BY ECF**

The Honorable Ann M. Donnelly
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Henkin, et al. v. Qatar Charity, et al.*, No. 21-cv-5716 (AMD)(VMS)

Dear Judge Donnelly:

During oral argument on Defendants' motions to dismiss in the above-referenced action, held on March 16, 2023, the Court invited the parties to submit a supplemental letter regarding any issue that arose during the argument and any additional authority. *See* Mar. 16, 2023 Oral Argument Tr. ("Tr.") at 48:19-25; 50:1-5. Accordingly, Qatar National Bank (Q.P.S.C.) ("QNB") respectfully submits this letter to respond briefly to certain statements made by Plaintiffs during oral argument and to address supplemental authority that is relevant to the issues before the Court.

I.   **Personal Jurisdiction**

At oral argument, Plaintiffs confirmed that they are proceeding only on a conspiracy theory of personal jurisdiction with respect to QNB. *See* Tr. at 6:16-18; 44:20-25. Because a conspiracy theory of personal jurisdiction is not available under New York's long-arm statue (*see* ECF Nos. 54-1 at 13-14; 67 at 12), Plaintiffs may proceed on this theory only under Fed. R. Civ. P. 4(k)(2).[1]

---

[1] At oral argument, Plaintiffs' counsel stated that "Federal Rules allow us to make alternative pleadings. And even if the Court were to dismiss the case because we don't satisfy C.P.L.R. 302, we could amend our complaint and we could just say, Your Honor, we're only go[ing] to proceed under the due process analysis, because we have a federal claim in this circumstance." Tr. at 29: 18-24. As an initial matter, Plaintiffs have pleaded and briefed both theories of personal jurisdiction under C.P.L.R. 302 and due process pursuant to Fed. R. Civ. P. 4(k)(2). *See* Compl. ¶ 22; ECF No. 61 at 60-79. Plaintiffs have asserted both statutes and argued personal jurisdiction pursuant to both, including discussing due process under Rule 4(k)(2) for nearly 14 pages of their opposition brief (*see* ECF No. 61 at 60-74). This is not, therefore, a situation in which Plaintiffs should be allowed to replead and try again under Rule 4(k)(2) if the Court finds that Plaintiffs' allegations are insufficient under C.P.L.R. 302. The Court has given Plaintiffs numerous opportunities to file an amended complaint, invitations they repeatedly have declined. *See* Tr. at 31: 9-10. Accordingly, if the Court finds that personal jurisdiction as to QNB is lacking under the allegations of the Complaint, this case should be dismissed with prejudice. *Carpenter v. Republic of Chile*, No. 07-CV-5290 JS ETB, 2011 WL 2490947, at *4 (E.D.N.Y. June 22, 2011), *aff'd sub nom*. *Carpenter v. Minister of Just.*, 487 F. App'x 669 (2d Cir. 2012) (dismissing with prejudice for lack of personal jurisdiction, noting that the plaintiff "enjoyed ample opportunity to supplement the Complaint's jurisdictional allegations[.]"); *Jean-Louis v. Carrington Mortg. Servs.*, No. 19-CV-04302, 2020 WL 1042644, at *4 (E.D.N.Y. Mar. 4, 2020), *aff'd sub nom*. J*ean-Louis v. Carrington Mortg. Servs.*, LLC, 849 F. App'x 296 (2d Cir. 2021) (dismissing with prejudice for lack of personal jurisdiction, noting that leave to amend would be futile).

ROPES & GRAY LLP

As an initial matter, and as the Court recognized during oral argument, Plaintiffs' arguments with respect to Rule 4(k)(2) fail from the start because they have not represented to the Court (much less certified) that QNB is not subject to personal jurisdiction in any other state's courts of general jurisdiction, as has been required by courts in this Circuit when a plaintiff seeks to avail itself of Rule 4(k)(2). *See* ECF Nos. 54-1 at 7 n.3; 67 at 8-9; Tr. at 32: 9-11; *see also Przewozman v. Qatar Charity, et al.*, No. 20-cv-6088-NGG-TAM, 2023 WL 2562537, at *14 (E.D.N.Y. Mar. 17, 2023) ("The court is sympathetic to the 'Catch-22' situation Defendants would face if forced to bear the burden of providing an alternate location for jurisdiction"); *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 125 (S.D.N.Y. 2020) (collecting cases and observing that, "[i]n this Circuit, to meet the second requirement of Rule 4(k)(2), plaintiffs need to certify that, to their knowledge, the foreign defendant is not subject to jurisdiction in any other state").[2]

Even if Plaintiffs had carried that initial burden, as QNB explained in its briefing and at oral argument, for a conspiracy theory of personal jurisdiction to prevail, Plaintiffs must allege facts sufficient to establish (1) that a conspiracy existed (for the reasons stated in QNB's briefing and below, the allegations of the Complaint do not support an inference of a conspiracy between QNB and Hamas here), (2) that QNB participated in that conspiracy, and (3) that a co-conspirator's overt acts in furtherance of that conspiracy subjected that co-conspirator to jurisdiction in the forum. *See* ECF No. 54-1 at 20. But Plaintiffs' Complaint fails to do so.

