

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

John M. Hillebrecht
John.Hillebrecht@us.dlapiper.com
T  212.335.4590
F  917.778.8590

March 23, 2023

**VIA ECF**

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    ***Henkin, et al. v. Qatar Charity, et al.***, No. 21-cv-05716 (AMD) (MVS) — <u>Supplemental Letter re Qatar Charity's Motion to Dismiss the Complaint</u>

Dear Judge Donnelly:

As invited by this Court during the Parties' March 16 oral argument on the pending motions to dismiss, Defendant Qatar Charity submits this letter in further support of its motion (ECF No. 58). This letter seeks to address several points raised at oral argument and to highlight relevant authority decided following the Parties' briefing on the pending motion.[1]

**I.   *Przewozman, et al. v. Qatar Charity, et al.***

On March 17, 2023, the Honorable Nicholas Garaufis of the Eastern District of New York ordered the dismissal (without prejudice) of the Complaint in *Przewozman, et al. v. Qatar Charity, et al.*, No. 20-cv-6088 (E.D.N.Y. Mar. 17, 2023), ECF No. 60 ("*Przewozman* Op."). As to Qatar Charity, Judge Garaufis dismissed on the grounds that the plaintiffs "failed to establish a *prima facie* case for personal jurisdiction over Masraf al Rayan and Qatar Charity." (*Przewozman* Op. at 27). Notably, the jurisdictional allegations in that case are almost identical to the jurisdictional allegations in the Complaint in this matter. (*Compare Henkin* Complaint ¶¶ 10, 22-24, 156-64, *with Przewozman* Complaint ¶¶ 10, 23-25, 158-66). Judge Garaufis's analysis of a case involving the same three Defendants and strikingly similar jurisdictional allegations provides particularly salient guidance for this Court. Were this Court to reach the same conclusions as Judge Garaufis—as we respectfully submit it should—it too must dismiss the Complaint against all three Defendants.

There are several observations and holdings from Judge Garaufis's opinion particularly worth highlighting:

---

[1] To the extent not addressed herein, Qatar Charity adopts the arguments articulated by Qatar National Bank and Masraf al Rayan in their respective supplemental letters to the Court dated March 23, 2023.



Hon. Ann M. Donnelly
March 23, 2023
Page Two

*First*, Judge Garaufis "easily" rejected the *Prezwozman* plaintiffs' argument under Section 302(a)(2) of the New York Long-Arm Statute, which requires that actionable claims arise from tortious conduct committed within the state. Judge Garaufis adopted the defendants' arguments—the very same arguments made by Defendants before Your Honor both in our briefs and during the March 16th oral argument—that no tortious act was committed in New York because the use of a correspondent bank is "a normal commercial activity which is plainly not a tort" ***and*** because "there is no allegation that Masraf al Rayan or Qatar Charity was ever physically present in the state." (*Przewozman* Op. at 17-18).

*Second*, regarding Section 302(a)(1), the court focused on the "purposeful availment" prong of the statute and made several pertinent observations. Judge Garaufis noted that there were no non-conclusory allegations that Masraf al Rayan "encouraged or marketed use of its correspondent account in New York" or that "the use of the correspondent account was necessary to exchange dollars" (which, as we have argued to Your Honor, it plainly was not). (*Przewozman* Op. at 24). Judge Garaufis also repeatedly cited to and relied on Judge Caproni's decision in *Berdeaux*—which, as Your Honor surely recalls we have argued repeatedly ***compels*** dismissal as to Qatar Charity because Plaintiffs' arguments as to a bank ***customer*** are nonsensical—to hold that "there is no allegation anywhere in the Complaint that Qatar Charity . . . intended to use or was even aware of the existence of a correspondent account in New York"; "it is unclear how it would be sufficient to allege [that] Qatar Charity requested currency exchange transactions that, without their knowledge, were effected in a New York-based account." (*Przewozman* Op. at 24 & n.15 (citing and quoting *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 403 n.25 (S.D.N.Y. 2021))).

