

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

Carolina A. Fornos
tel: 212.858.1558
carolina.fornos@pillsburylaw.com

March 23, 2023

**BY ECF**

The Honorable Ann M. Donnelly
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Henkin, et al. v. Qatar Charity, et al.*, 1:21-cv-05716-AMD-VMS

Dear Judge Donnelly:

We write on behalf of Defendant Masraf Al Rayan ("MAR") in further support of MAR's Motion to Dismiss the Complaint (ECF No. 56) and pursuant to the Court's order that the parties file supplemental letters to address recent decisions that are relevant to the issues before the Court.[1] For the reasons set forth in MAR's Motion to Dismiss, the reply, and the arguments raised during oral argument, Plaintiffs' Complaint should be dismissed in its entirety with prejudice. Amendment would not only be futile, but Plaintiffs expressly declined to amend the Complaint despite being offered the opportunity to do so by the Court. (March 16, 2023 Oral Argument Transcript ("Tr.") 31:9-10). Recent decisions underscore that dismissal is warranted.

**I.   *Przewozman v. Qatar Charity, et. al***

During oral argument on March 16, 2023, the Court asked the parties whether Judge Garaufis or Judge Cogan had ruled on Defendants' motions in *Przewozman v. Qatar Charity, et. al.*, 20-cv-6088-NGG-TAM ("*Przewozman*"), and *Force v. Qatar Charity, et. al.*, 20-cv-02578-BMC, respectively. The day after oral argument, on March 17, 2023, Judge Garaufis granted MAR's motion to dismiss in *Przewozman*, dismissing the complaint in its entirety without prejudice and expressly denying plaintiffs' request for jurisdictional discovery. (*See generally* ECF No. 76-1). The Court's reasoning in *Przewozman*, which alleges injuries arising from a 2019 attack, applies to this action, which alleges injuries arising from attacks in 2015 and 2018. (*See* Compl. ¶¶ 25, 33).

First, Judge Garaufis concluded that the Court lacked personal jurisdiction over MAR because the *Przewozman* complaint's allegations failed to satisfy the personal availment requirement, explaining that the factual inquiry required under *Licci ex rel. Licci v. Lebanese*

---

[1] MAR moved to dismiss the Complaint pursuant to Rules 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of the Civil Procedure. However, on August 16, 2022, MAR withdrew its challenges to service of process. (ECF No. 70).

*Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) was "virtually impossible." (ECF No. 76-1 at 23 n.14). The same paucity of allegations in the *Henkin* Complaint warrant dismissal of this action for lack of personal jurisdiction.[2]

Second, in addition to deficiencies associated with personal availment, Judge Garaufis held that the *Przewozman* complaint failed to assert allegations sufficient to meet the nexus requirement under New York's long-arm statute or to comply with due process pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. In so holding, Judge Garaufis concluded that "[t]here is no basis from which the court can conclude that 'the correspondent account at issue' was 'used as an instrument to achieve the very wrong alleged.'" (ECF No. 76-1 at 31-32 (*quoting Licci*, 732 F.3d at 171)). The same nexus deficiencies apply to the *Henkin* Complaint. As to the 2018 attack, a similar "temporal gap" is "fatal" to Plaintiffs' allegations. (*Id.* at 27, 31-32). As to the earlier attack, "[t]he Plaintiffs' general allegations of how Hamas and PIJ used money entirely fails to show 2015 (or earlier) transfers were used 'in the course of'" the attack in 2015 because the relationship between the correspondent bank transfers and the attacks is too attenuated. (*Id.* at 27).

Finally, Judge Garaufis concluded that "[a]ny jurisdictional discovery at this stage would [] amount to a fishing expedition" because the *Przewozman* complaint is "wholly silent" about the existence of correspondent banking transactions that did not predate Plaintiffs' injuries by years. (ECF No. 76-1 at 39). The same reasoning should apply to the *Henkin* Complaint; any jurisdictional discovery would be tantamount to a fishing expedition and could not cure the Complaint's deficiencies.

