

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

John M. Hillebrecht
John.Hillebrecht@us.dlapiper.com
T  212.335.4590
F  917.778.8590

May 10, 2023

**VIA ECF**

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Henkin, et al. v. Qatar Charity, et al.*, 21-cv-05716—Defendant Qatar Charity's
      Letter Advising Court of Recent Factual Developments Undermining Jurisdiction

Dear Judge Donnelly:

Defendant Qatar Charity submits this letter to advise the Court of recent factual developments which indisputably foreclose the sole theory of agency-based personal jurisdiction cited in Your Honor's Decision dated March 31, 2023 (ECF No. 81) (the "March 31 Decision"), which denied Defendant Qatar Charity's motion to dismiss the Complaint (ECF No. 58) and granted Plaintiffs limited jurisdictional discovery.

In conjunction with submission of this letter, Defendants Qatar Charity and Masraf al Rayan have submitted a request for adjournment of all upcoming discovery deadlines before Magistrate Judge Scanlon.[1]

### I.   The Court's March 31 Decision

As Your Honor will recall, the March 31 Decision denied Qatar Charity's motion to dismiss because Plaintiffs "ha[d] pleaded facts which could support a colorable claim that Masraf al Rayan was acting as Qatar Charity's agent" and granted discovery "limited to document requests and interrogatories sufficient to show whether Masraf al Rayan was acting as Qatar Charity's agent." (March 31 Decision at 29). Such discovery was to be "reasonably tailored to th[e] jurisdictional issue" of "the frequency with which Masraf al Rayan used . . . the Bank of New York Mellon account, and whether that use was deliberate, during the time period relevant to the terrorist attacks." (March 31 Decision at 29). Particularly with respect to Qatar Charity, the Court stated that Plaintiffs' allegations suggested that "Qatar Charity may have had direct knowledge that Masraf al Rayan was using the ***Bank of New York Mellon*** account." (March 31 Decision at 27 (emphasis added)). As set forth below, the revelation that Masraf al Rayan does not maintain a correspondent account, or any account, with the Bank of New York

---

[1] Further to the arguments set forth in this letter, Qatar Charity adopts those articulated in the letter submitted today by Masraf al Rayan on these same issues.



Mellon ("BNY Mellon") negates any need for such jurisdictional discovery and necessitates the dismissal of Plaintiffs' claims.

Plaintiffs' theory of jurisdiction fundamentally relies on their allegation that Qatar Charity initiated USD-denominated fund transfers from its bank accounts at Masraf al Rayan that passed through correspondent accounts at BNY Mellon in the United States. (*See* Transcript of March 16 Hearing at 8:8 – 9:12 ("The way the transaction occurs is . . . whatever currency is sent to Bank of New York [Mellon], here, in New York – dollars are sent to Bank of New York [Mellon], here, in New York")). The information recently provided by BNY Mellon makes clear that this based on a fundamentally incorrect set of alleged facts.

## II. Recent Developments Foreclose Any Cognizable Theory of Personal Jurisdiction Over Defendants Qatar Charity and Masraf al Rayan

On April 21, 2023, Plaintiffs improperly served a third-party subpoena on BNY Mellon seeking the production of documents responsive to five specific requests, including "[c]opies of all agreements between You and Masraf al Rayan, and all account opening documents, regardless of the date on which those agreements and documents were created." On May 9, 2023, BNY Mellon responded to that subpoena, stating with respect to that request that "Masraf al Rayan itself has never had an account at BNY Mellon." In their responses, BNY Mellon also makes clear that there were no USD-denominated transactions made by Masraf al Rayan through a BNY Mellon correspondent account on behalf of Qatar Charity during the relevant period and that "it has never had a relationship of any kind with Qatar Charity and had no communication of which it is aware during the [relevant] period." This information is fatal to Plaintiffs' claims.

In the March 31 Decision, this Court declined to dismiss Plaintiffs' claims as to Qatar Charity on the basis of personal jurisdiction, stating that it could not "at this point determine whether an agency relationship existed between Masraf al Rayan and Qatar Charity sufficient to confer jurisdiction over Qatar Charity based on Masraf al Rayan's use of its correspondent bank account." (March 31 Decision at 20). The non-existence of the purported correspondent account at BNY Mellon destroys Plaintiffs' theory of the case and any colorable argument for personal jurisdiction over Qatar Charity. Simply stated, Qatar Charity has no contacts with the forum that can ground personal jurisdiction.

