# FLEISCHMAN BONNER & ROCCO LLP
## ATTORNEYS AT LAW

81 Main Street • Suite 515 • White Plains • New York • 10601
Tel: 908-516-2066 • Fax: 908-516-2049 • Web: WWW.FBRLLP.COM

Email: PRocco@fbrllp.com

May 12, 2023

**Via ECF**

The Honorable Ann M. Donnelly
United States District Judge
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

**Re:** *Henkin, et al. v. Qatar Charity, et al.,* 21-cv-05716-AMD-VMS

Dear Judge Donnelly:

My firm represents Plaintiffs in the above-captioned action, in which the Court denied without prejudice motions to dismiss by Qatar Charity and Masraf al Rayan (collectively "Defendants") and assigned Magistrate Judge Scanlon to "manage the jurisdictional discovery and set a briefing schedule for any additional dispositive motions." ECF 81 at 29.  We submit this letter in opposition to: (1) Masraf al Rayan's ("Masraf") request for "a pre-motion conference to file a renewed motion to dismiss" (*see* ECF 83 at 1), and (2) Qatar Charity's letter seeking immediate termination of discovery and dismissal of Plaintiffs' claims.  *See* ECF 84 at 1, 2.  Defendants' applications violate this Court's order assigning the management of jurisdictional discovery and the scheduling of additional dispositive motions to Magistrate Scanlon.  For that reason alone, the Court should summarily deny Defendants' requests.

Contrary to Defendants' arguments, jurisdictional discovery has not "revealed" anything because Plaintiffs have not yet received any discovery from Defendants.  The deadline for Defendants' written responses and objections is not until May 15.  ECF 83 at 1 n.1.  Defendants thus seek to shut down the Court-ordered discovery before it has even begun because they know that good faith responses will demonstrate that Masraf purposefully availed itself of the New York banking system to further Defendants' conspiracy to finance Hamas.

After meet-and-confer discussions with Defendants' counsel, Plaintiffs significantly reduced the scope of their requests, as reflected in the documents annexed as Exhibits 1 (Qatar Charity) and 2 (Masraf).  The parties also agreed that, on May 10, 2023, they would submit a joint letter to Magistrate Scanlon outlining their three disputes, including the issue at the heart of Defendants' current applications—their objection to providing discovery concerning Masraf's use of correspondent accounts at any bank other than Bank of New York Mellon ("BONY").  The two additional issues the parties agreed to submit to Magistrate Scanlon were: (1) the parties' dispute regarding "the time period relevant to the terrorist attacks" (ECF 81 at 29); and (2) whether the "document requests" the Court authorized include requests directed to Masraf's correspondent bank.  Despite the parties' agreement, Masraf elected to seek a pre-motion conference rather than submitting the joint discovery letter to the Magistrate.

As "support" for ignoring the Court's Order and the parties' agreement, Defendants cite the written objections to a subpoena Plaintiffs served on BONY in accordance with the Court's order permitting service of "document requests . . . that could show the frequency with which Masraf …

used . . . the [BONY] account, and whether that use was deliberate." ECF 81 at 29.[1] Those objections state—contrary to Plaintiffs' counsel's understanding—that Masraf maintained no account at BONY during the relevant period. Defendants seize upon this fact to argue that Plaintiffs' apparent misidentification of which institution served as Masraf's correspondent bank requires the termination of all jurisdictional discovery before it has even begun.

As Qatar Charity previously noted, "the central allegation upon which Plaintiffs seek to base their personal jurisdiction argument [is that] U.S. Dollars were transferred through *a correspondent account* in New York." ECF 68 at 2 (emphasis added). Contrary to what Defendants now argue, whether that correspondent account was at BONY, or another New York bank, is not "fundamental[]" to Plaintiffs' personal jurisdiction theory. See ECF 84 at 2. Rather, jurisdiction turns on Masraf's "repeated use of *a correspondent account* in New York on behalf of a client." *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339 (2012) (emphasis added).

Defendants also ignore that Plaintiffs have more generally alleged, in compliance with Rule 8(a)(1)'s notice pleading requirement, that Masraf purposefully availed itself of correspondent banking services in New York. See ECF 1 at ¶ 156 (Masraf "arranged with *banking institutions* that maintained offices located in New York to conduct 'correspondent banking' transactions that allowed Masraf … to move USD through the international banking system"); ¶ 161 (Masraf "maintained a direct or indirect banking relationship with Bank of New York Mellon, *and perhaps other U.S. banks*"); ¶ 163 ("By means of the transactions that Masraf … conducted through its *correspondent accounts*, the bank was able to" conduct the relevant transfers); ¶ 164 ("Masraf … used its *correspondent banking relationships* in New York to process USD transactions for Qatar Charity.") (all emphases added).

