1            UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF NEW YORK

3    ANNE CHANA HENKIN, ET AL.,    .    Docket No.
                                   .    1:21-cv-05716-AMD-VMS
4         Plaintiffs,              .
                                   .
5             v.                   .    Brooklyn, New York
                                   .    Tuesday, May 16, 2023
6    QATAR CHARITY, ET AL.,        .    9:36 a.m.
                                   .
7         Defendants.              .
     . . . . . . . . . . . . . .   .

8                TRANSCRIPT OF STATUS CONFERENCE
9          BEFORE THE HONORABLE VERA M. SCANLON
              UNITED STATES MAGISTRATE JUDGE
10

11   APPEARANCES:

12   For the Plaintiffs:        Fleishman Bonner & Rocco LLP
                                PATRICK L. ROCCO, ESQ.
13                              81 Main Street, Suite 515
                                White Plains, New York  10601
14                              914-278-5100

15   For the Defendant,         DLA Piper LLP US
     Qatar Charity:             JOHN M. HILLEBRECHT, ESQ.
16                              MICHAEL G. LEWIS, ESQ.
                                1251 Avenue of the Americas
17                              New York, New York  10020
                                212-335-4945

18   For the Defendant,         Pillsbury Winthrop Shaw and
     Masraf Al Rayan:           Pittman, LLP
19                              ARTEY KAPLAN, ESQ.
                                CAROLINA A. FORNOS, ESQ.
20                              31 West 52nd Street
                                New York, New York 10019
21                              212-858-1000

22   Transcription Service:     Superior Reporting Services LLC
                                P.O. Box 5032
23                              Maryville, TN 37802
                                865-344-3150
24

25        Proceedings recorded by electronic sound recording;
          transcript produced by transcription service.

```
 1                    P R O C E E D I N G S
 2              THE COURT:  All right.  This is Henkin versus Qatar
 3    Charity, 21-cv-5716.  Let's start with Plaintiff's counsel.
 4              MR. ROCCO:  Good morning, Your Honor.  Pat Rocco,
 5    Fleishman Bonner & Rocco for Plaintiffs.
 6              THE COURT:  Okay.  You have a lot of clients.
 7              All right.  For Defendants starting with Qatar
 8    Charity.
 9              MR. LEWIS:  Good morning, Your Honor.  Michael
10    Lewis with DLA Piper, LLP U.S. on behalf of Defendant Qatar
11    Charity.  Along with me today is my colleague John
12    Hillebrecht also with DLA Piper.
13              THE COURT:  Okay.  All right.  And then for Qatar
14    National Bank, anybody?  Nobody?  All right.  I'm just going
15    down the list.
16              For Masraf Al Rayan?
17              MR. KAPLAN:  Good morning, Judge Scanlon.  My name
18    is Aryeh Kaplan.  Along with me is Carolina Fornos.  We
19    represent Masraf Al Rayan, and we're with the Law Firm of
20    Pillsbury Winthrop Shaw and Pittman.
21              THE COURT:  Okay.  Anybody else?  We're good.  All
22    right.  So this is a follow-on to the conference -- or
23    motion, rather, and decision from Judge Donnelly where she
24    directed that there be jurisdictional discovery.
25              So let me just get Plaintiff's current thinking
```

1   about what that should include, and then Defendants, your

2   respective position.  You know, I've read the submissions

3   with Judge Donnelly.  I also have your letter from May 15th

4   on the docket at 88 with your proposed schedule.  I suppose

5   there may be many issues that will come up, but I'm

6   particularly interested in the one that seems to have already

7   bubbled up, which is that it might be that the bank that the

8   Plaintiff's thought was the corresponding bank is not the

9   right bank.  And how, if that should be -- the proper entity

10  should be identified at this stage.  But you can give the

11  bigger picture since this is the first time we're meeting and

12  talking about this.

13          MR. ROCCO:  Thank you, Your Honor.  Do you prefer I

14  stand or --

15          THE COURT:  No.  Actually, if you don't mind, stay

16  seated, use the microphone.  I can hear you better.  We get a

17  better recording.  Thank you.

