

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

Carolina A. Fornos
tel: 212.858.1558
carolina.fornos@pillsburylaw.com

May 22, 2023

**BY ECF**

The Honorable Vera M. Scanlon
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** *Henkin, et al. v. Qatar Charity, et al.*, 1:21-cv-05716-AMD-VMS

Dear Magistrate Judge Scanlon:

We write on behalf of Defendant Masraf Al Rayan ("MAR") in the above-captioned action pursuant to Fed. R. Civ. P. 26(c), Your Honor's Individual Practice Rule III(b), and Your Honor's May 18, 2023 scheduling order to request a protective order modifying and precluding certain of Plaintiffs' jurisdictional discovery requests. MAR incorporates by reference Defendant Qatar Charity's ("QC") motion for a protective order to the extent applicable.

### I.  Relevant Background

On March 31, 2023, Judge Donnelly issued an order authorizing limited jurisdictional discovery, as to MAR, "to document requests and interrogatories that could show the frequency with which Masraf al Rayan used of the Bank of New York Mellon account, and whether that use was deliberate, during the time period relevant to the terrorist attacks, and that the plaintiffs' claims arose from Masraf al Rayan contacts with New York." (ECF No. 81 ("Order") at 29).

As detailed below, Plaintiffs have far exceeded this scope, not only issuing an unauthorized non-party subpoena to Bank of New York Mellon ("BONY"), but also issuing discovery demands to MAR (1) seeking document retention/destruction policies, documents regarding public statements, and information tantamount to merits discovery, not jurisdictional discovery; (2) seeking information about transfers outside the relevant time period or through accounts besides BONY's; and (3) identifying all transfers on behalf of QC far beyond the Palestinian Territories (despite alleging funds were transmitted to QC "in the Palestinian Territories" specifically); and (4) not limiting seeking U.S. dollars via correspondent banks (despite alleging the need for "coveted U.S. dollars." (*See* Ex. A).[1]

---

[1] Exhibit A is the only version of Plaintiffs' Interrogatories and Requests for Production that have been served.

The parties have had several meet-and-confers; Plaintiffs have made concessions that they then rescinded, and the parties have been unable to reach agreement. And while we understand the Court's stated view that the requests should not be limited to BONY only, Plaintiffs continue to seek far more than the limited jurisdictional discovery authorized by the Order. Thus, a protective order is needed to protect the rights of a foreign entity who is not present in the United States.

## II. Argument

This Court may, for good cause, issue an order to protect a party from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense," including forbidding the disclosure or discovery, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(A), (D).

The scope of jurisdictional discovery is further limited by a court's order authorizing the same. *In re Terrorist Attacks on Sept. 11, 2001*, 03-MD-1570 (GBD) (SN), 2021 WL 5449825, at *3 (S.D.N.Y. Nov. 22, 2021) ("[T]he proper scope of discovery is assessed based on what was authorized in the [] Order."); *see also Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990) ("[G]enerally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until she has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery."). The Order comports with the rule that jurisdictional discovery is permitted "circumspectly and only to verify the allegations of specific facts crucial to establishing" Plaintiffs' theory. *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, No. 14CV8445, 2017 WL 2491999, at *4 (S.D.N.Y. May 15, 2017); *Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 205 (E.D.N.Y. 2014) (barring jurisdictional discovery where plaintiff "need[ed] new jurisdictional theories, not more evidence substantiating the theories she has already advanced"). As a result, the Court should issue a protective order pursuant to its authority under Rule 26(c).

Thus, as to Plaintiffs' Interrogatories and Requests for Production ("RFPs") (collectively, "Discovery Demands"), Defendants respectfully request an order limiting Plaintiffs' Discovery Demands to: QC transfers sending U.S. dollars via a correspondent bank account at BONY (the "BONY Account") to the Palestinian Territories between October 1, 2012 and December 31, 2015, or, in the alternative, QC transfers sending U.S. dollars via a New York correspondent bank account to the Palestinian Territories between October 1, 2012 and September 16, 2018.

### A. RFP Nos. 4, 8-10 Seek Information Beyond Jurisdictional Discovery

MAR respectfully requests that the Court quash RFP Nos. 4 and 8 through 10, as they exceed the scope jurisdictional discovery contemplated by the Order. Plaintiffs have withdrawn RFP No. 7.

**RFP No. 4.** Plaintiffs seek all account agreements and account opening documents for any alleged U.S. correspondent accounts and any BONY Account MAR held, irrespective of when those documents were created. RFP No. 4 likewise exceeds the scope of jurisdictional discovery contemplated by the Order. Whether or not MAR had an account with BONY, or any bank in New York, is irrelevant; the jurisdictional inquiry, according to the Order, pertains to how MAR *used* that alleged account. The only feasible inquiry Plaintiffs could make is whether MAR *used* an alleged BONY Account in New York (or any account in New York) on behalf of QC to make

U.S. dollar transfers to the Palestinian Territories.

**RFP. No. 8**. Plaintiffs seek all documents concerning any public statements, advertisements, or promotional materials made or disseminated by MAR concerning (a) U.S. correspondent accounts MAR maintains; (b) MAR's ability to effectuate U.S. dollar-denominated transactions for MAR's customers; or (c) MAR's ability to convert other currencies into U.S. dollars.

