

**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

John M. Hillebrecht
John.Hillebrecht@us.dlapiper.com
T   212.335.4590
F   917.778.8590

May 22, 2023

*VIA ECF*

The Honorable Vera M. Scanlon
United States Magistrate Judge
U.S. District Court, Eastern District of New York
225 Cadman Plaza East, 1214 South
Brooklyn, New York 11201

      Re:    *Henkin, et al. v. Qatar Charity, et al.*, No. 21-cv-05716 (AMD)(VMS)
             **Defendant Qatar Charity's Motion for a Protective Order**

Dear Judge Scanlon:

      Pursuant to Federal Rule of Civil Procedure 26(c) and the Court's May 18, 2023, Order, Defendant Qatar Charity ("Qatar Charity"), by and through its undersigned counsel, respectfully moves this Court for entry of a protective order. We recognize that during the May 16 court conference Your Honor expressed a strong preliminary view that the position set forth below was incorrect. We respectfully disagree and hope to take this opportunity to persuade the Court that the Defendants have correctly interpreted the explicit limitations of the limited jurisdictional discovery ordered by Judge Donnelly. Even if that effort fails to completely persuade Your Honor, we are hopeful that this submission will further inform your analysis of where the lines should be appropriately drawn.[1] To be explicit, we took to heart the Court's comments during the May 16 conference, discussed your concerns with our client, and proposed (along with MAR) very substantial compromises to Plaintiffs—including specifically identifying ***all*** pertinent New York correspondent accounts (as discussed below).

**I.    The March 31 Decision**

      On March 31, 2023, Judge Donnelly issued a decision on the Defendants' motions to dismiss (ECF No. 81) (the "March 31 Decision"), which dismissed Plaintiffs' claims against Qatar National Bank ("QNB"), while reserving judgment as to Qatar Charity and Masraf al Rayan ("MAR" and, together with Qatar Charity, "Defendants"). Specifically, Judge Donnelly granted Plaintiffs limited jurisdictional discovery to determine if there are additional facts that might enable Plaintiffs to supplement their otherwise insufficient jurisdictional allegations against Defendants. Judge Donnelly's decision to differentiate Plaintiffs' jurisdictional allegations against Defendants from those found insufficient against QNB relied entirely on Plaintiffs' theory of an agency relationship between Qatar Charity and MAR and the somewhat

---

[1] Qatar Charity further adopts and incorporates the arguments set forth in Masraf al Rayan's letter to the Court of today's date.



The Hon. Vera M. Scanlon<br>
U.S. Magistrate Judge<br>
May 22, 2023<br>
Page Two

greater specificity of the allegations regarding the purported Bank of New York Mellon ("BNY Mellon") correspondent account.  Plaintiffs have since issued expansive discovery requests to both Qatar Charity (*see* ECF No. 84-1) and MAR that far exceed the scope of the ordered limited jurisdictional discovery.  What is more, as Your Honor is well aware, information recently submitted by third party BNY Mellon in response to an unauthorized third-party subpoena issued by Plaintiffs have rendered both Plaintiffs' discovery requests and their jurisdictional allegations moot; the account specified in the Complaint does not exist.

Specifically, Plaintiffs allege that MAR used a correspondent account **at BNY Mellon** to carry out transactions on Qatar Charity's behalf and at its direction.  (*See, e.g.*, Complaint ¶ 23). These allegations alone, which are the only relevant ones pled with any particularity in the Complaint, allowed the Court to defer judgment on Defendants' motions to dismiss and might have (if developed) allowed Plaintiffs to demonstrate sufficient contacts between MAR and the forum.  While the allegations as to the Charity and MAR occasionally allude to "correspondent banks" (plural) in New York (*e.g.*, Complaint ¶ 161), the gravamen of the Complaint's allegations was specifically and explicitly limited to U.S. dollar transactions through BNY Mellon.  (*See, e.g.*, Complaint ¶ 130(g) ("Those dollars also passed through the Bank of New York.")).  In any event, whether Plaintiffs can call a Mulligan and fundamentally recast the heart of their allegations at this late date and in this posture—which they fundamentally cannot do—is *almost* besides the point.  As she did in regards to QNB, Judge Donnelly clearly rejected as insufficient the wholly conclusory allegations in the Complaint and allowed *only* discovery "limited to … the Bank of New York Mellon account."  (March 31 Decision at 29).  That is a pellucid restriction on the ambit of discovery:  "limited to … the Bank of New York Mellon account."  Respectfully, we cannot fathom how discovery "reasonably tailored" (*id.*) to that can even plausibly extend to accounts at *other* banks mentioned neither in the Complaint nor in Judge Donnelly's Order.  We honestly do not see how the Order could be any clearer.

Accordingly, given the fact that BNY Mellon has now indicated that the account on which Plaintiffs explicitly and repeatedly relied (both in the Complaint and in oral argument before Judge Donnelly) **does not exist** this matter should be at an end and we respectfully ask the Court to order as much.

To the extent Your Honor does not agree, we respectfully suggest that a protective order is necessary to prevent Plaintiffs from engaging in their proposed invasive and unduly burdensome fishing expedition that would result in extreme costs and prejudice to Qatar Charity, a foreign defendant.

    A.    *Allowing Plaintiffs to Engage in a Fishing Expedition to Bolster Their Jurisdictional Claims as to Qatar Charity Would Be an Abuse of Discretion*

As discussed above, Plaintiffs' theory of jurisdiction is explicit and narrow—they "allege that Masraf al Rayan used its correspondent bank account with Bank of New York Mellon to effectuate [] transfers" from Qatar Charity to the Palestinian territories.  (March 31 Decision at 6; *see also* Complaint ¶ 130; Transcript of March 16 Hearing at 8:08–9:12).  As set forth above, Plaintiffs' discovery requests exceed the scope of these allegations, and are directly contradicted by the very information BNY Mellon recently provided in response to the unauthorized third-



party subpoena issued by Plaintiffs. Allowing Plaintiffs to proceed with such broad discovery, untethered from the limitations of March 31 Decision, would constitute an abuse of this Court's discretion.

