# FLEISCHMAN BONNER & ROCCO LLP
## ATTORNEYS AT LAW

81 MAIN STREET • SUITE 515 • WHITE PLAINS • NEW YORK • 10601
TEL: 908-516-2066 • FAX: 908-516-2049 • WEB: WWW.FBRLLP.COM

EMAIL: procco@fbrllp.com

May 25, 2023

<u>Via ECF</u>

The Honorable Vera M. Scanlon
United States Magistrate Judge
U.S. District Court, Eastern District of New York
Brooklyn, New York  11201

Re:  *Henkin, et al. v. Qatar Charity, et al.*, 21-cv-05716-AMD-VMS

Dear Judge Scanlon:

On behalf of the Plaintiffs in the above-captioned action, and in accordance with this Court's May 18, 2023 minute order, we submit this omnibus opposition to the separate motions for protective orders filed by Defendants Masraf Al Rayan ("MAR") [ECF 91] and Qatar Charity [ECF 93].

From the outset of this discovery process, Defendants have played "gotcha" in an effort to prevent Plaintiffs from obtaining *any* jurisdictional discovery.  Throughout the parties' discovery meet and confers, MAR's counsel failed to disclose that MAR did not maintain any accounts at Bank of New York Mellon ("BONY"), and refused to state whether MAR had a correspondent account at any New York bank other than BONY.  In clear contravention of Fed. R. Civ. P. 34(b)(2)(C), Defendants then served written objections to Plaintiffs' document requests—annexed hereto as **Exhibit 1** (MAR) at 9-18 and **Exhibit 2** (Qatar Charity) at 7-18—that failed to "state whether any responsive materials are being withheld on the basis of the objections," including the objection that the March 31, 2023 "Order limits Plaintiffs to collecting information only about the BONY Account."  *See, e.g.*, Ex. 1 at 2-3 (General Objection 3).

Based on that objection, Defendants intended to withhold all information and documents concerning both MAR's use of the New York banking system to transfer Qatar Charity's funds to the Palestinian Territories, and whether MAR was acting as Qatar Charity's agent.  Qatar Charity's motion for protective order now frankly acknowledges this by asserting that, based on Defendants' interpretation of the March 31, 2023 Order as limiting discovery to MAR's use of a correspondent account at BONY, it would be "an abuse of discretion to permit *any* discovery here" and by asking this Court to issue a protective order "prohibiting plaintiffs from seeking any jurisdictional discovery from Qatar Charity."  ECF 93 at 3, 4 (emphasis in original).  To the extent that Defendants' motions now offer to compromise on their initial, bad faith objections, for the reasons explained below, Plaintiffs suspect that Defendants have not yet given up playing "gotcha."

1.      **Plaintiffs' Modifications to Their Discovery Requests**

Prior to Defendants filing their motions, Plaintiffs had agreed to modify their discovery requests to address some of Defendants' objections.  Copies of Plaintiffs' modified requests were submitted to Defendants and this Court on May 12, 2023.  As a result of subsequent negotiations

among the parties, and after consideration of Defendants' instant motions, Plaintiffs further modify their discovery requests in the following respects: (a) discovery requests concerning specific U.S. Dollar Transactions are now limited to transfers to accounts located at bank branches in the Palestinian Territories; and (b) Interrogatory 2 and Document Requests Nos. 4 and 7 to Qatar Charity are withdrawn. Plaintiffs' operative requests to Defendants, marked to show these and Plaintiffs' prior modifications to their original requests, are annexed hereto as **Exhibit 3** (MAR) and **Exhibit 4** (Qatar Charity) (collectively, the "Operative Discovery Requests").

Furthermore, Defendants need not respond at this time to Document Requests 9 and 10 to both MAR and Qatar Charity, which seek production of any applicable document retention policies and litigation hold communications. Plaintiffs respectfully request the Court to defer ruling on Defendants' requests to quash Document Requests 9 and 10, and to allow Plaintiffs the opportunity to assess their need for these documents after Defendants have completed their document productions.

## 2. Standard Applicable to Protective Orders

Defendants' motions fail to address the standard for obtaining a protective order under Rule 26(c)(1), which provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." It is well-settled that "[t]he party seeking a 'protective order for discovery has the burden of showing good cause for issuance of the order.'" *Jewels v. Casner*, 2015 WL 7306454, at *2 (E.D.N.Y. Nov. 19, 2015) (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997) and overruling objections to U.S.M.J. Scanlon's denial of motion for protective order). To satisfy that burden, "[t]he movant must show a clearly-defined and significant harm." *Allstate Ins. Co v. Nazarov*, 2015 WL 1396377, at *2 (E.D.N.Y. Mar. 25, 2015) (per U.S.M.J. Scanlon). That is because Fed. R. Civ. P. 26 "'is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes.'" *Id.* (quoting *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983)).

