# FLEISCHMAN BONNER & ROCCO LLP
## ATTORNEYS AT LAW

81 MAIN STREET • SUITE 515 • WHITE PLAINS • NEW YORK • 10601
TEL: 908-516-2066 • FAX: 908-516-2049 • WEB: WWW.FBRLLP.COM       EMAIL: procco@fbrllp.com

August 7, 2023

**Via ECF**

The Honorable Vera M. Scanlon
United States Magistrate Judge
U.S. District Court, Eastern District of New York
Brooklyn, New York  11201

Re:  *Henkin, et al. v. Qatar Charity, et al.*, 21-cv-05716-AMD-VMS

Dear Judge Scanlon:

This letter is submitted jointly by Plaintiffs and Defendants Qatar Charity ("QC") and Masraf Al Rayan ("MAR") pursuant to this Court's July 27, 2023 minute order directing the parties to submit a joint letter identifying all unresolved jurisdictional discovery disputes.  The parties have met and conferred in accordance with the order, and present their respective positions below.

**Plaintiffs' Position**

Plaintiffs seek leave to serve a narrowly-tailored document subpoena on MAR's former correspondent bank, HSBC, in order to confirm the completeness and accuracy of Defendants' discovery responses.  The Court is familiar with the history of Defendants' efforts to thwart discovery in this action, including by arguing that discovery should be limited to MAR's alleged account at BONY Mellon, without disclosing—even to this Court—that MAR had no such account. *See, e.g.*, Transcript of May 16, 2023 Hearing ("May Tr.") at pp.6-14.  Now, in their Court-ordered discovery responses, Defendants state that, during the Relevant Time Period,[1] MAR executed no transfers of QC funds to the Palestinian Territories using MAR's disclosed correspondent accounts—at HSBC and Citibank. So, rather than disclosing this highly relevant information in their initial May 15, 2023 discovery responses, Defendants instead chose to assert, and then litigate, multiple moot objections.  Indeed, MAR's counsel even convinced this Court to allow Defendants a second opportunity to brief their objections to producing records they now state do not exist. *See* May Tr. at pp.9-10, 13-15.

Plaintiffs have submitted compelling, admissible evidence that MAR did in fact transfer QC's funds through New York to the Palestinian Territories.  The July 26, 2017 amended indictment, guilty plea, conviction, and sentencing of QC employee Fadi Manasra (the "Manasra Confession")—which was submitted to Judge Donnelly (ECF 79-1) and is attached as **Exhibit 1** to this letter—fully supports Plaintiffs' jurisdictional allegations.[2]  As part of his confession to membership in an unlawful association—*i.e.*, QC (identified in the Manasra Confession as

---

[1]  The Relevant Time Period for Plaintiffs discovery requests as approved by this Court is October 1, 2012 to September 16, 2018.  *See* ECF 106.

[2]  The Manasra Confession is admissible pursuant to Fed. R. Evid. 803(8) and (22).

"Jam´qatar al-Khairiya")—Mr. Manasra, who was QC's accountant in Ramallah (*see* Ex. 1 at p.11 ¶ 2), described the flow of QC's funds from Doha to Ramallah during the period from March 2010 to September 2015 as follows:

> The funds were transferred from [QC in Doha] to the [Masraf] Al-Rayan Bank in Doha. From there . . . funds in dollars were transferred to a bank in New York. Afterwards, all the funds were transferred to the Bank of Palestine or to the Islamic Bank in Ramallah and were deposited in the bank account of [QC] in Ramallah. . . . All the funds were transferred . . . under the supervision of [Mr. Manasra].

Ex. 1 at p.11 ¶¶ 5-6. *See also id*. ¶ 2.

Judge Donnelly relied upon the Manasra Confession in concluding that jurisdiction discovery was appropriate. *See* ECF 81 at pp.4-5, 6, 14, 19, 27 (citing and quoting Manasra Confession). As QC's accountant in Ramallah during the core of the Relevant Time Period, Mr. Manasra knew how QC was transmitting its funds to Ramallah. Furthermore, given the facts that: (1) Mr. Manasra was confessing to a crime for which he had agreed to be sentenced to almost two years of imprisonment and a fine equivalent to $275,000, and (2) Israeli prosecutors no doubt possessed documentary evidence of the flow of money to QC in the Palestinian Territories, Mr. Manasra's statements are highly credible.

