צבא הגנה לישראל

בבית משפט הצבאי תיק בימה"ש: /15
י ה ו ד ה תיק תביעה: 3124/15
בפני הרכב תיק פ.א.: 425869/15 (פ"ת)

**במשפט שבין התובע הצבאי – המאשים**
**-נגד-**

**פאדי הבג'ת ע"א פתאח מנאצרה**
ת.ז. 914129002, יליד 11/10/1982, תושב רמאללה
עצור מיום 7/9/2015

**הנאשם**

# כתב-אישום - מתוקן

**הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:**

**פרט אישום ראשון:**

**מהות העבירה:** **חברות ופעילות בהתאחדות בלתי מותרת**, עבירה לפי תקנות 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם, באזור, **החל מיום 21/12/2009 ועד ליום מעצרו** או בתקופה הסמוכה לכך, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו:

1. במועד האמור לעיל, ברמאללה או במקום סמוך לכך, הנאשם היה חבר בג'מעיית קטאר אלחיריה בדוחא (להלן: **"הג'מעייה הראשית"**), שהינה התאחדות בלתי מותרת.
2. החל ממרץ 2010 שימש הנאשם כרואה חשבון בגמעיית קטאר אלחיריה ברמאללה (להלן: **"ג'מעיית רמאללה"**). במסגרת תפקידו היה אחראי על רישום ותנועות הכספים שמועברים לארגון ומהארגון, וכן עורך דוחות עבור הג'מעייה הראשית.
3. ג'ודה דיב אבראהים ג'מאל (להלן: **"ג'ודה"**) שימש כמנהל של ג'מעייה קטאר אלחיריה ברמאללה, תחתיו עבדו הנאשם ונג'ואן מחמד איימן חסן עודה (להלן: **"נג'ואן"**), אחראית על תחום הלוגיסטיקה בארגון.
4. בתקופה האמורה לעיל, העבירה הג'מעייה הראשית כ-12,000,000 ש"ח לג'מעייה שברמאללה לטובת פעילויות שונות של הארגון.
5. הכספים הועברו מהג'מעייה הראשית לבנק "אלריאן" בדוחא. משם כספים שהינם במטבע יורו הועברו לבנק "דויטש" בגרמניה וכספים במטבע דולר הועברו לבנק ניו יורק. לאחר מכן, הועברו כלל הכספים לבנק פלסטין או לבנק האסלאמי ברמאללה והופקדו בחשבון הבנק של הג'מעייה ברמאללה.
6. כלל הכספים הועברו באישורו של ג'ודה ובפיקוחו של הנאשם.
7. החל משנת 2011 ועד שנת 2013 שימש הנאשם גם כרואה חשבון של ג'מעייה קטר אלחיריה בעזה, בתקופה זו הועבר סכום כסף בסך 25,000,000 דולר מהג'מעייה הראשית לסניפה בעזה.
8. כמו כן, הנאשם העביר כספים מטעם הג'מעייה ברמאללה להתאחדויות בלתי מותרות כגון ג'מעיית אלאחסאן אלחיירייה ואלג'מעייה אלחייריה אלאסלאמיה השייכת לחמאס בכך שהעביר לכל אחת מהן כ- 75,000 דולר.

בעשותו את האמור לעיל, היה הנאשם חבר ופעיל בג'מעיית קטאר אלחירייה ברמאללה, שהינו התאחדות בלתי מותרת.

**פרט אישום שני:**

**מהות העבירה:** נשיאת משרה בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ב) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** **החל מיום 21/12/2009 ועד ליום מעצרו** או בתקופה הסמוכה לכך, באזור, הנאשם ניהל או עזר בהנהלת התאחדות בלתי מותרת, או החזיק במשרה או עמדה כל שהיא בהתאחדות בלתי מותרת או תחת מרותה, דהיינו:

ת.ת. 366/04

במהלך התקופה האמורה לעיל, בעשותו את המפורט הפרט האישום הקודם היה הנאשם נושא משרת רואה חשבון בג'מעיית קטאר אלחירייה ברמאללה, שהינה התאחדות בלתי מותרת.

**<u>פרט אישום שלישי:</u>**

**<u>מהות העבירה</u>:** הכנסת כספי אויב לאזור, עבירה לפי סעיפים 3 ו-7 לצו בדבר הכנסות כספים לאזור (יהודה והשומרון) (מס' 973) התשמ"ב – 1982.

**<u>פרטי העבירה</u>:** הנאשם, באזור, **החל מיום 21/12/2009 ועד ליום מעצרו** או בתקופה הסמוכה לכך, ברמאללה או במקום הסמוך לכך, קיבל הנאשם כספי אויב מחוץ לאזור או הכניס כספי אויב לאזור, בין שקיבל בעצמו או בין שקיבל על ידי אחר, בין שהכניס בעצמו ובין שהכניס על ידי אחר, וזאת ללא היתר ובניגוד לצו האמור, דהיינו:

במועד ובמקום האמורים לעיל, בעשותו את המפורט בפרט האישום הראשון הכניס הנאשם כספי אויב בסך 12,000,000 ₪ מקטאר לאיזור, זאת ללא היתר ושלא כדין.

**<u>פרט אישום רביעי:</u>**

**<u>מהות העבירה</u>:** **החזקת רכוש של התאחדות בלתי מותרת**, עבירה לפי סעיפים 85(1) לתקנות ההגנה (שעת חירום), 1945 ו-199(א)ג לצו בדבר הוראות בטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התש"ע-2009.

**<u>פרטי העבירה</u>:** הנאשם, באזור, החל מיום 21/12/2009 ועד ליום מעצרו או בתקופה הסמוכה לכך, החזיק באחיזתו, במשמרו או בשליטתו רכוש כל-שהוא השייך להתאחדות בלתי מותרת, או מתייחס אליה או מוצא על ידה, או לטובתה, או שהוא מיומר להיות שייך לתאחדות בלתי מותרת, דהיינו:

בתקופה האמורה לעיל, ברמאללה או במקום הסמוך לכך, בעשותו את האמור בפרט האישום הראשון, קיבל הנאשם והחזיק בסכום כסף בסך 28,081,664 דולר מטעם ג'מעיית קטאר אלחירייה בדוחא, שהינה התאחדות בלתי מותרת.

