# FLEISCHMAN BONNER & ROCCO LLP
## ATTORNEYS AT LAW

445 HAMILTON AVENUE • SUITE 402 • WHITE PLAINS • NEW YORK • 10601

TEL: 914.278.5100 • FAX: 917.591.5245 • WEB: WWW.FBRLLP.COM

EMAIL: PROCCO@fbrllp.com

January 7, 2025

**Via ECF**

The Honorable Vera M. Scanlon
United States Magistrate Judge
U.S. District Court, Eastern District of New York
225 Cadman Plaza East, 1214 South
Brooklyn, New York  11201

**Re:**  *Henkin, et al. v. Qatar Charity, et al.,* **21-cv-05716-RER-VMS**

Dear Judge Scanlon:

Pursuant to the Court's December 30, 2024 minute order, Part III.a of the Court's Individual Motion Practices and Rules, and Federal Rules of Civil Procedure 26(b) and 26(g) and 54(b), Plaintiffs hereby move for:  (1) permission to conduct a Rule 30(b)(6) deposition of Defendant Masraf Al Rayan ("MAR") concerning its retention of, search for, and review of, records relating to its New York correspondent bank accounts in response to Plaintiffs' discovery requests in this action; and (2) for reconsideration of that portion of Your Honor's September 5, 2024 minute order ("9/5/2024 Order") that denied Plaintiffs' request for issuance of Letters Rogatory.

**Procedural History**

Plaintiffs' instant request must be evaluated in light of Defendants' persistent efforts to foreclose any jurisdictional discovery in this action.  Knowing that MAR had never maintained a correspondent banking account at BONY Mellon, Defendants fought tenaciously for three months—making applications to both this Court and the District Judge—to limit jurisdictional discovery to MAR's nonexistent account at BONY Mellon.[1]  At one point, Defendants' gamesmanship prompted the Court to ask MAR's counsel:  "[A]re you serious?"  *See* Transcript of May 16, 2023 Status Conference ("5/16/2023 Transcript") at 10:19-20.  The Court refused to allow Defendants "to play 'gotcha.'" *Id*. at 6:20. The Court held that—in view of the District Judge's explicit authorization of discovery "'that could show… that plaintiffs' claims arose from ***Masraf al Rayan contacts with New York***'"—"jurisdictional discovery is not limited to a correspondent

---

[1] *See* ECF 83 (MAR request to file a renewed motion to dismiss based on BONY Mellon's disclosure that MAR did not maintain an account at BONY Mellon from 2011-2018); ECF 84 (Qatar Charity's request for dismissal of complaint based on BONY Mellon disclosure); 5/13/2023 Minute Order (denying ECF 83 and 84); 5/16/2023 Transcript at 11:2-19:19, 23:6-27:10; ECF 91 (MAR motion for protective order); ECF 93 (QC motion for protective order).



account at the Bank of New York Mellon." ECF 106 (quoting *Henkin v. Qatar Charity*, 2023 WL 2734788, at *13 (E.D.N.Y. Mar. 31, 2023) and noting that, in seeking to shut down all jurisdictional discovery for a second time, Qatar Charity had failed to address this language in the District Judge's decision "despite the Court's attention to this provision during the mid-May conference held prior to the submission of the motions considered in this Order" (ECF 106 at 7)) (emphasis added).

Under Court compulsion, MAR ultimately disclosed that, during the relevant time period, it had maintained a correspondent account at HSBC in New York that MAR asserted had never been used to transfer funds on behalf of Qatar Charity to a financial institution in the Palestinian Territories. *See, e.g.,* ECF 113 at 1, 4, 5; ECF 116 at 2. That being the case, one could wonder why Defendants fought so hard to avoid providing discovery. Significantly, MAR did not produce a single business record related to its HSBC account, and apparently had not maintained copies of any of the transaction-related records (such as account statements or wiring confirmations) that it undoubtedly would have received from HSBC. *See* ECF 114 (Transcript of August 8, 2023 Conference) at 4:9-5:23, 11:21-16:23, 22:15-23:4. Nevertheless, when Plaintiffs sought to confirm the accuracy of MAR's concededly incomplete records by serving a narrowly tailored subpoena on HSBC, Defendants interposed vociferous opposition to what they decried as a "fishing expedition," and an unauthorized, "drastic[]" and "improper[] expan[sion]" of the scope of jurisdictional discovery. *See* ECF 113 at 4, 5, 6; ECF 114 at 11:6-7, 19:18, 23:6-8; ECF 116 at 2-3.