  A. <u>Plaintiffs' Allegations Are Not Sufficient to Establish that a Conspiracy Existed or that QNB Participated in a Conspiracy.</u>

Plaintiffs continue to ask this Court to find personal jurisdiction over QNB by crediting their wholly conclusory allegations that QNB participated in some greater conspiracy by maintaining bank accounts for individuals affiliated with Hamas because, they speculate, such banking services must amount to funding the terrorist activities that caused Plaintiffs' injuries. *See e.g.*, Tr. at 77:17-25. However, those sole allegations of maintaining bank accounts are not sufficient to draw an inference that QNB participated in any conspiracy, let alone present a genuine issue of jurisdictional fact that would warrant jurisdictional discovery.

The Second Circuit's holding in *Freeman v. HSBC Holdings PLC*, 57 F.4th 66 (2d Cir. 2023) makes clear that Plaintiffs must allege that QNB conspired with Hamas and that, regardless of whether such an agreement was direct or indirect, the "complaint must nonetheless allege" at a minimum "that the coconspirators were pursuing the same object." *Freeman*, 57 F.4th at 79. Thus, Plaintiffs' assertion that *Freeman* "eliminates . . . [Defendants'] arguments that [Plaintiffs] had to allege that they conspired directly with Hamas" (Tr. at 49:9-15) for a conspiracy to exist mischaracterizes the import of the decision, especially with respect to QNB. What *Freeman* holds is that Plaintiffs must plausibly allege that QNB "shared a[] common intent" with Hamas. *Freeman*, 57 F.4th at 80 (citing *Halberstam v. Welsh*, 705 F.2d 472, 480 (D.C. Cir. 1983)).

---

[2] It is worth noting that Plaintiffs' reticence to assert that QNB is not subject to jurisdiction in any other state's courts is likely due to the fact that their counsel are *at present* asserting that QNB *is subject to personal jurisdiction in Florida* based on a substantially similar terrorist-financing conspiracy theory. *See Sotloff, et al. v. Qatar Charity, et al.*, No. 22-cv-80726-DMM (Middlebrooks, J.) (S.D. Fla.) (Perles Law Firm PC is a signatory on Plaintiffs' Complaint and opposition brief in the instant case and counsel of record in *Sotloff*).

ROPES & GRAY LLP

Here, Plaintiffs allege only that QNB provided banking services to Qatar Charity and individuals who allegedly had (in many instances years earlier) affiliations with Hamas. *See, e.g.*, Compl ¶ 3. These allegations are far less detailed than those the Second Circuit found *insufficient* in *Freeman* to show there was any common intent between the defendant banks and the terrorist groups for purposes of establishing personal jurisdiction:

> Here, the Complaint fails to allege that the Banks and the terrorist groups shared any "common intent." *Halberstam*, 705 F.2d at 480. As to the Banks, the Complaint states that they "shared the common goal of . . . providing Iran and the Iranian [b]ank[s] . . . the ability to illegally transfer billions of dollars (undetected) through the United States." J. App'x at 398 ¶ 344. With respect to the terrorist groups, the Complaint asserts that they "actively engaged in planning and perpetrating the murder and maiming of hundreds of Americans in Iraq." *Id*. at 403 ¶ 359. Nowhere in the Complaint, however, do Plaintiffs plead that the Banks intended to kill or injure U.S. service members in Iraq, or that the terrorist groups agreed to help the Banks and Iranian entities evade U.S. sanctions. In the absence of any allegation that the *Banks* and the terrorist groups "engaged in a common pursuit," *Halberstam*, 705 F.2d at 481, we cannot identify "an[y] agreement" that could form the basis of a JASTA [Justice Against Sponsors of Terrorism Act] conspiracy between the Banks and the terrorist groups, whether they conspired directly or indirectly with one another, *id*. at 477.

*Freeman*, 57 F.4th at 80.