*Third*, the decision also noted that the plaintiffs' allegations "are too insubstantial to clearly establish purposeful availment of the New York banking system" and that the complaint "comes dangerously close to asserting New York jurisdiction over any financial transaction conducted in U.S. dollars." (*Przewozman* Op. at 25).

*Fourth*, as we have argued before Your Honor, the decision flatly held that "the court agrees with the many federal decisions concluding [that] New York law does not support co-conspirator jurisdiction under section 302(a)(1)," thereby rejecting what is at root the key legal theory underlying Plaintiffs' arguments before Your Honor in this case. (*Przewozman* Op. at 35).

*Finally*, the court turned to the second prong of Section 302(a)(1), "which requires that the claims at issue 'arise from the transactions.'" (*Przewozman* Op. at 26). As we recently argued before Your Honor, here the claims and the alleged contacts bear no relation as there are no plausible allegations connecting the purported transfers to Plaintiffs' injuries. Judge Garaufis acknowledged, as we have argued in this case, that the temporal gap at issue between alleged misconduct and harm was fatal to Plaintiffs' claims. (*See* Mem. in Support of Mot. to Dismiss (ECF No. 58-1), at 16; *see also* Transcript at 13:23-16:07). Judge Garaufis held: "The transactions allegedly routed through the correspondent account occurred, at latest, in 2015, while the rocket attacks did not happen until 2019. . . . This temporal gap leaves the nexus between the Defendants' New York-related acts and Plaintiffs' injuries far too attenuated."





(*Przewozman* Op. at 27). As Judge Garaufis also held, "[i]t is the Plaintiffs' burden to factually allege that the Defendants 'used an actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated." (*Przewozman* Op. at 27 (citing *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 132 (2d Cir. 2022))). Plaintiffs have not carried that burden here for the reasons previously argued, and hence they have not sufficiently alleged the necessary causal link. This absence of a "causal link" between the correspondent account and the attacks was also fatal to the *Przewozman* plaintiffs under Rule 4(k)(2), because that absence means that the allegations fail to satisfy the requirements of the Due Process Clause.

For all of these reasons, Judge Garaufis's decision provides powerful support for the arguments already made to this Court. If adopted by Your Honor, dismissal of Qatar Charity should result.

## II. Issues Raised at Oral Argument

Whether the documents submitted by Qatar Charity in connection with its briefing are properly considered on a motion to dismiss was discussed in some detail at oral argument. (*See* Transcript at 35:20-21). There is no question, however, as explained in Qatar Charity's brief, that this Court may properly consider in evaluating a motion to dismiss materials that are relied upon or explicitly incorporated into the Complaint, along with any additional materials that are integral to it or are subject to judicial notice. *See, e.g.*, *I. Meyer Pincus & Assocs. V. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991); *Donoghue v. Gad*, 2022 WL 3156181, at *3 (S.D.N.Y. Aug. 8, 2022) (documents that are integral to the complaint are those that the plaintiff has "actual notice of" and "relied upon . . . in framing the complaint"). Thus, for example, the Court can properly consider the statements and "tweets" of the State Department and United Nations and the statements of President Biden. *Christa McAuliffe Intermediate School v. De Blasio*, 364 F. Supp. 3d 253 (S.D.N.Y 2019) (taking judicial notice of information from government website, press releases, government officials' "tweets," and press interviews). Critically, "[i]f a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002). This Court should consider those materials referenced in the Complaint and should disregard all allegations that such documents undermine.