In addition, while Judge Garaufis declined to reach MAR's merits arguments, the *Przewozman* opinion properly notes that plaintiffs' allegations (contained in both complaints) as to the "direct connections between Qatar Charity and a variety of terrorist organizations around the world" are not "relevant for the purposes of Plaintiffs' claims" except as to Hamas and PIJ. (*Id.* at 4). Furthermore, critically, "[t]he Complaint includes no allegation that the United States designated Qatar Charity as a Foreign Terrorist Organization ('FTO') or Specially Designated Global Terrorist ('SDGT')." (*Id.*).

## II.     The Justice Against Sponsors of Terrorism Act ("JASTA")

While Plaintiffs repeatedly asserted at oral argument that they would be able to sustain their burden as to personal jurisdiction if they were allowed to take discovery first, the Court can dismiss the Complaint in its entirety with prejudice pursuant to Rule 12(b)(6), mooting the issue of jurisdictional discovery. *See Wildman v. Deutsche Bank Atkiengesellschaft*, 21-cv-04400 (HG)(RML), 2022 WL 17993076, at *1 n.2 (E.D.N.Y. Dec. 29, 2022) ("Because the Court grants Defendants' motions to dismiss for failure to state a claim, it does not reach the merits of [Defendants'] other arguments."). Recent decisions under JASTA support such a result.

---

[2] Judge Garaufis credited MAR's assertion, made in both actions, that "Plaintiffs fail to identify what amount or frequency of the alleged funds were actually U.S. dollars versus Euros, meaning their allegation may amount to only a *de minimis* amount of dollars passing through New York." (ECF No. 76-1 at 23 n.14 (quotations omitted)); (*see also* Tr. 12:14-15 ("We don't have a denomination with respect to how much is dollars versus how much is Euros.")); (*see id*. 20:15-20 (Plaintiffs vaguely alleging that Defendants were "regularly passing dollars through the American banking system" but that Plaintiffs "have to admit [they] don't have a dollar amount")).

First, it is telling that Plaintiffs stated at oral argument that *Freeman v. HSBC Holdings PLC*, 57 F.4th 66 (2d Cir. 2023) was "the most important case" published since the parties' briefing was filed last year. (Tr. 50:6-9). In *Freeman*, the Second Circuit *affirmed dismissal* of a complaint alleging a JASTA conspiracy violation because it failed to allege "an agreement between the Banks and the terrorist groups" and that the attacks at issue were not alleged to "further[] a conspiracy in which the Banks were participants." *Freeman*, 57 F.4th at 80. MAR thus agrees that *Freeman* is important—it compels dismissal of Plaintiffs' conspiracy liability claim.[3]

At oral argument, Plaintiffs indicated that their own letter to the Court will reference *Freeman*'s conclusion that "a JASTA conspiracy claim [does not] require[] a direct connection between the defendant and the person who commits an act of international terrorism." *Id*. at 79. However, as Judge Jacobs' concurrence notes, that "observation is dicta because, as we all agree, it does not affect the result." *Id*. at 84 (Jacobs, J., concurring). While MAR agrees with Judge Jacobs that the dicta "is wrong," *id*., the circumstances are the same as in *Freeman*: because the Complaint fails to allege the existence of a conspiracy or any acts in furtherance of one, the Court can dismiss Plaintiffs' JASTA conspiracy claim without reaching the issue of whether or not Plaintiffs are required to allege that MAR conspired with Hamas or any of its members directly.[4]

Second, *Wildman*'s dismissal of JASTA allegations is instructive. There, the court dismissed aiding-and-abetting violations because, among other reasons, "the Court cannot infer that…Defendants were generally aware while they were providing banking services to those entities that they were playing a role in unlawful activities from which Syndicate attacks in Afghanistan were foreseeable." *Wildman*, 2022 WL 17993076, at *12 (*quoting Honickman v. BLOM Bank SAL*, 6 F.4th 487, 499 (2d Cir. 2021)) (brackets and ellipses omitted). That Qatar Charity, for example, allegedly "used its accounts at [MAR]…purportedly for humanitarian purposes such as assisting Syrian refugees" (Compl. ¶ 146) demonstrates that Qatar Charity's "breadth of organizations and activities" are inconsistent with a finding that it is as "closely intertwined with [Hamas or PIJ]" as required under JASTA. *Wildman*, 2022 WL 17993076, at *12 (*quoting Honickman*, 6 F.4th at 499). In addition, *Wildman* provides further support for the proposition that "routine banking services" do not provide a basis for a finding of general awareness or substantial assistance under JASTA. *See, e.g.*, *Wildman*, 2022 WL 17993076, at *20. That Plaintiffs have failed to allege any transactions that are unusual or extraordinary for a