## III. Such Recent Developments Further Divest This Court of Subject Matter Jurisdiction

Unlike personal jurisdiction, a challenge to subject matter jurisdiction may be raised and considered by the Court at any time, and if it is found lacking the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("subject-matter delineations must be policed by the courts on their own initiative even at the highest level"). As the Court is aware, Plaintiffs' claims arise from the Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"). The ATA provides that:

> Any national of the United States injured in his or her person, property or business by reason of an act of international terrorism,



> or his or her estate, survivors, or heirs may sue therefore in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

28 U.S.C. § 2333. Plaintiffs have not alleged any action by Qatar Charity that might support an ATA claim, other than the purported agency relationship with Masraf al Rayan as it relates to any transfers made through the non-existent BNY Mellon correspondent account. Now that such theory is refuted, the Court has no basis to assert jurisdiction over foreign defendants—nor does it have the power to bind Qatar Charity, which expressly contests whether it is subject to jurisdiction sufficient to require its participation in any discovery, however limited. The Court must satisfy itself of its jurisdiction. The sole basis for such jurisdiction is now refuted, requiring dismissal.

### IV. Discovery Abuses Already Occurring

The Court need not look far to observe how Plaintiffs have seized upon Your Honor's March 31 Decision to engage in the type of discovery that Judge Garaufis aptly characterized as a "fishing expedition." *Przewozman v. Qatar Charity, et al.*, 2023 WL 2562537, at *18 (E.D.N.Y. Mar. 17, 2023).[2] Plaintiffs' unscrupulous tactics manifested themselves within 14 days of Your Honor's Decision. Far from honoring the limited jurisdictional discovery that Your Honor contemplated per the express language of the March 31 decision, Plaintiffs' have sought discovery far exceeding the ordered scope, including via a third-party subpoena directed to BNY Mellon. A copy of the Plaintiffs' first set of discovery requests to Qatar Charity are attached as **Exhibit A**.

The March 31 Decision is clear as to the "limited" nature (March 31 Decision at 26) of the jurisdictional discovery it authorizes. As this Court made explicit, "[d]iscovery will be limited to document requests and interrogatories that could show the frequency with which Masraf al Rayan used . . . the Bank of New York Mellon account, and whether that use was deliberate, during the time period relevant to the terrorist attacks, and that the plaintiffs' claims arose from Masraf al Rayan contacts with New York." Under the plain directive of the March 31 Decision, any appropriate request must be limited to inquiries focused on (a) Masraf al Rayan's use of the purported BNY Mellon account (and no other putative account), (b) in New York (and nowhere else), (c) during the "time period relevant to the terrorist attacks." (March 31 Decision at 29).

In addition to these defined restrictions as to the scope of the limited discovery authorized, as to Qatar Charity specifically Your Honor expressly ordered that "discovery will be limited to document requests and interrogatories sufficient to show whether Masraf al Rayan was acting as Qatar Charity's agent." (March 31 Decision at 29). The March 31 Decision then emphasizes that "[d]iscovery must be reasonably tailored to this jurisdictional issue." (March 31

---

[2] The March 31 Decision distinguished the facts at bar from those alleged in Przewozman, noting "[t]here is one significant factual difference between this case and *Przewozman*: the terrorist attack in *Przewozman* occurred in 2019, more than four years after the last Bank of New York Mellon transaction alleged in the complaint, . . . while the first attack in this case took place in 2015, and the second in 2018." (March 31 Decision at 8). Once again, the non-existence of the BNY Mellon correspondent account moots the reasoning of the Decision.



Decision at 29). As the Complaint makes explicit, and as the Decision also recognized, Plaintiffs' theory is that Masraf al Rayan utilized a BNY Mellon account in New York to transfer U.S. Dollars to the Palestinian Territories. (*See, e.g.*, Complaint ¶ 130; March 31 Decision at 14). Thus, any compliant request of Qatar Charity must, per the plain terms of the Order, be limited to requests relating to whether Masraf al Rayan was acting as Qatar Charity's agent in using a BNY Mellon account in New York to transfer U.S. Dollars to the Palestinian Territories during the "time period relevant to the terrorist attacks." Plaintiffs' Requests go far afield from these limitations, are not authorized by the Decision, and are, indeed, contrary to its explicit terms. Furthermore, now that BNY Mellon has confirmed that there is no such correspondent account, this should mark the end of the limited jurisdictional discovery.

\* \* \* \*

For the foregoing reasons, as well as those set forth in Qatar Charity's moving papers (ECF Nos. 58 & 68) and supplemental letter briefing (ECF No. 78), the Court should dismiss the Complaint with prejudice as against Qatar Charity.

Respectfully submitted,

*/s/ John M. Hillebrecht*
John M. Hillebrecht

*Counsel for Qatar Charity*

Encl.

cc: All counsel of record (by ECF)