Moreover, as Plaintiffs emphasized at oral argument, those allegations are fully supported by the July 26, 2017 Israeli indictment, conviction, and sentencing of Qatar Charity's Ramallah office accountant, Fadi Manasra, which admitted that Masraf passed dollars through "a bank in New York" for Qatar Charity. See ECF 79-1 at 11 at ¶ 5. Although Defendants initially claimed Mr. Manasra's confession did not exist, the Court has recognized it as a document relied upon and incorporated into the Complaint. See, e.g., ECF 81 at 4-5, 6, 16, 27 (citing ECF 79-1 at 11). That document, which would suffice to prove Defendants' use of the New York banking system at trial, defeats Defendants' hyperbolic claims regarding the significance of the misidentification of the specific correspondent bank Masraf used to move those funds. See, e.g., *Sander v. Enerco Grp., Inc.*, 2023 WL 1779691, at *2 (S.D.N.Y. Feb. 6, 2023) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, controls ....") (internal quotation omitted).

Thus, contrary to Defendants' claims, Plaintiffs' theory of personal jurisdiction is anything but frivolous, and the discovery they seek defies Defendants' efforts to deem the requests a fishing expedition.[2] Rather, Plaintiffs' central allegation that Defendants used a New York correspondent bank to pass money to a banned, Hamas-affiliated organization is based upon documentary

---

[1] Defendants mischaracterize Plaintiffs' document subpoena as "improper[]," "unscrupulous," a "discovery abuse[]," and "in circumvention of the Court's order" (ECF 83 at 2; ECF 84 at 1, 2, 3), despite the fact that the Court did not limit "document requests" to those served under Rule 34. When notified of Defendants' objection that the document subpoena was allegedly beyond the scope of the Court-ordered discovery, Plaintiffs voluntarily adjourned the return date of the subpoena until the parties could obtain the Magistrate's guidance at the hearing scheduled for May 16.

[2] *See, e.g., Singer v. Bank of Palestine*, 2021 WL 4205176, at *7 (E.D.N.Y. Apr. 30, 2021) ("While a court should not approve a fishing expedition when little more exists than plaintiff's bare assertions that jurisdiction is proper, under New York law plaintiffs are entitled to discovery regarding the issue of personal jurisdiction if they have made a sufficient start, and shown their position not to be frivolous.") (internal quotation omitted).

evidence Defendants incredibly claimed they could not access, despite having submitted a copy of it to the Court. *See* ECF 68-2 at 10-12. A Qatar Charity employee is the source of that information. And Defendants are well aware both that they used a New York correspondent bank and the identity of that institution, which they currently refuse to identify. Plaintiffs' allegations thus easily satisfy Rule 8(a)(1)'s notice pleading requirements.

The Court granted Plaintiffs the ability to conduct discovery "to develop the record" regarding Defendants' use of the New York banking system. ECF 81 at 26. Plaintiffs have sought precisely this information by propounding discovery asking Masraf to identify any New York bank accounts it used to process U.S. dollar-denominated transactions for Qatar Charity and to produce documents related to those accounts.

Masraf has refused to produce *any* such information. Instead, it seeks to hide the ball by claiming that Plaintiffs can only obtain discovery concerning a Masraf account at BONY that apparently does not exist. No purpose would be served—other than potentially insulating Defendants from the consequences of their support for a known terrorist front—by denying Plaintiffs discovery regarding the specifics of the very transactions they identified in their Complaint based upon Mr. Manasra's admissions. In that regard, it is significant that Masraf's counsel have refused to certify that their client did not use a New York correspondent account in connection with the relevant transactions. Instead Masraf seizes upon Plaintiffs' misidentification of the institution that conducted those non-public, confidential correspondent banking transactions as a basis for dismissing Plaintiffs' claims although Defendants know the identity of that institution. That tactic is pure gamesmanship that undermines the Federal Rules' purpose of promoting the "just" resolution of litigation. *See* Fed. R. Civ. P. 1.

At bottom, the steps the Court should take at this juncture turn upon the reasons the Court granted jurisdictional discovery and its objective in providing that relief. If the Court permitted Plaintiffs to conduct discovery solely because they identified BONY as Masraf's correspondent bank, then perhaps the Court should terminate discovery and adjudicate Defendants' motions to dismiss. If the Court grants those motions on the current record because Plaintiffs mis-identified the relevant bank, however, Plaintiffs will request their first amendment of the Complaint. In that event, the parties will likely be back in the same positions they occupy today, only at a much later date. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

If, on the other hand, the Court noted Mr. Manasra's confession and wished to provide Plaintiffs with the required reasonable opportunity "to determine whether there are additional facts that would permit the Court to determine whether there is personal jurisdiction" (ECF 81 at 26), the reasonable discovery concerning Defendants' correspondent banking transactions that Plaintiffs have sought will serve that objective. *See, e.g., Singer,* 2021 WL 4205176, at *7. Only that approach will promote the interests of justice in this important matter, where Plaintiffs' decedents died at the hands of Hamas terrorists, and senior officials of Qatar Charity have confessed that Masraf used a New York correspondent bank to provide financial support for Qatar Charity, a banned supporter of Hamas that Israel explicitly warned Masraf not to service.

For the foregoing reasons, the Court should deny the relief Defendants seek and order them to provide reasonable discovery regarding their use of New York correspondent accounts.

Respectfully submitted,

/s/ Patrick L. Rocco

Attachments