18          MR. ROCCO:  All right.  Thank you, Your Honor.  So

19  as Your Honor is probably aware, Plaintiffs are U.S. citizens

20  who were victimized by two Hamas terrorist attacks in the

21  Palestinian territory.  One, in October of 2015.  The other

22  in September of 2018.  And the Defendants are Qatar entities

23  who are not subject to general jurisdiction anywhere in the

24  U.S.

25          So we have a specific jurisdiction theory under

1    CPLR 302 and Rule 4.  Based on the allegations of the

2    complaint that the Defendant Masraf Al Rayan Bank used one or

3    more New York corresponding bank accounts to transfer money

4    from Defendant Qatar Charity's Doha accounts through New York

5    to the Palestinian territories, and ultimately to Hamas to

6    fund the terrorist attacks that are at issue here.  And the

7    roadblock that's currently presented is that we served a

8    subpoena on the Bank of New York because we had believed that

9    the Bank of New York was, in fact, the corresponding account

10   for Masraf Al Rayan.

11          It turns out, according to that response, they are

12   not.  And so Masraf had refused to tell us whether they have

13   a New York correspondent account other than the Bank of New

14   York.  Their document request responses that they just filed

15   last night don't tell us that either.  Even though Rule 34-C

16   says you have to identify if you're withholding any documents

17   or information.  Based on the objection, they don't tell us

18   whether they're withholding information about a New York

19   correspondent account other than Bone (ph).

20          Their position is that they don't have to tell us

21   because we guessed wrong, essentially, Your Honor,

22   because -- and the problem with that is we have more than one

23   allegation in the complaint.  We allege generally that they

24   used correspondent accounts.  And more importantly, rather

25   than have -- the argument is this is some fishing expedition.

1   We have an actual guilty plea of Mr. Mansoura, who's an agent

2   of the Defendant, Qatar Charity, who actually had personal

3   knowledge of the bank transfers.  And he admitted and

4   testified that they sent money from Doha to a bank in New

5   York, which apparently we had interpreted as the Bank of New

6   York.  And that that money then went in U.S. dollars back to

7   the Palestinian territory.  So we've got a specific

8   allegation, and as we've said, to Judge --

9               THE COURT:  Donnelly.

10              MR. ROCCO:  -- Donnelly, that -- you know, the

11  actual -- we put in evidence, the actual plea, which is

12  ECF-79-1, the guilty plea and indictment.  And that

13  identifies a bank in New York as the bank that Masraf passed

14  the money through.  It doesn't say the Bank of New York.

15              So we've got a basis to pursue the actual bank.

16  And I think what we're seeing here is that they're just not

17  wanting to tell us who that bank is.  And the first -- the

18  very first interrogatory, we asked to say tell us all of

19  you -- you know, we modified.  We originally said tell us all

20  your U.S. correspondent accounts.  We agreed to say just your

21  New York correspondent accounts.  They refused to answer that

22  question.  They say, "All you get is whether it's the Bank of

23  New York, and if you guessed wrong, you're not entitled to

24  know where we passed the money though."

25              THE COURT:  Yeah.

 1          MR. ROCCO:  But we've got a guilty plea saying that

 2     they did it.  And so we have a basis to seek that

 3     jurisdictional discovery.  And the fact that they're telling

 4     us we're not entitled to it -- and again, Your Honor, what

 5     I'm saying is they're not saying that they don't have a New

 6     York correspondent account, they're refusing to say whether

 7     they have one, and they're refusing to respond to that basic

 8     question.  And so our first interrogatory says, "Identify all

 9     your New York correspondent accounts that you used for Qatar

10     Charity."  They refuse to answer that.  And then everything

11     else flows from there.  We want the documents, et cetera.

12          THE COURT:  All right.

13          MR. ROCCO:  :  So that's the first -- you know, the

14     primary problem we're faced with here.

15          THE COURT:  Okay.  I'm going to put aside the point

16     about the subpoena, because that might be overreaching based

17     on Judge Donnelly's decision, at least as things are now.

18     But we'll see where this all goes.  All right.

19          I'll just tell you, I read all this.  We're not

20     going to play "gotcha" here.  So what's going on, what's the

21     account/accounts, et cetera.  Because I'm focused on page 29

22     of Judge Donnelly's decision, which is the paragraph that has

23     the discovery will be limited, et cetera, et cetera.