This RFP is unauthorized by the Order and outside the scope of the jurisdictional discovery the Order contemplates. Documents otherwise responsive to this request would not relate in any way to the jurisdictional allegations in the Complaint, because the Complaint does not rely on any allegation that MAR marketed its correspondent banking services. The Complaint only references Qatar National Bank's marketing, not MAR's. (Compl. ¶ 86). Plaintiffs cannot now unduly bolster the Complaint's deficient allegations by seeking such documents in jurisdictional discovery. Permitting Plaintiffs to do so would allow any "plaintiff suing a multinational foreign corporation" to make "conclusory non-fact-specific jurisdictional allegations and thus obtain extensive discovery on that issue," which courts are not inclined to do. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185-86 (2d Cir. 1998). Moreover, this request is unnecessary; it seeks *public* statements which Plaintiffs would be able to obtain if they existed but have been unable to do so.

**RFP Nos. 9 and 10.** In RFP No. 9, Plaintiffs seek MAR's document retention/destruction policy applicable to all records sought in Plaintiffs' RFPs. In RFP No. 10, Plaintiffs seek any litigation holds or other documents that instructed MAR's employees to maintain any documents relevant to the matters at issue. Both are outside the scope of the Order. Documents such as retention policies and litigation holds are only relevant after a showing of a discovery deficiency. *See Chow v. SentosaCare, LLC*, No. 19-CV-3541-FB-SJB, 2020 WL 13076004, at *2 (E.D.N.Y. June 3, 2020) (denying request to compel litigation hold notices where there was no showing of spoliation); *Powers v. Mem'l Sloan Kettering Cancer Ctr.*, No. 20 CIV. 2625 (LGS), 2020 WL 6712192, at *1-2 (S.D.N.Y. Nov. 16, 2020) (granting defendants' request to quash because plaintiff had "not proffered an adequate factual basis for [his] belief that the current production is deficient"); *Orillaneda v. French Culinary Inst.*, No. 07 CIV. 3206 RJH HBP, 2011 WL 4375365, at *8-9 (S.D.N.Y. Sept. 19, 2011) (granting protective order precluding discovery into sufficiency of defendant's document production because plaintiff had not identified discovery deficiency). Further, RFP No. 10 improperly seeks documents protected from disclosure by the attorney-client privilege and the work product doctrine. *See Pearlstein v. BlackBerry Ltd.*, No. 13CV07060CMKHP, 2019 WL 1259382 at *18-19 (S.D.N.Y. Mar. 19, 2019) (holding litigation hold notice was protected by attorney-client privilege and work product doctrine).

  **B.**  **Correspondent Accounts at Banks Other Than Bank of New York Mellon and the Relevant Time Period**

Plaintiffs' Discovery Demands seek documents and information relating to transfers in U.S. dollars through accounts other than the BONY Account and define the relevant time period as lasting until September 16, 2018. MAR maintains its objections based on the extent of Plaintiffs' jurisdictional allegations and Judge Donnelly's Order. However, MAR understands the Court's position that any New York correspondent bank account that MAR allegedly has should be discoverable and the time period for jurisdictional discovery should last until the date of the most recent attack pled

(September 16, 2018). Plaintiffs have offered to modify the Discovery Demands to incorporate a time frame of October 1, 2012 to September 16, 2018, and MAR is amenable to that offer as an alternative. Similarly, Plaintiffs have offered to modify the Discovery Demands to limit the correspondent bank accounts at issue to those in New York, and MAR is amenable to that offer as well.

### C. Destination and Currency of Transfers Using Correspondent Accounts

Plaintiffs seek discovery about (1) transfers to the Palestinian Territories that were in currencies other than U.S. dollars and/or (2) transfers to jurisdictions other than the Palestinian Territories. However, because Plaintiffs' jurisdictional allegations hinge on the assertion that U.S. dollars are "coveted" by "Middle East terrorist networks," (Compl. ¶ 5), the entry of funds in other currencies to the Palestinian Territories is irrelevant. And if dollars *left* the Palestinian Territories, they could not confer jurisdiction over Defendants based on the Complaint—those transfers could not possibly be related to the attacks at issue. Accordingly, the only relevant transfers are those in which U.S. dollars were deposited in the Palestinian Territories via correspondent banking.

* * *

MAR respectfully requests that the Court enter an order (1) modifying RFP Nos. 1-6 and Interrogatory Nos. 1-4 to encompass only documents and information concerning QC transfers, if any, executed by MAR on behalf of QC through MAR's BONY Account sending U.S. dollars to the Palestinian Territories, or, in the alternative, to encompass only documents and information concerning QC transfers sending U.S. dollars via a New York correspondent bank account to the Palestinian Territories between October 1, 2012 and September 16, 2018 and (2) quashing Plaintiffs' RFP Nos. 8 through 10.

Respectfully submitted,

*/s/ Carolina A. Fornos*
Carolina A. Fornos
Aryeh L. Kaplan (*pro hac vice*)
*Counsel for Defendant Masraf Al Rayan*

cc: All counsel of record (by ECF)