As Plaintiffs' BNY Mellon theory of jurisdiction—the only one fairly said to have been adequately alleged in the Complaint and, more importantly, explicitly the only one contemplated in Judge Donnelly's Order—is dead in the water, they now seek to engage in "jurisdictional discovery on the basis of a generalized request more akin to a fishing expedition." *Przewozman v. Qatar Charity, et al.*, 2023 WL 2562537, at *18 (E.D.N.Y. Mar. 17, 2023) (Garaufis, J.) (quoting *Alexander v. Porter*, 2014 WL 7391682, at *6 (E.D.N.Y. 2014)). Such a request exceeds the bounds of the Court's discretion to grant jurisdictional discovery and is particularly problematic with respect to a foreign defendant, like Qatar Charity. *See, e.g.*, *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998). Plaintiffs cannot be allowed to disregard Judge Donnelley's finding as to their theory of personal jurisdiction—an agency relationship between Qatar Charity and MAR used to transfer funds through a BNY Mellon correspondent account. (*See* March 31 Decision at 29).

## II.    Proposed Protective Order

Based on the foregoing, we respectfully submit that it would be—based on the express and in our view unequivocal holding in Judge Donnelly's Order, and hence the terms of the referral to Your Honor—an abuse of discretion to permit ***any*** discovery here, as it would by definition be outside the scope of the very limited jurisdictional discovery contemplated by Judge Donnelly.

Nonetheless, as mentioned above, we absolutely took to heart the Court's comments at the May 16 conference, discussed them with counsel for MAR and with our client, and tried to craft a compromise that addressed Your Honor's concerns while including at least some limits on the Plaintiffs' proposed wide-ranging fishing expedition as to a foreign entity with absolutely no contacts with New York (or the United States). Accordingly, in conjunction with MAR, we proposed the following (as part of a comprehensive compromise, which Plaintiffs rejected):

> As a compromise, the Charity and MAR proposed that MAR identify ***all*** New York correspondent bank accounts (not just accounts at BNY Mellon) utilized for pertinent transactions from October 1, 2012, through September 16, 2018, with Defendants permitted to respond according to the deadlines previously agreed upon by the parties set forth in ECF No. 89.
>
> MAR would therefore provide responsive documents and information concerning all transfers of funds executed by MAR, if any, through a New York correspondent account on behalf of Qatar Charity into an account maintained in the Palestinian Territories in U.S. dollars between October 1, 2012, through September 16, 2018, and any communications between MAR and Qatar Charity related to these transactions. Documents and information concerning these transactions would also provide the basis for Qatar



The Hon. Vera M. Scanlon<br>
U.S. Magistrate Judge<br>
May 22, 2023<br>
Page Four

Charity's responses to Plaintiffs' discovery requests to the Charity, as applicable.

To the extent that proposal were adopted, Qatar Charity would still object to certain specific requests. As you know, Judge Donnelly specifically ordered that as to "Qatar Charity, discovery will be limited to document requests and interrogatories sufficient to show whether Masraf al Rayan was acting as Qatar Charity's agent," which discovery "must be reasonably tailored to this jurisdictional issue." (ECF No. 81 at 29). Hence, Qatar Charity continues to object to the numerous Requests that go far afield from this limited question, such as most of Plaintiffs' Requests for Production, especially those relating to the Charity's "Ramallah operations" and other requests focused on the Palestinian Territories that go beyond the scope of the proposal set forth above. None of that has anything to do with the question of agency, which is the outer limit of permissible discovery.

The discovery sought by Plaintiffs far exceeds the proper scope and is not "reasonably tailored to th[e] jurisdictional issue." (March 31 Decision at 29). For example, Plaintiffs' Requests for Production ("RFP") issued to Qatar Charity include requests for "[a]ll documents concerning any agreements between You and Masraf al Rayan concerning any services provided to You or for Your benefit by Masraf al Ryan [*sic*]" and "[a]ll documents concerning how banks located outside the United State effectuate U.S. Dollar-Denominated Transactions." (ECF No. 84-1, at 5, 6). Plaintiffs' Interrogatories demand, among other things, that Qatar Charity "[i]dentify all bank accounts maintained by You, or for Your benefit, at any time during the Relevant Time Period at a bank or branch located in the Palestinian Territories, including any accounts maintained at the Bank of Palestine in Ramallah or the Islamic Bank in Ramallah." (ECF No. 84-1, at 11). On their face, these discovery demands go well beyond the existence of an agency relationship between Qatar Charity and MAR and some are, in fact, wholly divorced from MAR. Qatar Charity therefore objects to the following requests in their entirety (while requesting that the remaining requests be limited consistent with the proposal set forth above): RFP Numbers 1, 4, 6–10; Interrogatory No. 2.

*   *   *   *

For the foregoing reasons, Qatar Charity respectfully requests that the Court grant its Motion for Protective Order prohibiting plaintiffs from seeking any jurisdictional discovery from Qatar Charity on the basis of the allegations contained in the Complaint. Alternatively, the Court should enter an order limiting jurisdictional discovery along the lines set forth above.

Respectfully submitted,<br><br>
 /s/ John M. Hillebrecht   <br>
John M. Hillebrecht<br>
*Counsel for Qatar Charity*

cc:    All counsel of record (by ECF)