MAR's motion does not identify any harm likely to result from the discovery Plaintiffs seek. MAR's motion focuses exclusively on the supposed irrelevance of that discovery, reiterating arguments that this Court has already considered and rejected. Qatar Charity's *ipse dixit* assertion that Plaintiffs' discovery will "result in extreme costs and prejudice to Qatar Charity" is meaningless boilerplate. ECF 93 at 2. A party seeking a protective order must demonstrate burdensomeness "by submitting affidavits or offering evidence revealing the nature of the burden," *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (internal quotation omitted), and must also demonstrate that the burden is disproportionate to the needs of the case. *See Carl v. Edwards*, 2017 WL 4271443, at *9 (E.D.N.Y. Sept 25, 2017) (Rule 26(b)(1)'s proportionality requirement applies in the context of limited jurisdictional discovery).[1] Qatar Charity fails to identify any prejudice that it will suffer as a result of the discovery Plaintiffs

---

[1] As Plaintiffs' counsel noted at the May 16 status conference, Defendants' burden can be alleviated if Plaintiffs are allowed to serve non-party subpoenas on the N.Y. banks at which MAR maintained correspondent accounts. Plaintiffs reserve the right to request the Court to allow that discovery once those banks have been identified.

seek. The discovery of evidence demonstrating that Qatar Charity is subject to personal jurisdiction in this Court is not the type of harm that Rule 26(c)(1) is intended to prevent.

### 3. Correspondent Accounts at Banks Other Than BONY

Plaintiffs have already submitted their arguments as to why discovery of MAR's New York contacts should not be limited to MAR's use of a non-existent correspondent account at BONY. *See* 87-1. Based on those arguments, which are incorporated herein by reference, the Court should deny: (a) Qatar Charity's request for a protective order "prohibiting plaintiffs from seeking any jurisdictional discovery from Qatar Charity" (ECF 93 at 4); and (b) MAR's request for an order modifying Plaintiffs' Interrogatories 1-4 and Document Requests 1-6 to encompass only transfers of Qatar Charity's funds "through MAR's BONY Account." ECF 91 at 4.

### 4. Types of Currency Transfers

Recognizing that this Court will reject their initial ploy to deprive Plaintiffs of all jurisdictional discovery, Defendants now offer a compromise to allow Plaintiffs discovery of allegedly "pertinent" transfers effectuated by MAR through a correspondent account at any New York bank. *See* ECF 93 at 3. As explained at Points 5 and 8-10 below, by attempting to limit all jurisdictional discovery to information related to specific transfers, Defendants seek to avoid producing materials relevant to whether MAR's use of its N.Y. correspondent account(s) was deliberate and whether MAR was acting as Qatar Charity's agent. Furthermore, the exquisitely narrow category of transfers that Defendants now deem to be "pertinent" would preclude Plaintiffs from obtaining discovery of specific transfers alleged in the Complaint and, as such, smacks of another round of "gotcha."

Plaintiffs' discovery requests seek information and materials concerning "U.S. Dollar-Denominated Transactions" defined as "any transaction involving United States Dollars, including by which amounts of United States dollars are debited from one account and credited to another account, or transferred between financial institutions via electronic funds transfer, or by which any currency is converted into United States dollars." *See, e.g.*, Ex. 3 at 2-3 (¶ 5). This definition is intended to capture MAR's alleged use of N.Y. correspondent accounts to convert Qatar Charity's U.S. dollars into other currencies and to convert its other currencies into U.S. dollars. *See, e.g.*, ECF 1 at ¶ 163. It is also intended to capture the specific transfers alleged in the Complaint, based on the Manasra guilty plea, in which U.S. dollars held in Qatar Charity's MAR account in Doha were passed through a correspondent account in New York and converted into Israeli shekels that were deposited into Qatar Charity's accounts at banks in the Palestinian Territories. *See id*. at ¶130(c) and (d); ECF 79-1 at 11 at ¶¶ 4-5.