The Manasra Confession provides ample justification for this Court to permit Plaintiffs to confirm Defendants' discovery responses by serving a narrowly-tailored document subpoena on HSBC in New York. MAR has produced no account opening documents or account agreements for the correspondent account it maintained at HSBC from 2011-2015—contemporaneously with Mr. Manasra's employment as QC's Ramallah accountant. For its part, QC has produced no account opening documents or account agreements for any of the 13 accounts it maintains at MAR—even though all of those accounts remain open and in use today, and one was opened within the past seven years. Counsel state that those unproduced records no longer exist, but are adamant that their clients have retained all records reflecting funds transferred through New York during the Relevant Time Period. In light of Defendants' failure to retain significant banking records, it is not unreasonable to conclude that they may have discarded, lost, or failed to locate records of the small number of transfers that would suffice to subject them to personal jurisdiction in New York. *See, e.g., Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 164, 165-66 (2d Cir. 2013) (specific personal jurisdiction based on foreign bank's use of N.Y. correspondent account to execute "dozens" of transfers totaling "millions of dollars"); *Banco Ambrosiano, S.p.A. v. Artoc Bank & Trust, Ltd.*, 62 N.Y.2d 65, 69, 72-73 (1974) (specific personal jurisdiction based on foreign bank's use of New York correspondent account to execute three transfers related to plaintiff's claim, plus regular use of the account for unrelated banking business).

Plaintiffs should be permitted to determine whether HSBC has any records of the transfers to which QC's accountant confessed. U.S. correspondent banks routinely maintain "transaction logs and swift messages" that identify the originator and beneficiary of every funds transfer they process. *In re Ulmans*, 2023 WL 3853703, at *2, *6 (S.D.N.Y. April 20, 2023). Those records "are computerized and thus searchable, and can be retrieved via the use of narrow search terms." *Id*. at *6 (authorizing service of subpoenas on multiple correspondent banks seeking records of all transfers to a particular individual). Such records are routinely produced in response to subpoenas. *See, e.g., In re Public Joint-Stock Co. Bank Otkritie Fin. Corp.*, 2023 WL 4928227, at *4

(S.D.N.Y. Aug. 2, 2023) (authorizing service of subpoena seeking all transfers to or from a particular entity over a six-and-a-half-year period: "the sought materials are routinely produced by banks to satisfy discovery requests"); *In re Rodriguez Guillen*, 2020 WL 3497002, at *3 (S.D.N.Y., June 29, 2020) ("Bank of America should be able to search for and produce the records of wire transfers without significant burden.").

The service of a narrowly tailored subpoena on a single bank is proportional to the needs of this case, particularly in light of "the importance of the issues at stake in the action"—the financing of Hamas terrorist attacks in which U.S. citizens were killed and injured—and "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). As this Court noted in admonishing Defendants for "play[ing] 'gotcha'" in their initial discovery responses, the transfers of QC's funds through New York are "the whole theory of the case." May Tr. at pp. 6, 9. *See also id*. at 10 ("[T]he whole complaint is about this theory that the money flowed from Qatar, [to] New York, [and] back out where it shouldn't have gone."). Judge Donnelly recognized that "[P]laintiffs have plausibly pleaded that they might reasonably be able to identify [key supporting] facts if given the opportunity to develop the record." ECF 81 at p. 26. Notwithstanding Defendants' discovery responses, Plaintiffs still might reasonably be able to identify the New York transfers through a subpoena directed to HSBC. Currently, it is impossible to reconcile Defendants' discovery responses and the criminal confession of QC's accountant in Ramallah.

Finally, it is beyond cavil that Defendants have no standing to challenge the issuance of a subpoena to HSBC under Rule 45. *See, e.g., Tapjets Inc. v. United Payment Services, Inc.*, 2020 WL 13581674, at *10 (E.D.N.Y. Sept. 17, 2020) (*per* Scanlon, U.S.M.J.). Any privacy interests MAR or QC may claim in their financial records will be adequately protected by the parties' stipulated protective order submitted for Court approval on August 6, 2023.

In the alternative, Plaintiffs request the Court to allow Plaintiffs to seek issuance of a Letter of Request pursuant to the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters to obtain copies of documents reflecting transfers of QC's funds through New York contained in the files of the Israeli Ministry of Defense or the Israeli Military Courts related to the 2017 criminal convictions of Fadi Manasra and other QC employees. "[T]he most important factor for consideration" in evaluating such a request for foreign discovery is "the interests of the United States and the foreign state" where the information is located. *Bartlett v. Société Générale de Banque au Liban*, 2023 WL 2734641, at *10 (E.D.N.Y. Mar. 31, 2023) (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987)). Here, the relevant foreign state is Israel, which shares "the important U.S. and international interests in preventing the financial support of terrorist organizations." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 115 (2d Cir. 2013).