**<u>פרט אישום חמישי:</u>**

**<u>מהות העבירה</u>:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנות 84+85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, ברמאללה או במקום הסמוך לכך, במועד שאינו ידוע למאשימה, עשה כל עבודה או ביצע כל שירות עבור התאחדות בלתי מותרת, דהיינו:

1. במועד ובמקום האמורים לעיל, בעשותו את המפורט בסעיף 8 לפרט האישום הראשון ביצע הנאשם שירות עבור ג'מעיית אלאחסאן אלח'ייריה, שהינה התאחדות בלתי מותרת, בכך שהעביר לה 75,000 דולר.
1. בעשותו את האמור לעיל, ביצע הנאשם שירות עבור התאחדות בלתי מותרת.

**<u>פרט אישום שישי:</u>**

**<u>מהות העבירה</u>:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנות 84+85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, ברמאללה או במקום הסמוך לכך, במועד שאינו ידוע למאשימה, עשה כל עבודה או ביצע כל שירות עבור התאחדות בלתי מותרת, דהיינו:

1. במועד ובמקום האמורים לעיל, בעשותו את המפורט בסעיף 8 לפרט האישום הראשון ביצע הנאשם שירות עבור אלג'מעייה אלח'ייריה אלאסלאמיה השייכת לחמאס, שהינו התאחדות בלתי מותרת, בכך שהעביר לה 75,000 דולר.
2. בעשותו את האמור לעיל, ביצע הנאשם שירות עבור התאחדות בלתי מותרת.

**<u>עדי התביעה:</u>**

1. רס״ר ראדי חטיב, מ.א. 1165588, פ״ת(גובה אמרות הנאשם מימים 21/9/2015, 17/9/2015)
2. רס״ר ג׳סאן ביבאר, מ.א. 1238039, פ״ת (גובה אמרת הנאשם מיום 9/9/2015)
3. רותם סרי, צה״ל (פרטים בתביעה)
4. ג׳ודה דיב אחראחים ג׳מאל, ת.ז. 086096195
5. נג׳ואן מחמד אימן חסן עודה, ת.ז. 911606184
6. מחמד תייסיר קצראווי, ת.ז. 907628101
7. מוצגים (פלטי מחשב)

**אלמז אייסו, סרן**
**תובעת צבאית**

(15)

ת.ת. 366/04

16

צבא ההגנה לישראל

בית המשפט הצבאי ביהודה | תיק מס׳: 6008/15

**בפני כב׳ האב״ד: סא״ל צבי היילברון**
**בפני כב׳ השופטת: רס״ן אתי אדר**
**בפני כב׳ השופט: רס״ן חיים בלילטי**

**התביעה הצבאית**
(באמצעות ב״כ רס״ן טל זיסקוביץ)

**נגד**

**הנאשם: פאדי בהג׳ת עבד אלפתאח מנאצרה, 914129002/ שב״ס - נוכח**
(באמצעות ב״כ עו״ד בולוס ועו״ד מתאגינה – נוכח)

**רמ״שית: רב״ט ירדן מצליח**
**מתורגמן: רב״ט סאפי חיר**
תאריך הדיון: 26/07/17 יום רביעי ג׳ אב תשע״ז

**<u>מהלך דיון</u>**

**בית המשפט מזהה את הנאשם.**

**הנאשם מצהיר כי מייצג אותו עו״ד בולוס ועו״ד מחאג׳נה.**

תוב״צ: הגענו להסדר טיעון, במסגרתו יתוקן כתב האישום, הנאשם יודה בכתב האישום המתוקן והצדדים יטענו לעונש מוסכם.

סנגור: אני מאשר את דברי חברי.

**ביהמ״ש מבהיר לצדדים כי אינו כבול להסדר הטיעון שנקשר ביניהם.**

סנגור: הסברתי למרשי את כתב האישום המתוקן, הוא הבין אותו ומודה בו.

**ביהמ״ש מקריא לנאשם את כתב האישום המתוקן.**

נאשם: ביהמ״ש הקריא לי את המיוחס לי בכתב האישום המתוקן, הבנתי אותו ואני מודה בו.

**<u>הכרעת-דין</u>**

על יסוד ההודאה באשמה, אנו מרשיעים את הנאשם במיוחס לו בכתב האישום המתוקן, היינו:

**חברות ופעילות בהתאחדות בלתי מותרת** – עבירה לפי סעיף 85(1) (א) לתקנות ההגנה (שעת חירום), 1945.

**הכנסת כספי אויב לאזור** – עבירה לפי סעיפים 1 ו- 3 – 7 לצו בדבר הכנסת הכספים לאזור (יהודה והשומרון) (מס׳ 973) התשמ״ב – 1982 וסעיף 201(א)(2) לצו בדבר הוראות ביטחון [נוסח משולב] (יהודה והשומרון) (מס׳ 1651) התש״ע- 2009.

**ניתן והודע היום, 26/07/17, בפומבי ובמעמד הצדדים.**

| | | |
|---|---|---|
| **שופט** | **אב״ד** | **שופטת** |

תוב"צ: אין ראיות לעונש.

סנגור: אין ראיות לעונש.

תוב"צ מסכם: מדובר בתיק חריג באופן מיוחד שכולל עבירה של הכנסת כספים בהיקפים גבוהים ובנסיבות ייחודיות לאחר משא ומתן ארוך הגענו לתוצאה מוסכמת ואנחנו נבקש מביהמ"ש להשית על הנאשם עונש מוסכם של 22 חודשי מאסר ו- 20 יום לריצוי בפועל, הלכה למעשה מדובר בהסתפקות בימי מעצרו, מאסר מותנה לשיקול דעת ביהמ"ש על כל עבירה שיש עמה יסוד של תמיכה בארגון עוין או חברות בארגון עוין וכן כל עבירה שיש עמה יסוד של עיסוק בכספי אויב או מגע עם אויב. כמו כן, אבקש להשית על הנאשם קנס בסך מיליון ₪ או שנתיים מאסר תמורתו. הקנס ישולם ב-4 תשלומים שווים כאשר התשלום הראשון על סך 250 אלף ₪ יהיה תנאי לשחרורו. והיתר ישולמו בכל 6 חודשים. יובהר כי אי תשלום אחד התשלומים באופן מלא במועדו יביא לפירעון מידי של הקנס כולו ויוביל למעצרו של הנאשם למאסר חלף קנס.