The Court granted Plaintiffs' request, concluding that "the fact that MAR does not have all of its own records for its HSBC account favors permitting Plaintiffs to submit a limited subpoena to HSBC directly to request records related to MAR's New York correspondent account." 9/5/2024 Order. Unfortunately, that subpoena did not enable Plaintiffs "to fill the gap" in MAR's "own bank account records." *Id.* On December 10, 2024, HSBC responded to Plaintiffs' subpoena by stating that it "is unable to confirm that [MAR] maintained a correspondent account at HSBC Bank USA, N.A. during the period 2012-2018." *See* ECF 120 at 1, 3. According to MAR's discovery response, it closed its correspondent account at HSBC in 2016, which puts the account outside of HSBC's 7-year document retention period. *See id.* at 3. Hence, Plaintiffs are now back in the same position the Court found them in as of September 5, 2024: namely, with the guilty plea of Qatar Charity accountant Mr. Fadi Manasra—who confessed to transfers of U.S. dollars from MAR in Dohar to a bank in New York and then to Qatar Charity's account at a bank in Ramallah (ECF 113 at 2)—providing a "good-faith basis for exploring whether th[ere] was a New York bank connection that would support the conclusion that the Court's exercise of jurisdiction over Defendants is permitted" and MAR's counsel "not … able to confirm that MAR, in fact, had all the records relating to the transactions with [its] correspondent bank in New York." 9/5/2024 Order. Now, as then, Plaintiffs are entitled to what the Court characterized as "a fair shot at understanding" whether there is a New York connection and, hence, personal jurisdiction over Defendants. ECF 114 at 24:6-8



**Plaintiffs Request a Short Rule 30(b)(6) Deposition of MAR**

Plaintiffs respectfully request that they be permitted to "attempt to fill the gap" in MAR's bank account records by conducting a short Rule 30(b)(6) deposition of MAR, limited to examination concerning MAR's retention of, search for, and review of, records relating to its New York correspondent bank accounts in response to Plaintiffs' discovery requests in this action. As MAR's counsel disclosed to the Court at the August 8, 2023 hearing, MAR's determination that it never used a New York correspondent account to transmit funds to the Palestinian Territories on Qatar Charity's behalf is not based on review of the records from those correspondent accounts, but is rather the output of typing undisclosed search terms into a database maintained by MAR that MAR's counsel could only describe as "a system … a banking system which all banks have." ECF 114 at 15:7-10. *See also id*. 13:8-9, 22:19-20. MAR's counsel was unable to answer the Court's legitimate questions concerning the source of the data in MAR's "system" (that is, whether it came from the banks that maintained MAR's correspondent accounts), how the data is uploaded to the "system," or the scope of what is maintained in the "system." *See id.* at 14:18-15:12, 16:13-23, 22:15-24. Nor was counsel able to explain how the "system" was queried to identify responsive transactions, or how many transactions were reviewed as part of this process. *See id.* at 15:18-16:2, 16:13-23. While counsel assured the Court that "[t]here is no reason to believe that [MAR's] records are deficient" (*id.* at 15:6-7), MAR's admitted failure to retain "13-year-old opening account documents" (*id.* at 12:20) suggests otherwise. Under guidelines issued by the Qatari Central Bank, MAR is required to maintain account opening documents for its customers' accounts for at least 15 years after such accounts are closed.[2]