Similarly, here, nowhere in the Complaint do Plaintiffs plead that QNB intended to injure or kill any individual in Israel or that QNB helped to facilitate transfers through New York to aid in any terrorist activity that caused Plaintiffs' injuries. Indeed, the Complaint is devoid of any allegation that QNB ever facilitated a transfer at all, much less one that the Complaint ties to Hamas' terrorist activities. Plaintiffs' Complaint therefore fails to sufficiently allege QNB's participation in any conspiracy for either jurisdictional or liability purposes under JASTA.[3]

Judge Garaufis recently came to this conclusion in *Przewozman v. Qatar Charity, et al.*, in which he dismissed plaintiffs' complaint and denied plaintiffs' request for jurisdictional discovery. No. 20-cv-6088-NGG-TAM, 2023 WL 2562537, at *18 (E.D.N.Y. Mar. 17, 2023). In *Przewozman*, the plaintiffs asserted the exact same theory of personal jurisdiction as to QNB on nearly identical allegations. As in this case, plaintiffs alleged that QNB maintained bank accounts and provided banking services for Qatar Charity and various Hamas-affiliated individuals, including for individuals who had been convicted for transferring funds to Hamas, who were later released as part of a prisoner exchange, and some of whom had continuing involvement with Hamas. *Id.* at *3. The plaintiffs there (as here) further alleged that QNB was controlled by members of the Qatari government and royal family (who were themselves alleged to have ties to Hamas). *Id.* at *18. And, like Plaintiffs here, the plaintiffs asserted that the bank accounts maintained at QNB "were used to finance Hamas . . .

---

[3] QNB adopts Masraf al Rayan's ("MAR") arguments that Plaintiffs fail to plausibly allege that a conspiracy existed under JASTA. *See* MAR March 23, 2023 Ltr. at Section II.

3

terrorist activities in Israel" because the accounts "allowed the released terrorists to finance their personal expenditures, thereby freeing them to continue to conduct activities on behalf of Hamas" and were "directly used . . . to further the efforts of Hamas . . . to carry out terrorist attacks." *Id.*[4] Judge Garaufis rightly rejected these wholly conclusory allegations as reflecting pure speculation on the part of Plaintiffs and wholly insufficient to give rise to a reasonable inference of a conspiracy between QNB and Hamas, or to raise any disputed issue of jurisdictional fact that would warrant discovery. As Judge Garaufis noted, contrary to the speculative conclusions Plaintiffs seek to draw, "[h]ow or when these accounts were used is left to the imagination," which is insufficient to establish jurisdiction. *Id.*

## II. **Jurisdictional Discovery**

Further to their request for jurisdictional discovery, Plaintiffs made clear at oral argument the type of fishing expedition they hope to undertake in search of a viable theory of personal jurisdiction as to QNB. Plaintiffs' counsel stated, "[I]f [QNB] want[s] to say there is no jurisdiction because we can't say that that money was passed on to Hamas, let's see the bank accounts. Let's see the bank records with respect to these leaders of Hamas, and we'll know for sure whether this money was passed on to Hamas to promote terrorism." Tr. at 78:1-6. In other words, Plaintiffs hope, on the basis of their purely conclusory allegations, to turn the tables on QNB to force it to prove the absence of jurisdiction. But that is not the law. The Complaint's lack of any non-conclusory allegations that QNB did anything with the accounts it maintained that would lead to an inference that QNB either joined in a conspiracy to injure Plaintiffs or funded the Hamas terrorist attacks that caused Plaintiffs' injuries precludes a finding of personal jurisdiction on the basis of this Complaint. *See* ECF Nos. 54-1 at 13-14; 67 at 12; *see also Przewozman*, 2023 WL 2562537, at *18 (criticizing plaintiffs' complaint for failing to state any factual allegations as to how QNB's accounts were used). And Plaintiffs should not be permitted to engage in a fishing expedition to review bank accounts they cannot even allege with specificity were used to promote the terrorist activity that caused Plaintiffs' injuries.

Finally, to the extent Plaintiffs seek to attribute to QNB the alleged transfers by MAR, Judge Garaufis rightly rejected that argument as well, given the temporal attenuation between those alleged transfers and any alleged injury to Plaintiffs:

> [N]one of these transfers could establish jurisdiction even if more detail were provided because, absent some factual allegation to the contrary, there is no causal connection between the transfers and the injuries suffered by Plaintiffs, which are not proximate in time. Any jurisdictional discovery at this stage would therefore amount to a fishing expedition into the existence of later transfers touching New York—transfers regarding which the Complaint is wholly silent.

*Przewozman*, 2023 WL 2562537, at *18.

---

[4] An identical allegation is made here. *See* ECF No. 1 ¶ 224 ("The accounts that QNB maintained for the above-mentioned terrorists were used to finance Hamas terrorist activities in Israel. The accounts allowed the released terrorists to finance their personal expenditures, thereby freeing them to continue to conduct activities on behalf of Hamas. In addition, the terrorists directly used those funds to further the efforts of Hamas to carry out terrorist attacks.")

ROPES & GRAY LLP

### III. Conclusion

For the foregoing reasons, the reasons stated in QNB's motion to dismiss briefing, and the reasons stated by QNB at oral argument, QNB respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

Respectfully submitted,

*/s/ Michael G. McGovern*

Michael G. McGovern

cc: All counsel of record (by ECF)