At oral argument, Plaintiffs' counsel suggested that the Supreme Court's ruling in *Ford* "foreclosed this argument that you need causation in order to have personal jurisdiction over a [d]efendant." (Transcript at 24:20-21). *Ford*, which considered products-liability claims, does not relieve a plaintiff of the need to satisfy the requirements of due process. Plaintiffs' misconstruction and misapplication of the *Ford* decision is exactly what the Supreme Court sought to avoid when it reiterated its prior holdings concerning jurisdiction over foreign defendants and, on the facts before it, found sufficient contacts with the forum to satisfy due process. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (clarifying that the holding "does not mean anything goes[]" and making clear that the relationship "among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction"— must still be "strong"). Contrary to Plaintiffs' arguments, *Ford* stands for the unremarkable



proposition that while a plaintiff need not show "a strict causal relationship" between a defendant's forum-based contacts and the claim, **he must still establish that his claim arises out of or relates to those contacts**. *Id.*; *see also, e.g.*, *Schrier v. Qatar Islamic Bank*, 2022 WL 4598630, at *19 (S.D. Fla. Sept. 30, 2022) (rejecting similar interpretation of *Ford* and holding that "the general allegation that some 'funds'—not these specific funds—flowed through the QIB accounts and went to support the Qatar Charity[]" was "too attenuated" of a relationship between the defendant's in-forum conduct and the plaintiff's ATA claims). This holding is consistent with the well-established requirements of specific personal jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court of Cal. San Francisco Cty.*, 582 U.S. 255, 262 (2017) ("[i]n order for a state to exercise specific jurisdiction, 'the suit' must 'arise out of or relate to the defendant's contacts with the forum'") (citation omitted).

   At oral argument, Plaintiffs' counsel further suggested that the Second Circuit's recent decision in *Freeman* does away with the requirement that to adequately plead conspiracy under JASTA, a plaintiff must allege that defendants "directly conspire[d] with the terrorist organization itself." (Transcript at 73:21-74:02). It is true that, in dicta, two of the three judges on a panel of the Second Circuit stated that they "disagree[d] with the district court's primary reason for dismiss[ing]" the plaintiffs' claims—the plaintiffs' failure "to plausibly allege that the [defendants] conspired directly with the terrorist groups" that injured them—while the third judge expressly disagreed. *Freeman, et al. v. HSBC Holdings PLC, et al.*, 57 F.4th 66, 75 (2d Cir. 2023); *but see id.* at 84 (Jacobs, J., concurring) (JASTA's requirement "that a defendant conspire '*with* the person who committed' acts of terrorism . . . requires that there be a direct link between a defendant bank and a terrorist"). But the court nonetheless affirmed the dismissal based on the plaintiffs' failure to "adequately allege[] that the [defendants] conspired – either directly or indirectly – with the terrorist groups that carried out the attacks, or that the terrorist attacks that killed or injured" the plaintiffs "were in furtherance of the [defendants'] alleged conspiracy." *Id.* at 75. Indirect or not, the conspiracy allegations presented here fail to plausibly allege the requisite "common intent" between Qatar Charity and the terrorists responsible for Plaintiffs' injuries. *Id.* at 80. Plaintiffs' sole purported basis for jurisdiction over these foreign Defendants with no U.S. contacts—allegedly, a years-long conspiracy to finance terrorism involving a foreign government, heads of state, respected businesses, and lauded charities—is wholly conclusory, without any well-pleaded factual content to support any plausible inference of Qatar Charity's association with any terrorist organization, much less of its involvement with the terrorist acts giving rise to Plaintiffs' injuries.

   Which leads to a more salient point here. The Court has before it a 76-page, 400-paragraph Complaint, which fails to plead non-conclusory allegations of any factual nexus that might conceivably connect these Defendants to the only terrorist acts alleged. Almost ten years have passed since the normal-course commercial transactions Plaintiffs cite as the basis for this Court's jurisdiction over these foreign entities. In light of counsel's assertion that amendment of the Complaint is not necessary, and Plaintiffs' decision to forego Your Honor's multiple invitations to do so, dismissal with prejudice is warranted here.



Hon. Ann M. Donnelly<br>
March 23, 2023<br>
Page Five

\* \* \* \*

  For all the foregoing reasons, as well as those set forth in Qatar Charity's moving papers (ECF Nos. 58 & 68), the Court should dismiss the Complaint with prejudice as against Qatar Charity.

              Respectfully submitted,

              */s/ John M. Hillebrecht*
              John M. Hillebrecht

              *Counsel for Qatar Charity*

cc:  All counsel of record (by ECF)