---

[3] The Second Circuit found "that the district court acted within in its discretion in declining to consider Plaintiffs' untimely aiding-and-abetting claims." *Id*. at 83-84.

[4] *But see King v. Habib Bank Limited*, 20-cv-4322 (LGS), 2022 WL 4537849, at *11 (S.D.N.Y. Sept. 28, 2022) (holding that "the perpetrator of the attack" must only "be a member of the same conspiracy as Defendant," and it is not necessary for them to conspire directly). *King* dealt with a defendant bank that "maintained bank accounts for the founders of al-Qaeda" and other terrorists "despite their being placed on the U.S. government's Specialty Designated Nationals and Blocked Persons list or designated as Specially Designated Global Terrorists," and also involved allegations that the defendant bank provided "non-'routine' banking services to terrorists and their allies." *Id*. at *7. The complaint there also alleged that the defendant "was repeatedly warned about ARB's ties to terrorism and continued to permit ARB to be one of its biggest U.S. dollar-clearing customers." *Id*. at *8. All of these allegations, or anything approaching them, are missing from Plaintiffs' Complaint. However, that even the primary liability claims in *King* were dismissed underlines how baseless Plaintiffs' primary liability claims are. *Id*. at *5 ("The Complaints allege that Defendants provided financial services to terrorists and the purpose of these transactions was to provide illegal support to terrorists engaged in extreme violence. The Complaints do not, however, allege the kind of direct connection to violence or endangerment of human life that would render such financial services 'acts of international terrorism' themselves. The primary liability claims are therefore dismissed.") (quotations omitted).

bank like MAR is significant—the *Wildman* opinion uses the phrase "routine banking services" 12 times.[5]

Finally, looking beyond the Second Circuit, *Bernhardt v. Islamic Republic of Iran* is relevant to consideration of Plaintiffs' allegations. 47 F.4th 856 (D.C. Cir. 2022). There, the D.C. Circuit declined to find the complaint at issue stated a JASTA aiding-and-abetting claim even where it alleged that "HSBC had client banks with ties to terrorist organizations and admitted to helping those banks evade U.S. sanctions." *Id*. at 870. The court reasoned that to find "general awareness on the facts here would mark an extension of aiding and abetting liability not supported by the ATA" and that "[t]he general awareness element is particularly important in indirect aiding and abetting claims to 'avoid subjecting incidental participants to harsh penalties or damages.'" *Id*. (*quoting Halberstam v. Welch*, 705 F.2d 472, 485 (D.C. Cir. 1983)). Even though the complaint allowed for the plausible inference "that Al Rajhi Bank maintained connections to al-Qaeda," because "Bernhardt does not allege that HSBC was aware of these connections," the D.C. Circuit affirmed dismissal of the complaint. *Bernhardt*, 47 F.4th at 869. The D.C. Circuit further held that the complaint failed to meet the substantial assistance requirement and failed to state a claim for JASTA conspiracy liability. *Id*. at 870-73.

### III. Personal Jurisdiction

Intervening decisions related to personal jurisdiction also compel a finding that the Complaint should be dismissed.