24          MR. KAPLAN:  Yes.

25          THE COURT:  Go ahead.

1          MR. KAPLAN:  Good morning, Judge Scanlon.  As I

2  said before, my name is Aryeh Kaplan and with Ms. Fornos I

3  represent Masraf Al Rayan Bank.  Your Honor, with your

4  permission, may I just take a step back to talk about --

5          THE COURT:  Sure.  Yeah.  This is the first time --

6          MR. KAPLAN:  -- sort of where we are before the

7  Court.

8          THE COURT:  -- we've talked.

9          MR. KAPLAN:  So Your Honor is correct.  Judge

10  Scanlon, this motion to dismiss was briefed and argued before

11  Judge Donnelly, obviously, the resulting order before Your

12  Honor.  The linchpin issue before the Court was that Judge

13  Donnelly, in her order, was concerned that there wasn't

14  jurisdiction, which is why there's jurisdictional discovery

15  in the epicenter on page 29 of her order is that the

16  jurisdictional discovery would be limited to interrogatories

17  and documents requests to show the frequency Masraf Al Rayan

18  used Bank of New York.

19          Your Honor, Judge Scanlon, the pleading before the

20  Court, the operative pleading, the complaint that's been

21  pending for almost two years, if not more, pled the Bank of

22  New York Melon was the correspondent bank used.  Your Honor

23  asked earlier if there was a representative from Qatar

24  National Bank here.  And there isn't.  I'm assuming because

25  Judge Donnelly dismissed them.  And when Judge Donnelly had

1   the hearing, I think one of the concerns she articulated,

2   this is on the record, it's in the order, was that there was

3   no correspondent bank that was directly identified relative

4   to Qatar National Bank.  So in the absence of Bank of New

5   York Mellon, which was the one that was identified from

6   Masraf Al Rayan is creating a correspondent relationship

7   where it's alleged that dollars passed through and then went

8   to a Palestinian financial institution, there's just

9   conclusory allegations.  Plaintiffs pled their complaint as

10  they did.  Judge Scanlon, we were respecting the order.

11         Now, I want to be very clear because Your Honor

12  addressed something.  There is no (indiscernible) going on.

13  Just to take another step back.  Two weeks after the order

14  that Judge Donnelly issued, we received these requests for

15  production and interrogatory requests.  So it was two weeks

16  after that, that coincided with the middle of the Ramadan

17  holiday.

18         And as Mr. Rocco's aware, Masraf Al Rayan is a

19  Shariah-compliant bank.  He pleads it in his complaint.

20  Masraf Al Rayan was in the middle of Ramadan.  And so

21  fundamentally, it was virtually impossible for me to have any

22  meaningful client contact.  This is not an institution as I

23  think Mr. Rocco has described in his complaint.  This is not

24  an institution, a bank, that's here in New York or had New

25  York employees or New York branches or New York general

1    counsel.  It's in the middle of Doha Qatar.  And so in order

2    for me, as an officer of the court, to even being to respond

3    to the request that we received, it requires me to speak with

4    my client.

5              And so, Judge, not only --

6              THE COURT:  All right.  But we've had Eid.  So

7    okay.  So this is not a question of timing.  This is -- at

8    least not yet, right?  This is a question of are you

9    continuing -- or is it your position that you're only going

10   to answer questions about Bank of New York Mellon when it's

11   pretty obvious that the whole theory of the case is that

12   there was a corresponding account, possibly more in New York

13   that was used for the transmission of these funds from Qatar,

14   New York, back to whatever one's political sense is,

15   Palestine/Israel.

16             MR. KAPLAN:  Your Honor, to address your question.

17   If the Plaintiffs were to file a letter motion to compel on

18   the issue, then we would respond to it and we'll fully brief

19   if the Court --

20             THE COURT:  No.  We're doing it right now.  I mean,

21   at a minimum -- we're having this conversation.  I want to

22   know what your position is --

23             MR. KAPLAN:  Okay.

24             THE COURT:  -- and we're going to speed it up

25   because --

1          MR. KAPLAN:  Absolutely.

2          THE COURT:  -- this is -- it appears, having looked

3   at all this, this is a bottleneck issue.