Only Defendants know whether and to what extent: (a) Qatar Charity maintained deposits at MAR and other banks—including banks in the Palestinian Territories—in U.S. dollars; and (b) MAR used N.Y. correspondent accounts to convert U.S. dollars to and from other currencies for Qatar Charity's benefit. But without revealing any of that information to Plaintiffs or this Court, Defendants seek a protective order to narrowly limit Plaintiffs' discovery concerning MAR's New York contacts to "QC transfers *sending U.S. dollars* via a New York correspondent bank account to the Palestinian Territories." ECF 91 at 2 (emphasis added). *Accord* ECF 93 at 3 ("transfers of funds . . . into an account maintained in the Palestinian Territories *in U.S. dollars*") and ECF 93-1 at 1 ("transfers *of U.S. dollars* . . . into an account maintained by Qatar Charity in the Palestinian Territories") (emphases added). That limitation would exclude specific transfers

alleged in the Complaint involving U.S. dollars passed through MAR's N.Y. correspondent account(s) that were converted into Israeli shekels before they were deposited into Qatar Charity's accounts in the Palestinian Territories. *See supra* at p. 3; ECF 1 at ¶ 130(c) and (d); ECF 79-1 at 11 at ¶¶ 4-5.

Plaintiffs respectfully submit that all transfers of Qatar Charity funds through a New York correspondent account to an account in the Palestinian Territories involved MAR's—and potentially Qatar Charity's—"purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States," *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.2d 327, 339 (2012), irrespective of whether such transfers involved U.S. dollars from start to finish or—as is more likely to be the case—involved the conversion of U.S. dollars into or out of another currency.

Accordingly, Defendants' requests to limit Plaintiffs' discovery of specific transfers of Qatar Charity's funds through New York between October 1, 2012 and September 16, 2018 to "transfers sending U.S. dollars" (ECF 91 at 2) and "transfers … into an account maintained in the Palestinian Territories in U.S. dollars" should be denied. For the same reasons, Defendants' proposal to apply the same limitation to their responses to Document Requests 3 and 5 to MAR and Document Request 3 to Qatar Charity should be rejected. In the interests of avoiding future disputes, Plaintiffs respectfully request the Court to direct Defendants to produce all non-privileged information and documents responsive to the following Operative Discovery Requests: Interrogatories 3 and 4 to MAR; Document Requests 1, 3, 5 and 6 to MAR; and Document Requests 2, 3, 5 and 8 to Qatar Charity.[2]

**5.     Identification of All N.Y. Correspondent Accounts**

Plaintiffs' Interrogatory 1 seeks to identify all correspondent accounts MAR maintained at banks or branches in New York during the Relevant Time Period. *See* Ex. 3 at 2 (¶ 5) and 3 (Interrogatory 1). MAR's motion indicates that MAR is "amenable" to identifying those accounts. *See* ECF 91 at 3-4. However, under the Defendants' joint proposed compromise presented in Qatar Charity's motion, MAR would only identify the N.Y. bank accounts it used to transfer Qatar Charity's funds to the Palestinian Territories. *See* ECF 93 at 3 and ECF 93-2 at 1.

Defendants do not—and cannot—identify any "significant harm" that will result from the identification of ***all of*** MAR's N.Y. correspondent accounts. Furthermore, the number of correspondent accounts MAR maintained in New York is clearly relevant to the issue of whether MAR's use of the New York banking system was "deliberate"—as to which the March 31, 2023 Order specifically authorizes discovery. *See* ECF 81 at 29. As Judge Donnelly noted, the extent to which MAR "'project[ed] itself into the New York market'" is one of four factors that courts in this circuit consider to determine whether use of a N.Y. correspondent account is deliberate. *See id*. at 16 (quoting *Przewozman v. Qatar Charity*, 2023 WL 2562537, at *18 (E.D.N.Y. Mar. 17, 2023) quoting *Vasquez v. Hong Kong & Shanghai Banking Corp*., 477 F. Supp. 3d 241, 258 (S.D.N.Y. 2020)). The maintenance of multiple correspondent accounts in New York, including

---

[2] Plaintiffs assume that Qatar Charity's request for an order prohibiting Plaintiffs from obtaining the discovery sought in Document Request 8 to Qatar Charity is inadvertent. *See* ECF 93 at 4. Document Request 8 seeks documents concerning the specific transfers alleged in paragraph 130 of the Complaint, and evidenced by the Manasra guilty plea. *See* Ex. 4 at 10. Qatar Charity's motion does not offer any explanation as to why it needs to be protected from this request.

accounts that were not used in furtherance of the Defendants' conspiracy, is relevant to that particular factor.