**Defendants' Positions**

    A.    **Qatar Charity**

Qatar Charity opposes Plaintiffs' requested relief and maintains that neither a third-party subpoena nor a request to Israeli authorities is appropriate here. Judge Donnelly ordered very limited and narrowly focused discovery here, and her order did not contemplate third-party discovery. (*See* ECF No. 81 at 29). As noted, when the parties appeared before Your Honor, this Court denied a request to pursue such discovery. (*See* ECF No. 90 at 6:15-18). The only thing that

has changed since then is that the Defendants have now expended the substantial time, effort, and monetary cost to conduct a thorough and diligent search that (as Defendants argued would be the case) has established that there were simply no U.S. dollar-denominated transfers made by Masraf al Rayan on Qatar Charity's behalf to the Palestinian Territories using a New York correspondent bank during the time period relevant to this action.  Under the terms of Judge Donnelly's Order, that should be the end of the matter.

If Plaintiffs are permitted to conduct this fishing expedition, they will be greatly expanding the scope and duration of the "limited jurisdictional discovery" authorized by Judge Donnelly.  Pursuant to Judge Donnelly's March 31, 2023, order, jurisdictional discovery was to conclude by July 29, 2023 (over one week ago).  (*See* ECF No. 81 at 29).  There is no doubt that requests to third parties such as HSBC and, in particular, Israeli authorities, will take months, if not years, to produce a response.  More fundamentally, the discovery responses served by both Qatar Charity and Masraf al Rayan following very thorough and costly searches have demonstrated that there simply were no transfers of the kind alleged by Plaintiffs.  Accordingly, Plaintiffs should not be permitted to drastically expand upon Judge Donnelly's specific and limited order and cause all parties and the Court to continue to expend time and resources.

Plaintiffs also purport to justify the instant renewed request by again citing to a purported "confession" by Fadi Manassra, Qatar Charity's staff accountant in Ramallah.  They made the same argument, using the same quotations, to no avail before Judge Donnelly.  But as we made clear before Judge Donnelly (*see* ECF No. 98 at 38:12-39:2), Plaintiffs' cherry-picked quotations are in context a very thin reed and are, in fact, flatly contradicted by previous testimony of the same individual, Mr. Manassra.  For example, when interrogated by Israeli authorities in 2015, Mr. Manassra stated the following about Qatar Charity's money transfers:

> The funds are at the Al-Riyyan Bank [*sic*] in Doha it is transferred to Deutsche Bank in Germany.  From there it is transferred to the Bank of Palestine in Ramallah to Branch Number 1213.  At the bank branch in Ramallah, we convert the bills from Euros to Dollars and this action is only done at the Bank of Palestine.  This is the Qatar Organization's policy for all branches around the world.

(*See* ECF No. 68-2 at 4:85-89).  Similarly, during a subsequent trial in September 2015 – during which Mr. Manassra appeared as a witness for the Israeli prosecution – when asked for the names of the banks through which Qatar Charity's money would go, Mr. Manassra stated, "[f]irst of all, in Doha – Rayan Bank.  Then in Germany – Deutsche Bank, after approval at the bank in Germany, the money would be transferred to the Bank of Palestine, who received the approval of the central bank."  (*See* ECF No. 68-5 at 5:25-27).  Moreover, Mr. Manassra testified that this money would be transferred in euros.  (*See id.* at 5:28-29).  Plaintiffs' assertion, therefore, that they have "submitted compelling, admissible evidence" of New York transactions that "provide[] ample justification" for Plaintiffs' requested relief is challenged by the very witness they now cite.  And, again, this is nothing new.  Now is not the time of course for factual disputes.  But such disputed evidence, standing alone, cannot and should not form the basis to expand the limited jurisdictional discovery authorized by Judge Donnelly (especially given that the same "evidence" was before Judge Donnelly).

Accordingly, Qatar Charity opposes Plaintiffs' requested relief and respectfully request that the Court enter an order ending jurisdictional discovery in this matter.

### B. Masraf Al Rayan

The Court ordered the parties to file a letter "identifying all unresolved jurisdictional discovery disputes." (Order dated July 27, 2023). As Plaintiffs make clear, there are none. Instead, Plaintiffs seek to improperly expand jurisdictional discovery to non-party discovery (of HSBC) simply because Plaintiffs do not like MAR's responses. Plaintiffs request should be denied.