הנימוקים להסדר הם עברו הנקי של הנאשם, הודאתו באשמה והחיסכון משמעותי בזמן שיפוטי. כמו כן, שקלנו את הוויתור של ההגנה על טענות הגנה משמעותיות ביחס לאי חוקיותו של הארגון בו היו חברים. כמו כן שקלנו את העובדה כי מחומר הראיות עולה שהנאשם אמנם שימש בתפקיד ניהולי בארגון אך אינו בדרג של מקבל החלטות בארגון הראשי אלא בדרג ביצועי בלבד. עוד שקלנו את רמת הענישה שנגזרה על שותפה של הנאשם וכן שקלנו את העובדה שמדובר בעונש כולל רכיב כלכלי משמעותי ומאזן אותו עם עונש מאסר בפועל לתקופה שאינה מבוטלת.

סנגור מסכם: אני מצטרף לדברי חברי התובע ומבקש לכבד את ההסדר. עיקר טענותינו הוכרו כנסיבות לקולא במסגרת ההסדר. כפי שהדגשנו בטענות המקדמיות ובהמשך המשפט שחלק מהטענות התקבלו על ידי התביעה ומהוות את הבסיס להסדר. אני מצטרף להסדר בלב כבד תקופת המאסר ארוכה והסכום לא מבוטל, אך ההודאה מוותרת. אבקש לכבד את ההסדר.

הנאשם בדברו האחרון: אין לי מה להוסיף.

תאריך: 26/07/17 | בית המשפט הצבאי ביהודה | תיק מס': 6008/15

**בפני כב' האב"ד: סא"ל צבי חיילברון**

**בפני כב' השופטת: רס"ן אתי אדיר**

**בפני כב' השופט: רס"ן חיים בליליטי**

**התביעה הצבאית**

(באמצעות ב"כ רס"ן טל זיסקוביץ)

**נגד**

**הנאשם: פאדי בהג'ת עבד אלפתאח מנאצרה, 914129002/ שב"ס - נוכח**

(באמצעות ב"כ עו"ד בולוס ועו"ד מתאגינה – נוכח)

---

**ג ז ר - ד י ן**

הנאשם הורשע על פי הודאתו במסגרת הסדר טיעון בעבירות של חברות ופעילות בהתאחדות בלתי מותרת והכנסת כספי אויב לאזור. על פי כתב האישום המתוקן, מחודש דצמבר 2009 היה הנאשם חבר בארגון ג'מעיית קטאר אלחירייה בדוחא, שהיא התאחדות בלתי מותרת. בהמשך, מחודש מרץ 2010, שימש הנאשם כרואה חשבון בארגון ג'מעיית קטאר אלחירייה ברמאללה השייכת לג'מעיית קטאר אלחירייה בדוחא. הנאשם היה אחראי על רישום תנועות הכספים שמועברים לארגון ומהארגון וערך דוחות עבור הארגון בדוחא.

עם הנאשם עבדו בין היתר, ג'ודה דיב אבראהים ג'מאל (להלן: "ג'ודה"), אשר שימש כממלא מקום מנהל הארגון ברמאללה ונג'ואן מחמד איימן חסן עודה (להלן: "נג'ואן"), האחראית על תחום הלוגיסטיקה בארגון. מהנהלת הארגון בדוחא שבקטאר הועברו כ-12,000,000 ש"ח לסניף שברמאללה לטובת פעילויות שונות של הארגון.

כלל הכספים הועברו באישורו של ג'ודה ובפיקוח של הנאשם.

הודאת הנאשם בעבירות בהן הורשע באה לאחר שהחלה שמיעת הראיות בתיק ובמסגרת הסדר טיעון, כאמור.

במסגרת הסדר הטיעון שהונח בפנינו נתבקשנו להשית על הנאשם עונש של עונש מוסכם של 22 חודשי מאסר ו- 20 יום לריצוי בפועל, כמניין ימי מעצרו של הנאשם עד כה, מאסר מותנה לשיקול דעת ביהמ"ש על כל עבירה שיש בה יסוד של תמיכה או חברות בארגון עוין ועל כל עבירה שיש בה יסוד של עיסוק בכספי אויב או מגע עם אויב. כמו כן, עתרו הצדדים להשית על הנאשם קנס בסך מיליון ₪ או שנתיים מאסר תמורתו. הוסכם, כי הקנס ישולם ב-4 תשלומים שווים כאשר התשלום הראשון על סך 250 אלף₪ יהווה תנאי לשחרור ממאסר. עוד הוסכם, כי יתר התשלומים ישולמו בכל 6 חודשים ממועד השחרור וכי אי תשלום אחד מהם באופן מלא במועדו יביא לפירעון מידי של הקנס כולו ויוביל למאסר הנאשם חלף קנס אם לא ישלמו.

(19)

התביעה עמדה על ייחודיות המקרה שבפנינו הנוגע להכנסת כספי אויב בהיקפים גבוהים. מנגד, עמדה על השיקולים לקולה ובהם עברו הנקי של הנאשם, הודאתו באשמה והחיסכון המשמעותי בזמן השיפוטי לנוכח טענות כבדות משקל שהעלתה ההגנה ביחס לאי חוקיות הארגון. טענות ראייתיות אלו נפרשו בפנינו במסגרת דיון בטענות מקדמיות שהעלתה ההגנה. התביעה ציינה כי שקלה את העובדה שהנאשם אמנם שימש בתפקיד ניהולי בארגון, אך לא היה בדרג של מקבל החלטות בארגון הראשי אלא בדרג ביצועי בלבד; את עונשה של מעורבת נוספת בפרשה, ג'יואן ואת תמהיל רכיבי הענישה הכולל רכיב כלכלי משמעותי, כאמור, לצד עונש מאסר ממושך.