Given MAR's efforts to avoid identifying the New York bank at which it maintained a correspondent account during the relevant period (as detailed above), and its unexplained failure to maintain the account opening documents for that account, Plaintiffs have provided an adequate basis to justify obtaining discovery into the collateral issue of how MAR determined it had never used its New York correspondent account to transfer funds to the Palestinian Territories on Qatar Charity's behalf. *See Freeman v. Guiliani*, 2024 WL 5135913, at *3 (S.D.N.Y. Dec. 17, 2024) ("When discovery on discovery is sought, the party seeking the discovery must provide an adequate factual basis to justify the discovery, and the Court must closely scrutinize the request…'") (internal quotation omitted); *see also id.* (finding plaintiffs' burden met given "substantial reason to question the completeness of [defendant's] disclosures, and those disclosures are of great import to the upcoming… trial"). The Court has already recognized that the existence of funds transfers to the Palestinian Territories through New York is "the whole theory" of Plaintiffs' case. *See* 5/16/2023 Transcript at 9:10-15. *See also id*. 10:19-23.

Defendants will no doubt argue that a short, narrowly focused deposition would "improperly expand jurisdictional discovery … beyond what was ordered by Judge Donnelly."

---

[2] *See* Instructions of Supervision and Control, Part VIII, Chapter 10, Reg. 21.1.B (15th ed. Sept. 2013) (available at https:www.qcb.gov.qa/Documents/BankInstructions/EN/07-def.pdf).



ECF 113 at 5.  However, the Court has already concluded that, in referring the supervision of jurisdictional discovery, Judge Donnelly "clearly indicated [her] awareness that adjustments might be needed to achieve the jurisdictional discovery anticipated by the Court."  9/5/2024 Order.  The District Judge understandably did not anticipate that MAR had failed to maintain any documents for purposes of providing documentary discovery.

**Motion for Reconsideration of 9/5/2024 Order**

Plaintiffs also respectfully request reconsideration of the portion of the Court's 9/5/2024 Order that denied their request for issuance of letters rogatory to seek additional documents, including potentially bank records, relevant to the guilty plea and conviction of Mr. Manasra.  The Court has already recognized that third-party discovery is appropriate "[g]iven the developments in the production of discovery" here.  *See* 9/5/2024 Order.  "[T]he most important factor for consideration" in evaluating a request for foreign discovery is "the interests of the United States and the foreign state" where the information is located.  *Bartlett v. Société Générale de Banque au Liban SAL*, 2023 WL 2734641, at *10 (E.D.N.Y. Mar. 31, 2023) (citing *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for Southern District of Iowa*, 482 U.S. 522, 544 n.28 (1987)).  Israel undoubtedly shares "the important U.S. and international interests in preventing the financial support of terrorist organizations."  *Linde v. Arab Bank, PLC*, 706 F.3d 92, 115 (2d Cir. 2013).

Plaintiffs' request for reconsideration is timely pursuant to Federal Rule of Civil Procedure 54(b), which provides that interlocutory orders and decisions, including discovery orders, are "subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties."  Fed. R. Civ. P. 54(b).  A Rule 54(b) motion that is based on newly-discovered evidence need not comply with the time limit in Local Civil Rule 6.3.  *See, e.g., System Management Arts Inc. v. Avesta Technologies, Inc.*, 160 F. Supp. 2d 580, 583 (S.D.N.Y. 2001).  Plaintiffs base this motion on the newly-discovered evidence that HSBC has no records relating to MAR's correspondent account.  In issuing the 9/5/2024 Order, the Court assumed that Plaintiffs would be able to "fill the gap" in MAR's bank account records by obtained records from HSBC.  HSBC's unanticipated inability to produce such records leaves Plaintiffs with no other option than to seek additional evidence from the prosecuting authorities in Israel.

                                                Respectfully submitted,

                                                /s/ Patrick L. Rocco