In its Memorandum of Law, MAR cited *Daou v. BLC Bank, S.A.L.*, No. 20-cv-4438 (DLC), 2021 WL 1338772 (S.D.N.Y. Apr. 9, 2021); the Second Circuit has since affirmed *Daou*. 42 F.4th 120 (2d Cir. 2022). There, the court held that plaintiffs did not allege personal jurisdiction over the defendant bank because "the alleged use of a New York correspondent account was not part of a specific transaction underlying a claim" in the complaint. *Id*. at 132. Moreover, that the defendant bank "used [New York correspondent accounts] to transfer some of the millions of dollars in the [plaintiffs'] accounts into Lebanon" is "merely coincidental" because the defendant bank "could have routed the [plaintiffs'] USD deposits through correspondent accounts in Florida, London, or Switzerland." *Id*. The Second Circuit's emphasis that the New York long-arm statute's nexus requirement "limits" jurisdiction to those claims that are "arguably connected to the transaction" requires dismissal of Plaintiffs claims. *Id.* at 130. Plaintiffs allege that Hamas received an unspecified amount of funds from Hamas-affiliated charities controlled by Hamas, who received those funds from Qatar Charity's Palestinian branches, who received those funds from Qatar Charity's Doha account, through transactions with New York correspondent banking accounts maintained by MAR. (*See* Compl. ¶¶ 10-11, 127); (*see also* Tr. 8:5-7) (admitting the

---

[5] *Bonacasa v. Standard Chartered PLC and Standard Chartered Bank*, 22-cv-3320, 2023 WL 2390718 (S.D.N.Y. Mar. 7, 2023) is inapposite. There, the court relied on the allegation that "U.S. officials explicitly told Standard Chartered executives at a meeting in New York" that "it was playing a role in the IED-making operations of al-Qaeda," giving rise to an inference of not just general awareness but specific awareness. *Id*. at *10. Moreover, *Bonacasa* is also plainly distinguishable from the matter at hand with regards to this Court's personal jurisdiction analysis. The defendant bank in *Bonacasa* had its United States headquarters in New York and had been transacting business there "[f]or decades." *Id*. at *5. Here, Plaintiffs acknowledge MAR has no New York branch or office. (Compl. ¶¶ 72, 156).

4

funds went from Qatar Charity's Palestinian branches to Hamas-affiliated entities, not Hamas). Such a chain is far too "attenuated." *Daou*, 42 F.4th at 130 (quotations omitted).

The application of *Daou* in *Reed International, Inc. v. Afghanistan Int'l Bank* is also analogous to the facts here. 21-cv-10626 (ER), 2023 WL 2138600 (S.D.N.Y. Feb. 21, 2023). "To confer long-arm jurisdiction, the correspondent banking account must have some relationship to the claims alleged from which the court can infer that the correspondent account played any role in the alleged injury." *Id*. at 6. Here, as in *Reed*, Plaintiffs "fail to connect [the] transfers to the claim at issue" because the causal chain is too attenuated. *Id*. at 7.[6]

### IV. Conclusion

While Judge Garaufis has given the *Przewozman* plaintiffs 30 days to amend their complaint, here, after MAR's Motion to Dismiss has been fully briefed for a year, Plaintiffs declined to amend the Complaint at oral argument, forfeiting their opportunity to do so upon dismissal. *Honickman v. BLOM Bank SAL*, 19-cv-0008 (KAM)(SMG), 2022 WL 1062315, at *4 (E.D.N.Y. Apr. 8, 2022) (denying plaintiffs' motion for vacatur of the dismissal of their JASTA claims because "the Second Circuit has clarified that a district court may dismiss a complaint without granting leave to amend where, as here, the Plaintiffs previously declined an opportunity to amend their complaint."); (*see also* Tr. 31:9-10 (The Court: "I think we did discuss…whether you wanted to amend, didn't we?" Mr. Bonner: "We don't feel we need to amend, Your Honor.")). For the foregoing reasons, MAR respectfully renews its request that the Court dismiss Plaintiffs' Complaint in its entirety, with prejudice.

Respectfully submitted,

/s/ *Carolina A. Fornos*

Carolina A. Fornos
Aryeh L. Kaplan (*pro hac vice*)

*Counsel for Defendant Masraf Al Rayan*

cc: All counsel of record (by ECF)

---

[6] *King* is again inapposite, as plaintiffs there alleged that the "Defendant used its New York branch – and hence New York's banking system." *King*, 2022 WL 4537849, at *3. Plaintiffs make no such allegation here. *See supra* n.6; (Compl. ¶¶ 72, 156).

5