4          MR. KAPLAN:  Okay.

5          THE COURT:  And it's key to their case.

6          MR. KAPLAN:  Your Honor, let me -- then I'll

7   address it directly.

8          THE COURT:  So that's the story.

9          MR. KAPLAN:  Based on our read of Judge Donnelly's

10  order, and as I think is set out in the letter to the Court,

11  we intend to read the order as we think it's written, which

12  would require us to produce documents and other information

13  for a time period from 2012 to 2015 in which Qatar Charity

14  through Masraf Al Rayan, to the extent that it occurred,

15  transferred U.S. dollars through Bank of New York Mellon into

16  a Palestinian financial institution.  That is our read of the

17  order, Your Honor.  That's consistent with the objections

18  that we served yesterday.

19         THE COURT:  I mean, part of me thinks, like, are

20  you serious?  Obviously, the whole complaint is about this

21  theory that the money flowed from Qatar, New York, back out

22  where it shouldn't have gone.  I don't know if that happened

23  or not.  They don't know if it happened or not.

24         It's an odd situation to say that they are supposed

25  to know before there was discovery the particular details.

1    But, you know, in the world of pleading requirements that may

2    be above what the federal rules of civil procedure say,

3    especially in these international cases and trying to deal

4    with the various theories that there would be jurisdiction

5    here, they reached for Bank of New York Mellon.  You know, if

6    that's wrong, that's wrong.  I don't think they should have

7    sent out the subpoena, but the question is, is there an

8    account, was there an account, did it happen?  That is what

9    this case is about.  I have no idea whether it did happen or

10   didn't happen.  But --

11         So are you not going to answer the question on

12   behalf of your client as to whether there was any

13   corresponding account in New York in, again, the years you're

14   suggesting, 2012, 2015.  You know, I don't know if you're

15   on -- if Plaintiff is on board with the same years, but as to

16   whatever the relevant period of time is.

17         MR. KAPLAN:  Judge Scanlon, I just want to make

18   sure that I answer your questions.  So I need to make sure

19   that I understand it.  Are you asking me, Your Honor, whether

20   we will respond in due course, or as an officer of the court

21   before Your Honor today, to answer your question?

22         THE COURT:  Well, it's not a mystery.  It's the

23   first entry question is, what were -- if there were, what

24   were the names, identifying information of corresponding

25   accounts used by Masraf Al Rayan in New York in the relevant

1   period.  We can fine tune this question in a little bit.

2   But, you know, your position appears to be that the only one

3   that you're going to answer questions about is if whether

4   there was a Bank of New York Mellon account or account which

5   Plaintiff currently -- Plaintiffs currently think is not

6   because the bank said no, we don't have that kind of -- we

7   never had that kind of account.  We don't have that kind of

8   account.  However, they phrased it.

9          MR. KAPLAN:  Yes, Your Honor.  So to directly

10  answer your question, if required by the Court, we'll,

11  obviously -- we'll follow the order Your Honor, Judge

12  Scanlon.  I'm not in a position as an officer of the court to

13  make a representation on the record.  I would not be

14  comfortable doing that.

15         THE COURT:  About the substance.  I'm not --

16         MR. KAPLAN:  About the substance.

17         THE COURT:  -- asking you about -- yeah.  I'm not

18  asking whether there was an account.  I'm asking you, is your

19  position --

20         MR. KAPLAN:  Yes.

21         THE COURT:  -- that you will answer questions via

22  interrogatory and document requests probably served by the

23  Plaintiff, and y'all can try to work out the timeline.  And

24  if you can't, I will.  But about accounts other than the one

25  that the Plaintiff or accounts that the Plaintiff thought

1  existed in Bank of New York Mellon.

2  MR. KAPLAN:  Judge Scanlon, if Your Honor is

3  indicating to us, which I think Your Honor is.

4  THE COURT:  I'm pretty clear about that.  Yeah.

5  MR. KAPLAN:  Yeah.  That this is what the Court is

6  ultimately going to rule --

7  THE COURT:  Yes.

8  MR. KAPLAN:  -- what I would ask Your Honor to do

9  is permit us to have an opportunity to confer with our client

10  and indicate to our client Your Honor's strong preference.