Significantly, in one of the cases MAR's motion cites, limited jurisdictional discovery into "a party's use of a US-based bank account" included the non-U.S. defendant, NNPC, "***identifying all accounts*** at a financial institution or bank located in the United States that it has used, maintained, or controlled, or over which it has an interest"—even accounts maintained in the names of other entities—irrespective of whether those accounts were used to effectuate any transfers connected to the plaintiff's claims. *Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petro. Corp.*, 2017 WL 2491999, at *2 (S.D.N.Y. May 15, 2017) (cited in ECF 91 at 2) (emphasis added). The court in *Esso* rejected NNPC's offer to represent that it did not use any accounts in the United States other than the three that the plaintiff had identified through publicly available information, based on "the legitimate concern that there may be other NNPC-related accounts that [plaintiff] has not identified and can only be revealed by NNPC." *Id*. Here, by contrast, MAR has consistently declined to make any representation concerning its use or maintenance of N.Y. correspondent accounts, which is even more reason why it should be required to identify all of them.

Accordingly, Defendants' request to limit MAR's response to Interrogatory 1 to the identification of N.Y. correspondent accounts used to transfer Qatar Charity's funds to the Palestinian Territories should be denied, and MAR should be directed to provide a complete substantive response to Interrogatory 1 in the Operative Discovery Requests.

**6.    Account Opening Documents and Account Agreements
for All of MAR's N.Y. Correspondent Account(s)**

Plaintiffs' Operative Document Request 4 to MAR seeks: "Copies of all account agreements, including modifications to same, and account opening documents for each of the N.Y. Correspondent Accounts identified in [MAR's] response to Interrogatory No. 1, irrespective of the date of creation of such documents." Ex. 3 at 10. Although MAR's written objections committed to producing "documents concerning account agreements and account opening documents between MAR and Bank of New York Mellon" in response to Document Request 4 (*see* Ex. 1 at 14), MAR now seeks a protective order forbidding the discovery sought by Document Request 4 on the basis that it is irrelevant. *See* ECF 91 at 2. According to MAR: "[w]hether or not MAR had an account with BONY, or any bank in New York, is irrelevant; the jurisdictional inquiry, according to the Order, pertains to how MAR *used* the alleged account." ECF 91 at 2 (emphasis in original).

Obviously, the opening and maintenance of a correspondent banking account is a necessary prerequisite to its use. Furthermore, the terms governing MAR's use of its N.Y. correspondent account(s) are relevant to the issue of "whether that use was deliberate." ECF 81 at 29. Among other things, these documents will shed light on MAR's "level of control over the transfers," which is another of the four factors used to determine whether use of a N.Y. correspondent account is deliberate. ECF 81 at 16 (quoting *Przewozman,* 2023 WL 2562537, at *18, in turn quoting *Vasquez,* 477 F. Supp. 3d at 258). MAR's *Esso* case is once-again instructive. In that case defendant NNPC was compelled to produce the account opening documents for all U.S. accounts it had used, maintained, controlled, or over which it has an interest based. *See Esso*, 2017 WL 2491999, at *2 ("[Plaintiff's] request for Bank Account Documents [including account opening documents] is relevant and tailored to achieving the jurisdictional discovery objectives in this action.").

Accordingly, MAR's request that the Court quash Plaintiffs' Document Request 4 should be denied.

7. **MAR's Statements to Customers and Potential Customers**

Document Request 8 to MAR seeks: "All documents concerning any public statements, advertisements, or promotional materials made or disseminated by You or on Your behalf concerning: (a) N.Y. Correspondent Accounts maintained by You; (b) Your ability to effectuate U.S. Dollar Denominated Transactions on behalf of customers; or (c) Your ability to convert other currencies into U.S. Dollars." *See* Ex. 3 at 11. MAR seeks to quash this request on the grounds that "the Complaint does not rely on any allegation that MAR marketed its correspondent banking services" and because the request seeks public statements and is, therefore, "unnecessary." *See* ECF 91 at 3.