MAR has adopted Plaintiffs' definitions with respect to each of Plaintiffs' relevant discovery requests and has provided all responsive information within MAR's possession, custody or control. Far from "thwarting discovery," MAR has fully complied with its obligations. Indeed, MAR has disclosed the QC accounts, its correspondent banking accounts, and provided all requested account opening documents, producing over 100 pages of banking information. This information followed not only counsel's review of records, but counsel for MAR traveling to Doha, Qatar to meet with bank representatives to ensure that MAR complied with Plaintiffs' requests and serving verified interrogatory responses. Simply put, there are no relevant transfers and MAR has made clear in no uncertain terms that it is not withholding any documents on the basis of an objection or claim of privilege. No one is playing "gotcha." Plaintiffs, however, do not like MAR's discovery responses and therefore, seek *more* discovery.

Faced with the facts—that Plaintiffs are unable to demonstrate that this Court has jurisdiction over either Defendant—Plaintiffs now seek to expand discovery beyond what was ordered by Judge Donnelly. *See* May Tr. 6:15-18, 11:6-7 (non-party subpoena of correspondent bank "might be overreaching based on Judge Donnelly's decision…I don't think they should have sent out the subpoena."). In an effort to distract from the issue at hand, Plaintiffs attempt to relitigate the parties' dispute with respect to the Bank of New York Mellon ("BONY") issue from almost three months ago. As the Court will recall, it is Plaintiffs that alleged that transfers went through BONY. And it is Plaintiffs who, exceeding Judge Donnelly's order, served a subpoena on BONY. The fact remained that MAR never even had a BONY correspondent account. Notably, Plaintiffs filed their complaint two years ago, never sought to amend it – even after being asked by Judge Donnelly – and were steadfast that their complaint was adequate.

Plaintiffs' reliance on the purported Manasra Confession, which was alleged in the Complaint, is meritless. Judge Donnelly already ruled that the Manasra Confession itself undermined Plaintiffs own allegations. *See* ECF No. 81 at 27 ("To be sure, Manasra also said that Qatar Charity had access to U.S. dollars *before* those funds were transferred to the New York bank, which is inconsistent with the plaintiffs' assertion that the correspondent bank was used to gain access to 'coveted' U.S. dollars."). Plaintiffs also improperly seek to admit selected parts of Mr. Manasra's alleged statements prepared by foreign prosecutors, in a foreign matter, in a foreign language, about which little context is provided or otherwise explained. MAR challenges the admissibility of partial statements of a foreign matter under hearsay rules and the rule of completeness, among others. MAR further underscores that Mr. Manasra stated only that funds were transferred to a bank in Germany, not New York. ECF 68-2 at 4. Indeed, nothing in this alleged confession supports discovery upon HSBC.

Plaintiffs are also incorrect that "Defendants have no standing to challenge the issue of a subpoena to HSBC under Rule 45." The case they cite for that holding states that MAR may do so if "seeking to protect a personal privilege or right." *Tapjets Inc. v. United Payment Services, Inc.*, 2020 WL 13581674, at *10 (E.D.N.Y. Sept. 17, 2020). MAR is HSBC's client, and as HSBC's client, it has a right to challenge a subpoena that would disclose MAR's confidential banking information that may well seek information beyond QC. There is no basis to engage in third-party discovery simply to "confirm the completeness and accuracy" of MAR's responses. Counsel for MAR has reviewed the relevant information, traveled to Doha to meet with bank representatives to review transactions and determined that no transaction executed on behalf of QC passed through the HSBC account with an ultimate beneficiary in the Palestinian Territories.

Finally, Plaintiffs ignore that their requested discovery—With respect to both HSBC and the Israeli government—is not authorized by Judge Donnelly's order. Judge Donnelly limited discovery to "document requests and interrogatories" of MAR and QC. (ECF No. 81 at 29). Interrogatories are not permissible under Rule 45, meaning that Judge Donnelly's order, which stated "[d]iscovery must be reasonably tailored," did not contemplate third-party discovery. To grant Plaintiffs' request would mean expanding the grant in Judge Donnelly's order to prolong this litigation, in which MAR has been defending itself for years. Plaintiffs' request should be denied.

Respectfully submitted,

/s/ Patrick L. Rocco

*Counsel for Plaintiffs*


/s/ Carolina A. Fornos

*Counsel for Defendant Masraf Al Rayan*


/s/ John M. Hillebrecht

*Counsel for Defendant Qatar Charity*


Attachment: Exhibit 1