ההגנה הוסיפה וחידדה את משמעות הוויתור על טענותיה בקשר לאי חוקיות האגודה, אשר נוכח כובד משקלן תוקן כתב האישום וגובשה העתירה המוסכמת לעונש. הסנגורים הנכבדים הדגישו את רכיבי המאסר בפועל והרכיב הכספי המשמעותי וביקשו כי נכבד את ההסדר.

העבירות בהן הורשע הנאשם הן חמורות. מדובר בעבירות המאפשרות ומבססות קיומה של התאחדות בלתי מותרת ויש בפעילות במסגרתה משום פגיעה בביטחון מדינת ישראל. כך, נפסק בעבר כי -

> "פעילות שיטתית שמטרתה לאפשר את פעילות ארגוני הטרור, לשפרה ולבססה בדרכים שונות על ידי יצירת גב כלכלי, כמוה ככרסום שיטתי, מתמיד, בביטחונה של מדינת ישראל. כרסום שכזה מחליש את חוסנה הביטחוני, הכלכלי והחברתי של ישראל והוא מצטרף ליתר הסכנות הביטחוניות, חלקן קיומיות, הנשקפות באופן ממשי לישראל. בבחינת טיבו של הסיכון אין לבודדו לעצמו אלא יש לבחנו על רקע תמונת המציאות בכללותה" ע"פ 3827/06 **פלוני נ' מדינת ישראל** (פורסם בנבו, 27.3.2007).

חומרה יתרה נודעת לעיסוק בהכנסת כספי אויב לאזור, אף אם מדובר בפעילות בעלת אופי אזרחי מעצם טיבת -

> "ארגוני הטרור משקיעים תשומות משמעותיות בהעברת כספים לפעיליהם, למשפחות הפעילים ולצרכים אחרים הנכנסים בגדר "הכשרת הלבבות" ומטרתם לסייע לארגון הטרור לבסס את אחיזתו באוכלוסייה האזרחית (ראו עניין פלוני לעיל; עד"י 2169/12 חסין נ' מפקד כוחות צה"ל באיו"ש (פורסם בנבו, 18.12.2012)). הרבדים השונים בהם פועלים ארגוני הטרור, נועדו לאפשר את פעילותו בכל המישורים, ומכאן גם המסקנה כי אין מקום לבודד בין פונקציה ומטרות "אזרחיות" לבין פונקציה ומטרות "צבאיות" (בג"ץ 1169/09 **פורום משפטי למען ארץ ישראל נ' ראש הממשלה, ח"כ אהוד אולמרט** (פורסם בנבו, 15.6.2009)" (עד"י 1793/15 **התביעה הצבאית נ' עליאן**).

במקרה דנן שימש הנאשם בתפקיד בכיר בארגון וביצע תפקיד מהותי בגוף אשר פעל לקבלת כספים להתאחדות בלתי מותרת ומשם לאזור. הנאשם פעל בהתאחדות במשך זמן רב ותרומתו להעברת הכספים ופעילות האגודה הייתה מכרעת. סכומי הכסף שעברו תחת ידיו ובפיקוחו עצומים. אמנם, פעילות הנאשם לא נעשתה בקשר עם פעילות טרור ישירה או ממשית אך גם הפעילות מן הסוג אותה ביצע, שצבעה אזרחי-כלכלי, טומנת בחובה סיכון רב לביטחון הציבור.

בית המשפט העליון כבר פסק כי -

> "הטרור בעידן הנוכחי מתאפיין לא רק בהיותו גלובלי, אלא גם בתחכום רב, לעתים במבנה ארגוני מסועף... יותר ויותר אנו עדים לכך שארגוני הטרור משקיעים זמן, מחשבה ומשאבים בפעילות הסברתית ותקשורתית, כמו גם בפעילות בעלת אופי אזרחי... פעילות נרחבת זו של ארגוני הטרור מותנית בראש ובראשונה בקיומה של תשתית כלכלית איתנה ומבוססת ושימוש במערכות פיננסיות שיעמדו לרשות ארגוני הטרור למימון פעילותם." (עניין **פלוני** הנ"ל).

וכן בפסיקת בית המשפט הצבאי לערעורים בעד"י 4202/07 **התביעה הצבאית נ' אבו עצב**:

> "...התחכום ודרך הפעילות של ארגוני הטרור, אינם מאפשרים עוד להפריד בין הפעילות הטרוריסטית ובין הפעילות האזרחית כביכול, ושני התחומים הללו מזינים זה את זה ומחזקים זה את זה, ובסופו של דבר מסכנים באופן ממשי את ביטחון המדינה ואזרחיה... מלחמת החורמה שיש לנהל בארגוני הטרור, חייבת לבוא לידי ביטוי גם בענישה הולמת, ונראה לי כי העונש שאושר בעניין פלוני, ראוי שישמש כנקודת מוצא, בבואנו לקבוע את עונשו של המשיב שלפנינו...".

לפיכך, קבעו בתי המשפט הצבאיים, לא אחת, ובפרט בע"מ 3197/06 **זכית עוואנמה נ' התובי"צ**:

> "...כי לא רק פעילות צבאית גרידא תזכה להתייחסות מחמירה, אלא אף כל אופני הפעילות אשר מאחוריהם עומדות התאחדויות בלתי מותרות, גם אם אלה נושאות אופי אזרחי. יתרה מזו, התמודדות יעילה מחייבת פגיעה נרחבת במעגלי הסיוע והתמיכה המוענקים לארגוני הטרור. בתוך אלה נועדה חשיבות עליונה להשרשת התשתית הכלכלית העומדת מאחורי ארגוני הטרור, אשר בלעדיה אלה היו נותרים ללא פעילות, ללא תמיכה, וללא חיות כלל."

מן המקובץ נראה, אפוא, כי הנאשם ראוי לעונש מאסר ממושך לצד עונש כספי מרתיע שתוצאתו פגיעה בפעילות הכלכלית של הארגון, המהווה צינור המזן להמשך פעילותן של התאגדויות בלתי חוקיות.