11  Because we want to make sure that we move the case along as

12  the Court is going to require, it would really -- Your Honor,

13  to the extent that you would indulge it, especially given the

14  fact that -- that the briefing would be entirely briefed

15  before the Court in the next, I think, would be 10 days.  I

16  really do think it would be beneficial at least to make a

17  record for Defendants, for us to be able to explain to the

18  Court in more --

19  THE COURT:  More than what's already here?

20  MR. KAPLAN:  Your Honor, we've not flushed out our

21  various positions.  And I know Your Honor  --

22  THE COURT:  Okay.

23  MR. KAPLAN:  -- keeps talking about the order.  I'm

24  being entirely deferential to that order and the argument

25  that we appeared at as well, and Judge Donnelly specifically

1   referenced Bank of New York Mellon several times.  And, Judge

2   Scanlon, I want to be very specific and clear when I say the

3   following.  Your Honor said that they may have got the bank

4   wrong.  I understand that.  But Mr. Rocco has been very

5   insistent as -- as has his firm, including at the hearing,

6   that one of the reasons why this complaint should be given

7   such gravitas is because there's a confession.  And the --

8            THE COURT:  Yes.

9            MR. KAPLAN:  -- complaint that was pending before

10  Judge Donnelly was pending for approximately two years on the

11  basis of the investigation they extensively did, and that

12  confession.  And the actual verbiage, the words used in that

13  complaint that formed the predicate of the order are Bank of

14  New York Mellon.  That's what my client was on notice of.

15  That's one of the reasons, if we were to look -- and I'd like

16  to brief this.  One of the reasons why Judge Donnelly ordered

17  what she did was because relative to Qatar National Bank,

18  there was no such mention.  And so I'm -- I believe, Your

19  Honor, Judge Scanlon, that if at least afforded the

20  opportunity, we could articulate the various reasons why,

21  consistent with the order, we believe it should be enforced

22  that way.

23           THE COURT:  Okay.

24           MR. ROCCO:  Your Honor, if I may --

25           THE COURT:  No.  Hold on a second.  So your

1    proposal is what's in the May 15th letter?  I think it's May

2    22nd.  Your saying Plaintiffs should move to compel, as

3    compared to you looking for a protective order, and then you

4    would respond?

5            MR. KAPLAN:  We could easily reverse that, Your

6    Honor.  And if they want to move to -- for a protective

7    order, we'll respond.

8            THE COURT:  All right.  You're both on board with

9    this schedule?

10           MR. KAPLAN:  That was my agreement yesterday

11   evening, Your Honor.  And I also tell the Court, we will go

12   back to our client, we'll confer with our client, and if

13   there's a way to resolve these issues in anticipation of that

14   motion's practice, Your Honor, Judge Scanlon, we'll

15   absolutely do so.

16           THE COURT:  Okay.  Anything you want to say?

17           MR. ROCCO:  I don't think I have anything to add.

18   I would agree with the limited scope of the order, and on its

19   face it's limited to the existing jurisdictional theory,

20   which does not comport with the information received by

21   Masraf.

22           THE COURT:  All right.

23           MR. KAPLAN:  Your Honor --

24           THE COURT:  To just skip -- push this ahead a bit.

25           MR. KAPLAN:  Yeah.  I think we've

```
 1                 THE COURT:  Go ahead.
 2                 MR. KAPLAN:  -- we've discussed that, Your Honor.
 3    I just
 4                 (Simultaneous speech.)
 5                 THE COURT:  All right.  Okay.  But just -- let me
 6    ask the flip.  The Defendant's position is, you know, it's
 7    basically Bank of New York Mellon, maybe it should have been
 8    a small B, and you know, delete Mellon, but you have a theory
 9    that there were other institution -- another institution that
10    could have, did have, had, the account necessary to carry out
11    the kinds of transactions that you described in the
12    complaint?
13                 MR. ROCCO:  Yeah.  And, Your Honor, just so we're
14    clear, the -- it was the Defendants who argued that the
15    actual documents referenced in the complaint are controlling,
16    not the allegations.  And we introduced the guilty plea, and
17    that guilty plea says a bank in New York.  It doesn't say the
18    Bank of New York.  So that trumps under the Sandra case that
19    we cited to Judge Donnelly, that trumps the allegations that
20    makes it clear.  So we're not -- we're not fishing here.  We
21    have an extraordinary guilty plea if someone with knowledge
22    of one of the Defendants that says this happened.  So this
23    isn't a, you know, "gotcha."  What they're doing is telling
24    us, we're not going to tell you.  And I'll leave it at that.
25                 But they also -- you know, they've asked for a lot
```