MAR's citation of *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998)—for the proposition that Document Request 8 is "unauthorized" absent a specific allegation in the Complaint that MAR marketed its correspondent banking services—is inapposite. In *Jazini*, the plaintiffs were denied jurisdictional discovery. *See id.* at 186. The Second Circuit's opinion says nothing about what the scope of discovery should be where—as here—jurisdictional discovery has been granted. Document Request 8 to MAR is well within the scope of Judge Donnelly's Order authorized because it seeks material that is relevant to the issues of whether MAR's use of N.Y. correspondent accounts was "deliberate" and "whether [MAR] was acting as Qatar Charity's agent." ECF 81 at 29. "'[W]hether the defendant bank marketed the correspondent account or encouraged others to use it'" is one of the four factors used to determine whether use of a N.Y. correspondent account is deliberate. ECF 81 at 16 (quoting *Przewozman,* 2023 WL 2562537, at *18, in turn quoting *Vasquez,* 477 F. Supp. 3d at 258).

Any statements to customers and potential customers—including Qatar Charity—concerning MAR's use of the New York banking system are also relevant to whether MAR was acting as Qatar Charity's agent. The elements essential to establishing agency jurisdiction are "'that the in-forum intermediary [*i.e.*, MAR] acted (1) for the benefit of, (2) with the knowledge and consent of, and (3) under some degree of control of the non-resident principal [*i.e.*, Qatar Charity].'" ECF 81 at 18 (quoting *Spetner v. Palestine Inv. Bank*, 495 F. Supp. 3d 96, 110 (E.D.N.Y. 2020)). Even if MAR's descriptions of the international banking service it provides were not communicated to Qatar Charity, they are still likely to shed light on the first and third element of agency jurisdiction.

Contrary to MAR's contention, such statements would not necessarily be "*public*" in a way that makes them accessible to Plaintiffs today. ECF 91 at 3. The statements Plaintiffs seek were promulgated between 2012 and 2018, were most likely written in Arabic, and they would include brochures distributed to potential customers. In any event, even to the extent that such statements are available to Plaintiffs from other sources, MAR is not entitled to a protective order on that basis. *See, e.g.*, *Au New Haven, LLC v. YKK Corp.*, 2023 WL 2612204, *10 (S.D.N.Y. Mar. 23, 2023) ("'The Federal Rules do not shield publicly available documents from discovery merely because of their accessibility. A limitation of this nature would lead to patently absurd consequences.'") (quoting *Shatsky v. Syrian Arab Rep.*, 312 F.R.D. 219, 223-24 (D.D.C. 2015)).

Accordingly, MAR's request that the Court quash Plaintiffs' Document Request 8 should be denied.

**8. Identification of All Qatar Charity Accounts at MAR**

Plaintiffs' Interrogatory 1 to Qatar Charity seeks to identify all accounts that Qatar Charity maintained at MAR during the Relevant Time Period.  *See* Ex. 4 at 2.  *See also* Ex. 3 at 3 (Interrogatory 2 to MAR).  Qatar Charity seeks an order limiting its response to this Interrogatory to the identification of only the accounts from which MAR transferred funds "into an account maintained in the Palestinian Territories in U.S. dollars between October 1, 2012, through September 16, 2018."  ECF 93 at 3, 4.  Although MAR's motion does not seek relief from Plaintiffs' interrogatory that seeks the same information from MAR, MAR has objected that it will only identify the Qatar Charity accounts used to make transfers through New York.  *See* Ex. 1 at 5 (MAR's response to Interrogatory 2).

For the reasons explained at Point 4 above, Defendants should not be permitted to limit their responses only to transactions that resulted in the deposit of U.S. dollars into an account in the Palestinian Territories.  Furthermore, Defendants should be required to identify ***all*** of the accounts Qatar Charity maintained at MAR because this information is directly relevant to whether MAR "was acting as Qatar Charity's agent."  The number of accounts Qatar Charity maintained with MAR, and the types of accounts, will shed light on the nature of the relationship between the two entities.  Although Qatar Charity asserts—without evidence—that this interrogatory is an "unduly burdensome fishing expedition that would result in extreme cost and prejudice to Qatar Charity," it does not explain why identifying only the accounts for which MAR effectuated N.Y. transfers would be any less burdensome.  Indeed, the opposite would appear to be true.

Accordingly, Qatar Charity's request to limit its response to Interrogatory 1 should be denied.  In order to avoid any further motion practice, Plaintiffs' respectfully request the Court to direct Defendants to respond in full to the following Operative Discovery Requests: Interrogatories 2 to MAR and Interrogatory 1 to Qatar Charity.