אין ספק, כי העונש לו עתרו הצדדים מקל במידה ניכרת מן העונש הראוי כפי שנקבע בפסיקת בית המשפט הצבאי לערעורים הנזכרת לעיל הן ברכיב המאסר והן ברכיב הכספי. לגבי רכיב אחרון זה חלה מגמה של החמרה ברף הענישה אשר קבעה קשר בין גובה הקנס לבין היקף הכספים שהועברו להתאחדות הבלתי מותרת, משיקולי הלימה והרתעה.

אלא שבמקרה שבפנינו אכן תיבטים משמעותיים לקולה. בראשם, ניצבים הטיעונים הראייתיים הנוגעים לחוקיות האגודה ומטרותיה, טיעונים עליהם ויתרה ההגנה במסגרת ההסדר, כאמור. בנוסף, עניין לנו בנאשם הנעדר עבר פלילי כלשהו. הנאשם, חרף תפקידו, לא היה בעל מעמד של מקבל החלטה בארגון וייתכן שמטרותיה האזרחיות של האגודה הן אלו שעמדו לנגד עיניו בעת פעילותו בה. בעת בחינת ההסדר, שקלנו אף את עונשה של מעורבת נוספת בפרשה ואת המדרג אותו יצרו הצדדים בין העונשים השונים במסגרת הפרשה.

מובן, כי שקלנו את מכלול רכיבי הענישה ואת העובדה כי חרף הפער בין היקף הכספים אשר בהכנסתם היה מעורב הנאשם לקנס המוסכם, מתבקשת הטלת קנס כספי משמעותי. זאת, לצד עונשי מאסר בלתי מבוטלים, בפועל ועל תנאי.

לאור האמור, מצאנו לאמץ את הסדר הטיעון ואנו גוזרים על הנאשם את העונשים הבאים:

א. 22 חודשים ו-20 ימי מאסר לריצוי בפועל מיום מעצרו.

ב. 18 חודשי מאסר על תנאי והתנאי הוא שבמשך 5 שנים מיום שחרורו לא יעבור הנאשם עבירה שיש בה יסוד של תמיכה או חברות בארגון עוין או כל עבירה שיש בה יסוד של עיסוק בכספי אויב או מגע עם אויב.

ג. קנס כספי בסך 1,000,000₪ או שנתיים מאסר תמורתו. הקנס ישולם בארבעה תשלומים שווים, כאשר התשלום הראשון בסך 250,000 ₪ יהווה תנאי לשחרור הנאשם ממאסר. יתר התשלומים ישולמו בכל 6 חודשים ממועד השחרור. לא ישולם אחד מן התשלומים במועדו תועמד יתרת הקנס כולה לפירעון מידי ואם לא תשולם ייאסר הנאשם תמורתה. שוברים יימסרו להגנה על ידי המזכירות. מספר שוברים (5שוברים על סך 50,000 ₪ כל אחד) 0000866616, 0000866916, 0000866416, 0000866716, 0000866516.

זכות ערעור תוך 30 יום.

ניתן והודע היום, 26/07/17, בפומבי ובמעמד הצדדים.

| שופטת | אב"ד | שופט |
|---|---|---|

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
ANNE CHANA HENKIN, *et al*.,

Plaintiffs,

-against- Case No. 1:21-cv-5716-AMD-VMS

QATAR CHARITY; QATAR NATIONAL BANK and MASRAF AL RAYAN,

Defendants.
------------------------------------------------------------------- X

**DECLARATION OF TRANSLATOR**

Yaniv Berman declares pursuant to 28 U.S.C. Section 1746 as follows:

I. I am a professional translator fluent in English and Hebrew.

2. I hereby certify that I translated the foregoing Amended Indictment of Manasra from Hebrew to English and to the best of my knowledge and ability, the document annexed hereafter is a true and accurate translation of the Hebrew text delivered to me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Kefar Sava, Israel on March 15, 2023.

__________________________

Yaniv Berman

**Israel Defense Forces**

**Judea Military Court**

Before a panel

**Court case: /15**
Prosecution case: 3124/15
Police File: 425869/15 (Petah Tikva)

**In the trial between the Military Prosecutor - the Plaintiff**

**Against**

**Fadi Bahjat Abd al-Fattah Manasra**
I.D. 914129002, born on 11 October 1982, resident of Ramallah
Under arrest since 7 September 2015

**The Defendant**

**Amended Indictment**

**The aforesaid Defendant is hereby indicted for committing the following offenses:**

**First Count:**

**Nature of the offense: membership and activity in an unlawful association**, an offense pursuant to Regulation 85(1)(a) of the Defense (Emergency) Regulations, 1945.

**Details of the offense**: The Defendant, within the region, on or about **from 21 December 2009 until the day of his arrest**, was a member or acted as a member in an unlawful association, that is:

1. On the aforesaid date, in or near Ramallah, the Defendant was a member of Jam'iyat Qatar al-Khairiya in Doha (hereinafter: "**the Main Jam'iya")**, which is an unlawful association.
2. From March 2010, the Defendant served as an accountant of Jam'iyat Qatar al-Khairiya in Ramallah (hereinafter: "**Jam'iyat Ramallah**"). In his capacity, he was responsible for recording financial transfers to and from the organization, and prepared reports for the Main Jam'iya.
3. **Jawda Dib Ibrahim Jamal** (hereinafter: "**Jawda")** served as the manager of Jam'iyat Qatar al-Khairiya in Ramallah. The Defendant and Najwan Muhammad Ayman Hasan Awda (hereinafter: "**Najwan**"), who was responsible for the logistics in the organization, served under him.
4. During the aforesaid period, the Main Jam'iya transferred approximately NIS 12,000,000 to the Jam'iya in Ramallah for miscellaneous activities of the organization.
5. The funds were transferred from the Main Jam'iya to the Al-Rayan Bank in Doha. From there, funds in euros were transferred to Deutsche Bank in Germany and funds in dollars were transferred to a bank in New York. Afterwards, all the funds were transferred to the Bank of Palestine or to the Islamic Bank in Ramallah and were deposited in the bank account of the Jam'iya in Ramallah.
6. All the funds were transferred with the authorization of Jawda and under the supervision of the Defendant.
7. From 2011 until 2013, the Defendant also served as the accountant of Jam'iyat Qatar al-Khairiya in Gaza. During this period, funds totaling $25,000,000 were transferred from the Main Jam'iya to its branch in Gaza.
8. The Defendant also transferred funds on behalf of the Jam'iya in Ramallah to unlawful associations, such as Jam'iyat al-Ihsan al-Khairiya and Al-Jam'iya al-Khairiya al-Islamiya, which belongs to Hamas. He transferred approximately $75,000 to each of the associations.