1  of time to respond to document requests.  And last night we

2  learned they're not going to give us anything.  They said

3  they're endeavoring to look for Boney-related documents.

4          THE COURT:  All right, but we're moving ahead.

5          MR. ROCCO:  All right.

6          THE COURT:   We just talked about a deadline.

7          MR. ROCCO:  All right.  So the other --

8          THE COURT:  The Defendants -- you're going to move

9  for -- this is the way it's going to be.  You move for a

10  protective order.  You respond.  We'll decide.

11          MR. ROCCO:  So another issue then, Your Honor, if I

12  may address it, is the relevant time period.  Judge

13  Donnelly's order is clear with the leave.  It says the only

14  time period is going to be during the time period relevant to

15  the terrorist attacks.  And so we made our requests ending

16  with the second terrorist attack, which was September of

17  2018, because that's the timeframe that Judge Donnelly said

18  to use.

19          THE COURT:  So you're at 2012 to 2018?

20          MR. ROCCO:  Correct.

21          THE COURT:  And is it January through December

22  to --

23          MR. ROCCO:  Our time period is --

24          THE COURT:  What's your timeline?

25          MR. ROCCO:  -- I think we agreed in our modified

1   request when we had our read and confer, that we would use

2   October 1st, 2012 --

3        THE COURT:  Okay.

4        MR. ROCCO:  -- to September 16th, 2018.

5        THE COURT:  Okay.

6        MR. ROCCO:  And that's consistent with the second

7   terrorist attack.  They want to cut it off when the last

8   transfer --

9        THE COURT:  The 2015.

10        MR. ROCCO:  -- we alleged happened, in the

11   complaint.

12        THE COURT:  Okay.  I'm sorry.  What date in 2018?

13   I missed you.

14        MR. ROCCO:  It's September 16th, Your Honor.

15        THE COURT:  Okay.  Do you want to say anything

16   about that?  Or just --

17        MR. KAPLAN:  Judge Scanlon, only that the basis of

18   us requesting that timeframe be narrowed is on the basis of

19   the allegation in the complaint that there was not a dollar

20   transferred after 2015.

21        THE COURT:  Is that really what it says?  It says

22   that there was not one transferred?

23        MR. KAPLAN:  We just don't know of --

24        THE COURT:  That's not what it says.  It's that

25   they don't know.  At least what I can see.

1      MR. ROCCO:  And this is information, again, Your

2  Honor, exclusively in the Defendants' domain and we don't

3  have access to it.  So of course, we don't know it.  But the

4  Judge said we're allowed to take it up to the time of the

5  relevant attacks, and that's 2018.

6      THE COURT:  Right.  I think what should be clear

7  here in terms of conceptual work, this is not the motion to

8  dismiss for failure to state a claim.  This is the

9  jurisdictional discovery.  So the question is, is there a

10  necessary level of contacts and kinds of contacts with New

11  York.  So you know -- anyway.  You're going talk about it in

12  your motion, but it does say relevant to the terrorist

13  attacks, not when the last currently known transfer of money

14  via New York happened, if it happened at all.

15      All right.  Do you have --

16      MR. ROCCO:  The last issue, Your Honor, and it

17  sounds like I may be pushing the boulder uphill based on Your

18  Honor's comment on this one, but we do believe --

19      THE COURT:  Subpoena?  Is that the one?  Yes.

20      MR. ROCCO:  -- that the document request, if they

21  do identify their proper New York corresponding account,

22  there's information that only the bank can give if they were

23  subpoenaed, that the Defendants here won't have.  And they

24  kind of -- because we've done this a lot, Your Honor, the

25  kind of detail you get from a bank is going to include the

1    intermediary banks involved in the transaction, the

2    beneficiary of the transaction for the wire transfers, and

3    it's not going to be duplicative discovery.  It's going to be

4    actual discovery that we probably won't get.