**9. Account Opening Documents and Account Agreements
      for All of Qatar Charity's Accounts at MAR**

Document Request 1 to Qatar Charity seeks: "All documents concerning any agreements between You and Masraf al Rayan concerning any services provided to You or for Your benefit by Masraf al Rayan during the Relevant Time Period, including copies of all account agreements, including modifications to same, and account opening documents for the accounts identified in Your response to Interrogatory No. 1 . . .".  Ex. 4 at 8-9.  Qatar Charity seeks an order preventing Plaintiffs from obtaining this discovery on the ground that it "goes well beyond the existence of an agency relationship between Qatar Charity and MAR."  ECF 93 at 4.  While only the Defendants know what these account-related documents contain, it is inconceivable that they will not shed light on whether MAR "'acted (1) for the benefit of, (2) with the knowledge and consent of, and (3) under some degree of control of' Qatar Charity.  ECF 81 at 18 (quoting *Spetner*, 495 F. Supp. 3d at 110).  Accordingly, Qatar Charity's request to quash Document Request 1 should be denied.

**10. Qatar Charity's Knowledge Concerning N.Y. Correspondent Banking**

Plaintiffs' Document Request 5 to Qatar Charity seeks: "All documents concerning any N.Y. Correspondent Account, the Bank of New York Mellon, or Masraf al Rayan's effectuation of U.S. Dollar-Denominated Transactions on behalf of its customers, including You."  *See* Ex. 4 at 10.  Although Qatar Charity does not seek a protective order concerning Document Request 5, it

has objected that its response to this request will be limited to documents concerning specific U.S. Dollar-Denominated Transactions by which MAR transferred Qatar Charity's funds to the Palestinian Territories. *See* Ex. 2 at 14. Plaintiffs' Document Request 6 to Qatar Charity seeks: "All documents concerning how banks located outside the United States effectuate U.S. Dollar-Denominated Transactions." *See* Ex. 4 at 10. Qatar Charity seeks to quash Document Request 6 on the grounds that it "go[es] well beyond the existence of an agency relationship between Qatar Charity and MAR" and is "wholly divorced from MAR." ECF 93 at 4.

Both Requests 5 and 6 are relevant to the existence of jurisdiction in two respects. First, one of the factors courts use to determine whether use of a N.Y. correspondent account was deliberate is "'the extent to which the use of [the] correspondent account was necessary to carry out the alleged scheme.'" ECF 81 at 16 (quoting *Przewozman*, 2023 WL 2562537, at *18, in turn quoting *Vasquez*, 477 F. Supp. 3d at 258 (S.D.N.Y. 2020)). In moving to dismiss Plaintiffs' claims for lack of personal jurisdiction, Qatar Charity asserted—as a fact—that international funds transfers involving U.S. dollars do not need to be routed through a N.Y. correspondent account. *See* ECF 58-1 at 12-13. The discovery sought by Requests 5 and 6 should shed light on whether, contrary to Qatar Charity's assertion but consistent with Plaintiffs' allegations, MAR's use of a N.Y. correspondent account was necessary to carry out the Defendants' scheme.

Secondly, the discovery sought by Requests 5 and 6 is directly relevant to "whether Masraf al Rayan was acting as Qatar Charity's agent." ECF 81 at 29. As noted above, Qatar Charity's "'knowledge [of] and consent [to]'" [MAR's] in forum activities are required elements of agency jurisdiction. ECF 81 at 18 (quoting *Spetner*, 495 F. Supp. 3d at 110). In its motion to dismiss, Qatar Charity denied knowing that its transfers involved a N.Y. correspondent account. *See, e.g.*, ECF 68 at 11 ("Plaintiffs do not, and cannot, plausibly allege that Qatar Charity even knew that its funds would pass through New York."). Qatar Charity's general knowledge concerning MAR's and other financial institutions' methods for transferring U.S. dollars internationally and the role played by N.Y. correspondent banks are relevant to whether Qatar Charity knew of and consented to MAR's New York contacts.

Accordingly, Qatar Charity's request to quash Document Request 6 should be denied, and the Court should direct Qatar Charity to produce all non-privileged documents responsive to Document Requests 5 and 6.

For the foregoing reasons, Plaintiffs respectfully request the Court to defer ruling on Defendants' requests to quash Plaintiffs' Document Requests 9 and 10, deny Defendants' motions in all other respects, and direct Defendants to respond to Plaintiffs' Operative Discovery Requests at Exhibits 3 and 4.

Respectfully submitted,

/s/ Patrick L. Rocco

Attachments: Exhibits 1-4