Having done the said activities, the Defendant was an active member of Jam'iyat Qatar al-Khairiya in Ramallah, which is an unlawful association.

**Second count:**

**Nature of the offense:** Holder of a position in an unlawful association, an offense pursuant to Regulation 85(1)(a) of the Defense (Emergency) Regulations, 1945.

**Details of the offense**: **From 21 December 2009 until the day of his arrest**, or near that date, the Defendant, within the region, managed or assisted the management of the unlawful association, or held a position in an unlawful association or under its authority, that is:

During the aforesaid period, undertaking what is mentioned in the previous count, the Defendant held a position of an accountant in Jam'iyat Qatar al-Khairiya in Ramallah, which is an unlawful association.

**Third count**

**Nature of the offense:** Bringing enemy funds into the region, an offense pursuant to Sections 3 and 7 of the Bringing Funds into the Region (Judea and Samaria) Order (No. 973), 5742-1982.

**Details of the offense**: The Defendant, within the region, **from 21 December 2009 until the day of his arrest**, or near that date, in or near Ramallah, received enemy funds from outside the region or brought enemy funds into the region, either accepting them in person or accepting them through another person, either bringing them in person or bringing them through another person another, without a permit and in breach of the said Order, in that:

At the aforesaid time and place, undertaking what is mentioned in the first count, the Defendant brought into region enemy funds from Qatar in the amount of NIS 12,000,000, without a permit and illegally.

**Fourth count**

**Nature of the offense: Possession of property of an unlawful association**, an offense pursuant to Sections 85(f) of the Defense (Emergency) Regulations, 1945, and 199C(a) of the Security Provisions [Consolidated Version] (Judea and Samaria) Order (No. 1651), 5769-2009.

**Details of the offense**: The Defendant, within the region, **from 21 December 2009 until the day of his arrest**, or near that date, held in his possession, custody, or control, an asset, which belongs to an unlawful association, or which is referred to it, or which is issued by it, or which is in its favor, or which was supposed to belong to an unlawful association, that is;

During the aforesaid period, in or near Ramallah, undertaking what is mentioned in the first count, the Defendant received and held a sum of $28,081,664 from Jam'iyat Qatar al-Khairiya in Doha, which is an unlawful association.

**Fifth count**:

**Nature of the offense:** Performing a service for an unlawful association, an offense pursuant to Regulations 85 and 84(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the offense**: The Defendant, in or near Ramallah, on a date that is not known to the Plaintiff, undertook work or performed service for an unlawful association, that is:

1. At the aforesaid time and place, undertaking what is mentioned in Section 8 of the first count, the Defendant performed a service for Jam'iyat al-Ihsan al-Khairiya, which is an unlawful association, by transferring $75,000 to the association.

1. By undertaking the aforesaid, **the Defendant** performed a service for an unlawful association.

**Sixth count:**

**Nature of the offense:** Performing a service for an unlawful association, an offense pursuant to Regulations 85 and 84(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the offense**: The Defendant, in or near Ramallah, on a date that is not known to the Plaintiff, undertook work or performed service for an unlawful association, that is:

1. At the aforesaid time and place, undertaking what is mentioned in Section 8 of the first count, the Defendant performed a service for Al-Jam'iya al-Islamiya al-Khairiya, which is an unlawful association, by transferring $75,000 to the association.
2. By undertaking the aforesaid, **the Defendant** performed a service for an unlawful association.

**Prosecution witnesses:**

1. First Chief Sergeant Radi Khatib, personal no. 1165588, Petah Tikva (took the statements of the Defendant on 21 September 2015 and 17 September 2015.
2. First Chief Sergeant Ghasan Bibar, personal no. 1238039, Petah Tikva (took the statement of the Defendant on 9 September 2015)
3. Rotem Sari, IDF (particulars in the lawsuit)
4. Jawda Dib Ibrahim Jamal, I.D. 086096195
5. Najwan Muhammad Ayman Hasan Awda, I.D. 911606184
6. Muhammad Taisir Qasrawi, I.D. 907628101
7. Exhibits (computer printouts)

**Captain Almaz Aiso Military Prosecutor**

**Israel Defense Forces**
Emblem Advocate General

**Judea Military Court** **Case no.: 6008/15**

**Before the Honorable President: Lt. Col. Zvi Heilbron**
**Before the Honorable Judge: Major Etty Adar**
**Before the Honorable Judge: Major Haim Balilti**
**The Military Prosecution**

(represented by Major Tal Ziskovich)

**Against**

**Defendant: Fadi Bahjat Abd al-Fatah Manasra**, I.D. 914129002/**Prison Service – present**

(represented by Adv. Bulous and Adv. Mahajnah – present)

**Court stenographer: Cpl. Yarden Matzliach**

**Translator: Cpl. Safi Kheir**

Hearing date: 26 July 2017, Wednesday, 3 Av 5777

**Hearing**

**The Court identifies the Defendant.**

**The Defendant declares that he is represented by Adv. Bulous and Adv. Mahajnah**.

Military Prosecutor: We have reached a plea bargain, under which the indictment will be amended. The Defendant will confess in the amended indictment and the parties will argue for an agreed penalty.

Defense Attorney: I confirm my colleague's statement.

**The Court clarifies to the parties that it is not bound by the plea bargain that they have reached.**

Defense Attorney: I explained the amended indictment to my client. He understands it and confesses it.

**The Court reads the amended indictment to the Defendant.**

The Defendant: The Court has read to me what is attributed to me in the amended indictment. I understand it and confess it.

**Ruling**

On the basis of the confession, we convict the Defendant on what is attributed to him in the amended indictment, as follows:

**Membership and activity in an unlawful association** – an offense pursuant to Section 85(1)(a) of the Defense (Emergency) Regulations, 1945.