5             THE COURT:  Okay.  I think we're not there yet.

6             MR. ROCCO:  Okay.  I just wanted to flag that.

7             THE COURT:  We need to -- you're not going to waste

8    a bank's time if it's the wrong bank, if they have nothing to

9    do with it.

10            MR. ROCCO:  Can we come back and ask permission

11   then, Your Honor, if it turns out that they identify this,

12   and we'll see to subpoena those records?

13            THE COURT:  Yes.  Yes.

14            MR. ROCCO:  It also negates, Your Honor, another

15   issue we've had in these cases, which is bank secrecy under

16   foreign banking laws.  So if we subpoena Citibank, if that's

17   their bank, and I'm, you know, just guessing, they're not

18   going to encumbered by the same problems that Masraf Al Rayan

19   will have to deal with.  And it cuts to the quick a lot

20   faster.  But we'll seek permission if that --

21            THE COURT:  All right.  Now you've reached beyond

22   anything I know about, so you'll have to teach me.  I'll have

23   to learn about that if that issue surfaces.

24            MR. KAPLAN:  That's okay, Your Honor.  I appreciate

25   it.

1        THE COURT:  Okay.  Is there discovery that you can

2   engage in, or is this as gateway as it seems?

3        MR. KAPLAN:  Well, I think Your Honor and Mr. Rocco

4   addressed the issues that are pending before the Court.  As I

5   articulated, we will meet and confer with our client based on

6   the Court's -- of Your Honor's positions.  And to the extent

7   that it then prompts a meet and confer, we can always talk to

8   Mr. Rocco.  We have in the past.  We will continue to do so.

9        THE COURT:  All right.  A completely different

10  note, and probably not going to be something that you'll

11  agree to here, but I always ask.  Is there any possibility of

12  any settlement discussions here?  I understand this is a

13  politically, literally, world-wide sensitive case, but you

14  never know.  Is there anything that could move this forward

15  on that front?

16       MR. KAPLAN:  I can speak for Masraf Al Rayan and

17  only, Your Honor, when I say that we are -- that we

18  understand that this is a tremendous tragedy, but Masraf Al

19  Rayan does not have liability, and consequently, I don't

20  think that there would be a settlement discussion to be had.

21       THE COURT:  Okay.

22       MR. LEWIS:  And on behalf of Qatar Charity, that is

23  the same answer, Your Honor.

24       THE COURT:  Okay.  Is there a demand out there?

25       MR. ROCCO:  There's not, Your Honor.  I think it's

1   such an early stage that it's hard to -- yeah.  Until they,

2   you know, God willingly we survive all this, then they may

3   have a reason to talk to us.  But I think it's too early for

4   that.

5           THE COURT:  Okay.  All right.  If that surfaces as

6   a possibility along the way, you can let us know.  We can

7   have settlement discussions, you could use a mediator, you

8   could have the conversations yourself.  You know, this is not

9   your run-of-the-mill case where I really expect that to be

10  happening.  But still, I know you may not be willing to put

11  it out there, so I will.  All right.  Anything else we should

12  talk about here?

13          MR. ROCCO:  No.  Just so my notes are correct, Your

14  Honor.  They're going to move for their protective order on

15  the May 22nd --

16          THE COURT:  Yeah.  They're swapping.

17          MR. ROCCO:  -- and we'll respond on the 25th?

18          THE COURT:  Yup.

19          MR. ROCCO:  Thank you very much, Your Honor.

20          THE COURT:  We're good?  All right.  Thanks,

21  everybody.

22          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

23      (Proceedings adjourned at 10:01 a.m.)

24

25

1                    TRANSCRIBER'S CERTIFICATE

2        I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter.

5

6                                   May 16, 2023

7        *Gina Gross*

8    _____     _____

9    Gina Gross, CET-1571                              DATE

10   Legal Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25