**Bringing enemy funds into the region** – an offense pursuant to Sections 3 and 7 of the Bringing Funds into the Region (Judea and Samaria) Order (No. 973), 5742-1982, and Section 201(a)(2) of the Security Provisions [Consolidated Version] (Judea and Samaria) Order (No. 1651), 5769-2009.

**Issued and announced today, 26 July 2017 in public and in the presence of the parties.**

| ______________ | ______________ | ______________ |
|---|---|---|
| Judge | Court President | Judge |



**Date: 26 July 2017 Judea Military Court Case No.: 6008/15**

**Military Prosecutor: No evidence for the penalty.**
**Defense Attorney: No evidence for the penalty.**

The Military Prosecutor summarizes: This is an especially unusual case that includes the offense of bringing in large sums of money under special circumstances. Following lengthy negotiations, we have reached an agreed outcome, and we request the Court to sentence the Defendant to an agreed penalty of 22 months in prison, and 20 days of actual imprisonment. In practice, this reflects the days of his detention. The imprisonment is subject to the opinion of the Court concerning each offense in which there is an element of support of a hostile organization or membership in a hostile organization, and concerning each offense in which there is an element of engaging in enemy funds or contacting an enemy. I also ask to sentence the Defendant to a fine of NIS 1 million or two years in prison in lieu thereof. The fine will be paid in four equal payments; the first payment of NIS 250,000 will be a condition for his release. The rest will be paid every six months. It is made clear that non-payment of one of the payments in full and on time will result in the immediate payment of the fine in full and will result in the arrest of the Defendant for imprisonment in lieu of the fine.

The arguments for the settlement are the Defendant's clean record, his confession of guilt, and the significant saving of court time. We also considered the Defense's waiving of significant defense arguments with respect to the illegality of the organization of which they were members. We also considered the fact that the evidentiary material indicates that, while the Defendant served in an administrative position in the organization, he was not at the decision-making level in the main organization, but only at the operative level. We also considered the level of the penalty to which the accomplice of the Defendant was sentenced, and we considered the fact that this penalty includes a significant financial element, which balances it against the penalty of actual imprisonment for a considerable period.

The Defense Attorney summarizes: I concur with the statement of my colleague the prosecutor, and request to honor the settlement. Our main arguments have been recognized as circumstances for leniency under the plea bargain. As we emphasized in the preliminary arguments and later in the trial, some of the arguments were accepted by the Prosecution and are the grounds for the plea bargain. I concur with the plea bargain with heavy heart. The period of imprisonment is considerable and the amount is substantial, but the confession waives them. I request to honor the plea bargain.

Final words of the Defendant: I have nothing to add.

**Date: 26 July 2017 Judea Military Court Case No.: 6008/15**

**Before the Honorable President: Lt. Col. Zvi Heilbron**

**Before the Honorable Judge: Major Etty Adar Before the Honorable**

**Judge: Major Haim Balilti Military Prosecutor:**

(represented by Major Tal Ziskovich)

**Against**

**Defendant: Fadi Bahjat Abd al-Fatah Manasra**, I.D. 914129002/**Prison Service – present**

(represented by Adv. Bulous and Adv. Mahajna – present)

**Sentence**

The Defendant was convicted on the basis of his confession in a plea bargain of offenses of membership and activity in an unlawful association and of bringing enemy funding into the region. According to the amended indictment, as of December 2009 the Defendant was a member of Jam'iyat Qatar al-Khairiya in Doha. Later, from March 2010, the Defendant served as an accountant for Jam'iyat Qatar al-Khairiya in Ramallah, which belongs to Jam'iyat Qatar al-Khairiya in Doha. The Defendant was responsible for recording financial transactions to and from the organization and for writing reports for the organization in Doha.

The people who worked with the Defendant include, among others, Jawda Dib Ibrahim Jamal (hereinafter: "**Jawda**"), who served as acting director of the organization in Ramallah, and Najwan Muhammad Ayman Hasan Awda (hereinafter: "**Najwan**"), who was responsible for the organization's logistics. The organization management in Doha, Qatar, transferred approximately NIS 12,000,000 to the branch in Ramallah for miscellaneous activities of the organization.

All the funds were transferred with the approval of Jawda and under the supervision of the Defendant.

The Defendant's confession to the offenses of which he was convicted, was made after the beginning of the evidentiary hearing in the case and as part of the plea bargain, as mentioned.

As part of the plea bargain, which was submitted to us, we have been asked to impose on the Defendant an agreed penalty of 22 months in prison and 20 days of actual imprisonment, which was the number of days the Defendant was detained. The imprisonment is subject to the opinion of the Court concerning each offense in which there is an element of support of a hostile organization or membership in a hostile organization, and concerning each offense in which there is an element of engaging in enemy funds or contacting an enemy.

The parties also asked to sentence the Defendant to a fine of NIS 1 million or two years in prison in lieu thereof. It was agreed, that the fine will be paid in four equal payments; the first payment of NIS 250,000 will be a condition for his release. It was also agreed, that the rest will be paid every six months starting from the date of his release, and that non-payment of one of the payments in full and on time will result in the immediate payment of the fine in full and will result in the arrest of the Defendant for imprisonment in lieu of the fine.

The prosecution considered the uniqueness of the case before us, which involves the bringing in of large sums of enemy funds. Conversely, it considered the considerations for leniency, including the clean record of the Defendant, his confession of guilt, and the significant saving of court time in view of the serious arguments raised by the Defense with respect to the illegality of the organization. These evidentiary arguments were laid out before us by the Defense during a hearing in which preliminary arguments were made.

The prosecution said that it considered the fact that, while the Defendant served in an administrative position in the organization, he was not part of the decision-making level in the main organization, but only in the operational level. It also considered the penalty of another person involved in the affair, Najwan, and the mix of the penalty elements that consist of a substantial financial penalty, as mentioned, along with lengthy imprisonment.

The Defense added and honed the significance of waiving its arguments with respect to the illegality of the association, which, in view of their weight, the indictment was amended and an agreed appeal was written for the penalty. The honorable Defense attorneys emphasized the elements of the actual imprisonment and the substantial financial element, and requested that we honor the plea bargain.

The offenses of which the Defendant was convicted are severe. They enable and strengthen the existence of an unlawful association. Operating in such an association harms the security of the State of Israel. It has therefore been ruled in the past that –

> "Systematic activity that aims to enable the operations of the terrorist organizations, improve it and consolidate it in different ways by establishing financial support, is systematically and constantly eroding the security of the State of Israel. Such erosion weakens the security, economic, and social soundness of Israel and joins the other security dangers, some of which are existential, that Israel faces. When considering the risk, it should not be isolated, but rather considered as being part of the full picture." Criminal Appeal 3827/06 **John Doe v. State of Israel** (published in Nevo, 27 March 2007).

Brining enemy funds into the region, even if in the context of an activity of civilian nature, is to be viewed with grave severity –

> "Terrorist organizations put significant efforts into the transfer of funds to their operatives, to the operatives' families, and to other needs, which are classified as "winning hearts", with the objective of helping the terrorist organization strengthen its hold on the civilian population (see John Doe's case hereinabove, *ex parte* appeal 2169/12, **Hussein v. IDF Commander in Judea and Samaria** (published in Nevo, 18 December 2012)). The various layers in which terrorist organizations are operating, are intended to make their activity possible at all levels, hence also the conclusion that there is no reason to separate between the "civilian" function and objectives, and the "military" function and objectives (High Court of Justice 1169/09**, The Legal Forum for the Land of Israel v. Prime Minister MK Ehud Olmer**t (published in Nevo, 15 June 2009) (*ex parte* appeal 1793/15 **Military Prosecutor v. Alian**).

In the case before us, the Defendant served in a senior position in an organization and played an important part in an entity, which operated to obtain funds for unlawful associations, and then to the region. The Defendant worked a long time in the association. His contribution to the transfer of funds and to the associations' operations was considerable. The sums transferred under his supervision were vast. Although the actions of the Defendant were not related to direct or tangible terrorist activity, actions of the kind that he undertook, which are of civilian-economic nature, involve great risk to public security. The Supreme Court has already ruled –

> "Terrorism nowadays is not only characterized by being global, but also by its considerable sophistication, which sometimes manifests in a complex organizational structure… More and more we see that the terrorist organizations are investing time, thought, and resources in informative and communications activities, as well as in activities of civilian nature… This extensive activity of the terrorist organizations is first and foremost dependent on a solid, well-established financial infrastructure and on the use of financial systems that would enable the terrorist organizations to finance their operations." (the above-mentioned **John Doe** case).

The Military Appeals Court also ruled in *ex parte* appeal 4202/07 **Military Prosecution v. Abu Asb**:

> "…The sophistication and *modus operandi* of the terrorist organizations make it impossible to continue separating between terrorist activity and so-called civilian activity. Both fields of activity feed and reinforce each other, ultimately posing a real danger to the security of the State and its people… The bitter war that must be waged against the terrorist organizations should also be reflected in fitting penalties. It seems to me that the penalty approved in the John Doe case should serve as a starting point in determining the penalty of the Respondent before us…"

Therefore, the Military Courts have ruled more than once, in particular in Appeal 3197/06 **Zakiya Awamna v. the Military Prosecutor**:

> "… that not only obvious military activities shall be treated with strictness, but all the activities to which the unlawful associations are responsible, even if they are of civilian nature. Moreover, effective treatment requires a significant disruption of the circles of aid and support the terrorist organizations. It is of significant importance in this respect, to uproot the financial infrastructure is the backbone of the terrorist organizations, without which they would remain inactive, unsupported, and lacking vitality."

The collection therefore indicates that the Defendant deserves a long imprisonment, as well as a deterrent financial penalty, that will result in harming the financial operation of the organization, which is a lifeline without which unlawful associations are unable to continue operating.

There is no doubt that the penalty to which the parties appealed is considerably more lenient than the deserving penalty that was given in the aforesaid Military Appeals Court ruling – in both the imprisonment and financial aspects. With respect to the financial aspect, we see a tendency to raise the punishment bar, and determine – for deterrence considerations - a correlation between the extent of the fine and the amount of money that was transferred to the unlawful associations.

However, in the case before us, there are important aspects that call for leniency. Firstly, there are evidentiary arguments with respect to the legality of the association and its objectives; arguments that the Defense waived as part of the settlement, as mentioned. We also take under consideration the fact that the Defendant has no criminal record of any kind. The Defendant, despite his position, had no say in the decision-making process of the association, and it is possible that while working there, he was focused on the association's civilian objectives. We also considered the penalty of the other person involved in the case and the hierarchy the parties created between the different penalties in the plea bargain.

Naturally, we considered all the elements of the penalty and the fact that, despite the difference between the sums of money the Defendant was involved in brining into the region, and the agreed fine, the fine should be considerable. In addition, there should be considerable imprisonment penalties, that should consist of both actual imprisonment and a suspended sentence.

In view of the aforesaid, we deem it fit to adopt the plea bargain and we sentence the Defendant to the following penalties:

A. 22 months and 20 days of actual imprisonment to be served starting from the day of his arrest.
B. 18 months of suspended imprisonment, provided that for five years from the day of his release the Defendant will not commits an offense that has an element of support for or membership in a hostile organization, or any offense that has an element of engaging in enemy funds or contacting an enemy.
C. A financial penalty of NIS 1,000,000 or two years in prison in lieu thereof. The penalty will be paid in four equal installments; the first payment of NIS 250,000 will be a condition for his release. The rest will be paid every six months. Non-payment of one of the payments in full and on time will result in the immediate payment of the fine in full and if not paid, the Defendant will be arrested in lieu thereof. The secretariat will issue vouchers to the Defense. The voucher numbers (5 vouchers, NIS 50,000 each): 0000866616, 0000866916, 0000866416, 0000866716, 0000866516.

**Right of appeal within 30 days.**

**Issued and announced today, 26 July 2017, in public and in the presence of the parties.**

| _______________ | _______________ | _______________ |
|---|---|---|
| Judge | Court President | Judge |